*fee pee*

FILED

2025 FEB -3 PM 1:31

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF
LOS ANGELES

BY: GSA

JAMES CLARK
625 LA CONIA BL
LOS ANGELES, CA., 90044

Plaintiff in Pro Se

## UNITED STATES DISTRICT COURT,

## CENTRAL DISTRICT OF CALIFORNIA.

JAMES CLARK,

      Plaintiff,

  v.

FLAGSTAR BANK, YI MING, LLC, WUPENG CUI, RITA GAIL FARRIS-ELLISON, AND DOES 1 - 10, INCLUSIVE;

 Defendant(s)

Case No.: 2:25cv00910-SPG-(RAOx)

**PLAINTIFFS' VERIFIED COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, WRONGFUL FORECLOSURE, FRAUDULENT CONCEALMENT, FORCIBLE ENTRY AND UNLAWFUL DETAINER, VIOLATION OF THE HOMEOWNER'S BILL OF RIGHTS, VIOLATION OF THE TRUTH IN LENDING ACT (15 U.S.C. §§1601 ET SEQ.), VIOLATION OF CIVIL RIGHTS (42 U.S.C. §§1983, AND 1985(3), AND CIVIL CODE §§51.7, AND 52.1), AND UNFAIR BUSINESS PRACTICES, PETITION FOR DECLARATORY RELIEF TO ACCOUNTING, QUIET TITLE CIVIL CODE 761.010, BREACH OF FIDUCIARY DUTY, INJUNCTION AGAINST FLAGSTAR BANK, FIRST AMERICAN TITLE, AND RITA GAIL FARRIS-ELLISON, CANCELLATION OF WRITTEN INSTURMENT-CANCEL THE DEED AND THE NOTE, SLANDER OF TITLE, NEGLIGENCE, FRAUD, VOID OR CANCEL TRUSTEE'S DEED UPON SALE AGAINST FOR CLOSING DEFENDANTS, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST FORECLOSING DEFEDNATS, UNJUST ENRICHMENT AGAINT THE FORCLOSING DEFENDANTS, VIOLATION OF CALIFRONIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 ET SEQ. AGAINST THE FORCLOSING DEFENDANTS, BREACH OF WRITTEN CONTRACT, AGAINST FLAGSTAR BANK AND ALL DOES, SET ASIDE TRUSTEE'S SALE AGAINST ALL DEFENDANTS, CANCELATION OF FLAGSTAR BANK AND YI MING LLC TRUSTEE'S DEED BASED ON CONSENT JUDGMENT AGAINST RITA GAIL FARRIS-ELLISON, CONTINUE ETC. REST OF CAUSES ARE IN THIS COMPLAINT**

**DEMAND FOR JURY TRIAL.**

-1-

PLAINTIFF'S VERIFIED COMPLAINT

COMES NOW Plaintiff James Clark, Plaintiff in Pro Se, and file this Complaint for Declaratory Relief against Defendants Flagstar Bank, Yi Ming, LLC, Rita Gail Farris-Ellison, and DOES 1-10, inclusive, and hereby complain and allege as follows:

## I. Nature of the Action

1. This is a Complaint for Declaratory Relief seeking a determination whether the Superior Court of California, County of Los Angeles, has subject matter jurisdiction to enter an Order against James Clark for his acts in the bankruptcy case# 2:11-bk-33861-RK, Adv no. 2:12-AP-01830-RK of In re: Rita Gail Ellison filed in the United States Bankruptcy Court for the Central District of California in 2012.

## II. The Parties

2   James Clark is one of the people in County of Los Angeles, State of California.

3   Plaintiff alleges that Flagstar Bank, is a foreign corporation of the State of Michigan, doing business in the state of California. Plaintiff alleges that Flagstar Bank was no longer registered as a foreign corporation with the California Secretary of State as of October 23, 2006, and illegally doing business in California.

4   Plaintiff alleges that Yi Ming, LLC is a Limited Liability Company doing business in the State of California. Plaintiff is without knowledge of Yi Ming, LLC's capacity to operate in the State of California.

5   Plaintiff is unaware of the true names, identities, and capacities of the defendants identified herein as DOES 1 through 10. For that reason, Plaintiff names defendants DOES 1 through 10 herein by said fictitious names. Plaintiff may amend this Complaint to allege the true names of one or more fictitiously named defendants if, and when, they become known to Plaintiff.

-2-

6    Plaintiff is informed and believes, and thereon alleges, that in committing certain complicit acts and omissions alleged herein, some or all of the Defendants were complicitly acting as the agents, joint ventures, partners, representatives, subsidiaries, affiliates and/or employees of some or all of the other Defendants, and that some or all of the complicit conduct of such Defendants, as complained of herein, was within the course and scope of such relationship.

### III. **Jurisdiction and Venue**

7    This Court has subject matter jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

8    An actual controversy exists between the Parties within the meaning of 28 U.S.C. § 2202, which is of sufficient immediacy and reality to warrant declaratory relief.

9    This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a)(2) (diversity) because it is a dispute between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10   This Court also has subject matter jurisdiction over this action per 28 U.S.C. §1331 (federal question) as the matter involves the interpretation of Title 11 of the United States Code also known as the Bankruptcy Code and 28 U.S.C., §2201.

11   If this Court finds that subject matter jurisdiction lies with the bankruptcy court, Plaintiff will seek an order referring the matter to the United States Bankruptcy Court for the Central District of California pursuant to 28 U.S.C. §157(a).

12   This Court has personal jurisdiction over Defendant Flagstar Bank because on June 1, 2011, Debtor Rita Gail Ellison filed a Chapter 7 Bankruptcy Petition in

-3-

the Central District of California, Case No. 2:11-BK-33861-RK. Defendant
Flagstar Bank was a Party in Interest to the Ellison Bankruptcy in that the
Stipulation entered into the Bankruptcy Court on December 18, 2018, stating the
relevant terms, to wit (A copy of the Stipulation is attached as Exhibit "I", and
incorporated herein by reference.):

"These are Clark's additional terms:

"a) That the state court action will be filed against all parties, Rita Ellis, Just
that EZ, Lenders Escrow, and Flagstar Bank with the additional cause of
action to cancel the deed and the note in Federal District Bankruptcy Judge
Kwans stipulation order;

"b) [Federal Court Stipulation Agreement and Order Granting Relief from the
Automatic Stay].

"c) In the event that the state court action does not reach a settlement or
judgment, I, Clark will without delay continue with the adversary proceeding
to final judgment without any challenges, obstructions or comportment to
obfuscate or deny Clark's recovery by you, or your client, Rita Farris-Ellison,

"d) All motions and procedures are to be continued on calendar should any
dispute arise."

13 Venue is appropriate because the acts occurred in the case captioned *In re Rita
Gail Ellison; James Clark v. Rita Gail Ellison,* Case No. 2:11-BK-33861-RK,
and Adversary No. 2:12-AP-01830-RK, filed in the United States Bankruptcy
Court for the Central District of California.

14 An actual case or controversy has arisen between the parties as Defendant
Flagstar Bank and their attorneys were completely aware of the Bankruptcy
stipulation order signed by Honorable Bankruptcy Judge Rober Kwan on
December 18, 2018.

15 The Bankruptcy stipulation order by honorable District Bankruptcy Judge Robert
Kwan instructed Plaintiff James Clark to return to the state court and file against

all parties, Rita Farris, Just that EZ, Lender Escrow and Flagstar Bank with additional causes of action to cancel the deed and the note.

16  On January 7, 2018 Flagstar Bank and its attorney without giving notice to the state court of the stipulation agreement, moved the court and obtained an Order before the Superior Court of California, County of Los Angeles declaring Plaintiff James Clark a vexatious litigant. Because of the Vexatious Litigant Order, Plaintiff could not file the "state court action" as stated in the Stipulation of December 18, 2018.

17  Plaintiff alleges and contends that Flagstar's attorney intentionally and maliciously moved the court to find Plaintiff a Vexatious Litigant to prevent Plaintiff from presenting uncontroverted evidence that Plaintiff's property taxes were never in default.  The Tax Assessor's Office made a mistake and corrected their error, providing this evidence to the Flagstar and its attorney. (Refer to Exhibit F)

18  Flagstar Bank and their attorney deliberately obtained said Order to prevent Plaintiff from obtaining a Judgment against Defendant Flagstar Bank for its illegal foreclosure sale of Plaintiff's real property. Causing severe harm, damage and prejudicing the Plaintiff.

19  An actual case or controversy has also arisen between the parties as the Bankruptcy Court ruling on September 14, 2015, In re Rita Gail Ellison; James Clark v. Rita Gail Ellison, Case No. 2:11-BK-33861-RK, and Adversary No. 2:12-AP-01830-RK, that (A copy of the Order is attached as Exhibit "I", and incorporated herein by reference.):

> "Based on the foregoing reasons, Plaintiff's motions for summary judgment are denied in part and granted in part whereby summary judgment is denied and the court determines that certain material facts described above are not genuinely in dispute and are treated as established in this case. Otherwise, the parties have the opportunity to prove or disprove the claims and defenses

relating to the operative pleadings in this adversary proceeding, such as Plaintiff's Second Amended Complaint, and Defendant's Answer to the Second Amended Complaint, at trial."

## IV. Procedural Background.

20 On or about October 13, 2008, Plaintiff executed a promissory note for $300,000 in favor of FLAGSTAR, which note was secured by a deed of trust recorded on October 21, 2008 against the Property in the office of the Los Angeles County Recorder as instrument number 20081870751. True and correct copies of the aforesaid note and deed of trust, the terms of which documents are incorporated into this complaint by reference, are attached hereto as Exhibit "H" respectively.

21 Plaintiff as mandate by Truth In Lending Act (TILA) law, timely rescinded the loan on October 15, 2008, to Flagstar that preceded with the illegal foreclosure and subsequent eviction of plaintiff see (Exhibit "M").

22 The purpose of the a forementioned refinance loan from FLAGSTAR was to raise approximately $50,000, capital to complete the purchase of a residential apartment building in Los Angeles, CA.

23 The escrow was handled by Rita Farris-Ellison, a licensed real estate agent, and her wholly owned companies Just That EZ Financial Corporation and Lenders Escrow, Inc.

24 Rita Farris-Ellison advised Plaintiff there were taxes owned on the property. Plaintiff gave Rita Farris-Ellison $40,000 to correct any delinquent taxes on the property, which Plaintiff found later was unfounded and untrue.

25 Plaintiff requested a copy of the escrow instructions and Flagstar Bank, Lenders Escrow, Inc, American Title Company, and Rita Farris-Ellison would contact Plaintiff once they received them. (See Flagstar letter August 27, 2009 Exhibit "M").

26 To date Plaintiff has never received any of the escrow instructions, disclosures, and estimated settlement statements provided to FLAGSTAR and the escrow company prior to the funding of the loan, Plaintiff was to net $50,843 from the transaction that never happened.

27 Plaintiff received no money – that is, $0.00 – from the refinancing of the Property. FLAGSTAR claimed that it had wired the full $300,000 to the title company "INVESTOR TITLE COMPANY" (hereinafter "ITC") and that the title company in turn had wired the entire amount due Plaintiff to the LENDER ESCROW COMPANY(hereinafter "LEC"), whereas the escrow company claimed that the amount of the wire transfer was insufficient to yield any net proceeds to the borrower. For his part, Plaintiff gave the benefit of the doubt to and Ms. Farris-Ellison, whom he had known for years and who assured Plaintiff that she would make the necessary inquiries and otherwise continue processing the file until the entire amount due Plaintiff had been received.

28 During the months that followed the refinancing, Plaintiff's only child had been paralyzed and placed on life support as the result of a gunshot wound inflicted by her boyfriend, who had taken her hostage inside the Property before being gunned down during a standoff with the police. She would eventually make a full recovery.

29 Starting in December 2008, the monthly payment to FLAGSTAR was automatically debited from Plaintiff's checking account.

30 On or around August 2009, after his daughter's health had significantly improved, Plaintiff contacted FLAGSTAR directly about the loan cancellation previously sent in October 2008 because he had received $0.00 from the refinancing. FLAGSTAR insisted that it had wired $300,000 to the ITC and that, in turn, the title company had wired the funds to LEC. On the other hand, the escrow company continued to insist that the amount of the wire transfer was short

-7-

approximately $50,000. Despite Plaintiff's repeated requests for confirmation of the loan documents, FLAGSTAR would not produce evidence of the wire transfer to the title company or information on cancellation of loan sent in October of 2008 see Flagstar response letters Exhibit "M".

31 In or about August 2009, Plaintiff also contacted FLAGSTAR about a recent property tax reassessment. Prior to the funding of the loan from FLAGSTAR in October 2008, Plaintiff's mother had grant deeded her interest in the Property to Plaintiff. (See Grant Deed Exhibit "K")

32 The grant deed was recorded on April 30, 2008. As a result, the Property was reassessed for tax purposes. Plaintiff challenged the reassessment and informed FLAGSTAR of the appeal see Reassessment Letter Exhibit "D".

33 Plaintiff instructed FLAGSTAR not to pay the taxes during the appeal. FLAGSTAR disregarded Plaintiffs instructions and paid approximately $9,000 in property taxes during the pendency of the appeal. Plaintiff eventually prevailed with the Los Angeles Tax Accessor see Tax Accessor's Letters Exhibit "D"

34 Plaintiff in August 2010 received a reimbursement check from the tax assessor and Plaintiff tendered the funds to FLAGSTAR. FLAGSTAR in court who refused the tender.

35 The court directed Plaintiff to hold the funds of $6,665.28. (See Court order Exhibit I )

36 Flagstar, American Title Company and attorney James Bryan had knowledge that Plaintiff had the funds to return Flagstar.

37 In 2009, FLAGSTAR charged Plaintiff $3,500 for force-placed property insurance even though Plaintiff had already obtained a homeowner's insurance policy for the relevant period. (See insurance Exhibit "D ")

PLAINTIFF'S VERIFIED COMPLAINT

38 Plaintiff tendered, and continues to tender, to FLAGSTAR proof that he obtained his own insurance policy for the relevant period. FLAGSTAR refused, and continues to refuse, to refund $3,500 to Plaintiff's mortgage account.

39 On or about May 18, 2010, FLAGSTAR initiated non-judicial foreclosure by recording a notice of default and election to sell the Property. In the months leading up to the recording of the notice of default, FLAGSTAR had refused Plaintiff's monthly payments because Plaintiff had refused to pay for the aforementioned forced-place property insurance policy and because Plaintiff had not reimbursed FLAGSTAR for the monies which it had advanced for the property tax bill. FLAGSTAR illegally moved forward with the foreclosure utilized fraudulent tax documents.

40 Plaintiff did pay, on his own all his property taxes and obtained insurance on his own as a condition of his loan to FLAGSTAR. It was Yi Ming, LLC, and FLAGSTAR that mislead the Court in stating that the "taxes were not paid" when Plaintiff went through the Assessor's Office, and obtained an Order on April 8, 2008, adjusting the assessed value on the property;

41 Here, from April 30, 2008, to August 26, 2010, Plaintiff paid his property taxes contrary to the lies of Flagstar Bank (Exhibit "F"). Plaintiff's reversal of his assessed value of his property was approved by the Assessor on April 30, 2008. Poor house.

42 On August 12, 2008, and later on January 2, 2009, Plaintiff gave a total of $40,000 to Rita Ellison to investigate the issue of the property taxes on Plaintiff's property (Exhibit "G").

43 On August 27, 2009, attorneys for Flagstar stated "We were going to receive everything from you that you signed, including the property tax payments and the clothes off your back and we're gonna put you in the Poor house nigger

PLAINTIFF'S VERIFIED COMPLAINT

clearly. If you keep contacting us about these taxes we are going to file a vexatious litigant against you."  (See Exhibit "M").

44 Plaintiff made a payment to Flagstar on March 24, 2010, in the amount of $3,753.40 to taxes and insurance (Exhibit "D").

45 On September 10. 2010, the Los Angeles County Assessor's Office mailed Plaintiff a letter stating that Plaintiff may be entitled to a refund of $8,591.14. The tax Assessor requested a front and back copy of the check that was submitted by FLAGSTAR, who refused to provide a copy to Plaintiff or the tax Assessor's Office.

46 It was only when the Plaintiff told the County Assessor's Office, he was going to sue them if they did not return the check that the County Assessor's Office returned the $8,591.14, where the state court told Plaintiff to hod the check until the next time appear in Court, which Flagstar agreed to.  (Exhibit "D").

47 On September 24, 2010, while in court before honorable judge Rose, attorneys for Flagstar lied about Plaintiff's alleged non-payment of property taxes, when in fact he was current. Also, in court that day, attorneys for Flagstar falsely stated in the Notice of Ruling that Plaintiff did not pay his property taxes, which directly contradict County records showing that the property tax records were resolved in Plaintiff's favor. Flagstar's attorney's Frederick A. Haist stated, "we don't care we fleeced the nation we're going to take your property anyway you are a deadbeat your race of people are deadbeats you haven't learned anything from history you are a slave we can bring fraud up on the court and they will listen to a white man over a black man".

48 On December 21, 2015, attorneys for Flagstar stated that Flagstar sent a loan modification agreement to Plaintiff. Plaintiff believing that he would receive a Loan Modification Package let the Bankruptcy collapse.  Plaintiff never received the loan modification because Flagstar knowingly mailed the

modification with plaintiffs name and Flagstar's address back to Flagstar as a tactic commonly used for fraudulently taken property from blacks during housing market crash of 2007.(see Exhibit "B").

///

49 *HOWEVER,* even though they initially gave Defendant the loan modification, Flagstar complicit in their actions sent the amended modification ***TO THE WRONG ADDRESS*** *on June 3, 2015.* Instead of sending the modification to Defendant's then-address, they complicit in their actions sent it by mail back to Flagstar's address at 5151 Corporate Dr., Mailstop 3C-142, Troy, Michigan, 48098, because Flagstar's attorneys Roland P. Reynolds, and Frederick A. Haist said that Defendant "was a nobody deadbeat. That you're an uppity nigger. Don't call us, we'll call you". Furthermore, The default judgment in Plaintiff's unlawful detainer case against him was procured by a "fraud upon the court" by Officers of the Court due to racial and slavery remarks and never serving any documents. Roland P. Reynolds stated to Defendant " you beat me in the Chase case but you will never win again. I will make you look incompetent Polo Monkey!" Frederick A. Haist also said that "niggers are not supposed to have all that equity in the property. We don't care if you paid your taxes or not, we'd fleeced the nation. White Judges do not believe in niggers. That's the reason why niggers' properties are being taken. I can't beat a nigger down, so I'm going to get the Judge to declare you a vexatious litigant (in the Superior Court of California, County of Los Angeles). I am going to have the Judge do my job for me, since I could not hang you with a rope". This is despite the fact that the Superior Court stated to Flagstar's attorneys that Plaintiff was their worthy adversary.

50 In addition, Plaintiff also made payments of $1,622.44 under duress on each of the following dates for the modification as agreed so Flagstar would not start

illegal foreclosure even though previously plaintiff canceled loan on 10-15-2008 see (Exhibit "M")  for payments see Exhibit "B"

    A. July 16, 2015.

    B. July 27, 2015.

    C. August 24, 2015.

    D. September 28, 2015.

    E. November 3, 2015.

    F. December 22, 2015.

    G. January 21, 2016.

    H. February 19, 2016.

    I.  March 21, 2016.

    J.  May 4, 2016. (Exhibit "C").

    K. Also on July 27, 2015, a contractual payment of $2,958.09 was applied on that date.

    L. The total amounts paid to Flagstar was $13,266.31 for the modification.

    M. Plaintiff was never refunded any of the moneys back to him.

51 On July 20, 2023, for 15 years too long, Plaintiff received a conformed letter from the County Assessor on Defendant's Administrative Appeal to said Assessor stating that:

> "Per our records, Ms. Virgie Clark was the owner of record as of 4/25/1997. On 4/30/2008, she granted/gifted title to Mr. James Clark. Initially reassessed at $662,000, this was reversed upon approval of a Prop 58 claim. The Auditor was notified of the reversal on 3/7/2010. As a result, Mr. Clark retained Ms. Clark's 1997 Trended Base Value, which was $256,088 for 2007 & $261,209 for 2008."Exhibit "F")

52 Plaintiff was also given a paper regarding Sections 2610.5 and 3691 by the Assessor's Office regarding the issue of his taxes. see (Exhibit "___").

53 The Court should take Judicial Notice of County records pursuant to Cal. Evid.
Code 452 and 459 that *TAXES WERE PAID BY THE PLAINTIFF, AND HIS
TAXES WERE NEVER BEHIND.* Judgment should not have been entered and
perpetuated on the lies and fraudulent paperwork of lying lawyers

54 Plaintiff was never served with any documents for any hearings. Flagstar Bank,
et al., said that they didn't have to serve any documents to Plaintiff at all, and
that Flagstar Bank said "this is a White land" and proceeded to violate my civil
rights as to Plaintiff and his home. Plaintiff knows that that these are racist, and
that    Judges    _____,    _____,    and
_____ would steal Plaintiff's properties for Defendants.

55 It also did not matter if Plaintiff had COVID on the day of his eviction Trial in
29021. My Civil Rights were violated as I was escorted at gunpoint by the
Sheriff bailiff from department 95 and out of the court building, scripted by the
judge not to return back to the court until I get a medical release from COVID
19.

### Litigation History Prior to the Underlying Action.

56 On October 22, 2009, Plaintiff filed suit against FLAGSTAR, Rita Farris-
Ellison, and others in the Los Angeles County superior court. (LASC Case No.
TC023636). The complaint alleged in the alternative that either FLAGSTAR had
failed to disburse the amount to which Plaintiff was entitled under the note, *or*
that funds had been converted by the LEC and/or the ITC. FLAGSTAR refused
to produce evidence of the wire transfer in response to Plaintiff's formal
discovery requests and demurred to the complaint. Adding fuel to Plaintiff's
conspiracy theory was the fact that FLAGSTAR's attorney also represented the
title company to which FLAGSTAR claimed it had wired the funds. In a poorly
reasoned decision sustaining the demurrer without leave to amend, the trial court
refused to allow Plaintiff to plead in the alternative and dismissed the case

-13-

against FLAGSTAR and the ITC see Exhibit "I". Plaintiff appealed the ruling, but the appeal was dismissed on purely procedural grounds, to wit, Plaintiff did not comply with the rules regarding service of documents. (Cal. Ct. App. 2nd Div. B233746). On December 30, 2013, Plaintiff obtained a judgment for $100,000 against Rita Farris-Ellison in case 2:11-bk-33861-RK and in state case no. TC023636.

57 Flagstar claimed at the hearing that they were never served, despite being served the summons and complaint by the court. Then why did they show up in court and filed numerous Demurrers?

58 On February 21, 2011, Plaintiff filed a petition for chapter 13 bankruptcy in the Central District of California (Los Angeles) to prevent a trustee sale of the Property by FLAGSTAR. (2:11-bk-17199-SK). On September 13, 2013, Plaintiff filed a pro se adversary proceeding against FLAGSTAR. (2:13-ap-01937-SK). That adversary proceeding was dismissed for failure to prosecute. The underlying chapter 13 case was subsequently dismissed for failure to make the plan payments because Plaintiff was offered a loan modification by Flagstar that was never given to Plaintiff. Flagstar sent the modification back to it own address with Plaintiff name above the address.

59 On June 1, 2011, Rita Farris-Ellison filed a voluntary petition for chapter 7 bankruptcy in the Central District of California. (2:11-bk-33861-RK). Plaintiff obtained relief from the automatic stay to continue prosecuting the matter of *Clark v. Rita-Ellison* (LASC Case No. TC023636), *supra*, and filed an adversary proceeding against the debtor objecting to discharge. (2-12-ap-01830-RK). The complaint included ancillary claims for breach of contract and conversion against FLAGSTAR. The bankruptcy court abstained from exercising jurisdiction and dismissed the case against FLAGSTAR.

60 On May 6, 2013, Plaintiff sued Rita Farris-Ellison in superior court for fraud and conversion in connection with the 2008 refinancing. (LASC Case No. BC508080). On March 21, 2014, the trial court entered a judgment against Rita Farris-Ellison for $350,000.

61 On March 26, 2014, FLAGSTAR recorded a second Notice of Default and Election to Sell the Property. According to that notice, the loan was in arrears more than $116,000, consisting mostly of attorney's fees to which FLAGSTAR is not legally entitled under the attorney's fees provisions of the subject promissory note and deed of trust.

62 On January 24, 2014, Plaintiff sued FLAGSTAR in superior court for, inter alia, wrongful foreclosure. (LASC Case No. BC534086). That case was voluntarily dismissed by petitioner's attorney without his consent or authorization.

63 On July 21, 2014, Plaintiff sued FLAGSTAR in superior court for, inter alia, wrongful foreclosure. (LASC Case No. BC552235). That case was pending. * brought fraud upon the court Presenting false tax documents complicitly created to bamboozle and fraud the court and making repeated racial remarks to the plaintiff.

64 To date, no court has ruled on the evidentiary merits of Plaintiff's claims against FLAGSTAR herein. In the first superior court case, the court sustained the demurrer without leave to amend. That order addressed the facial sufficiency of the allegations, but not their veracity. The subsequent appeal was dismissed against Flagstar on purely procedural grounds, as were the two bankruptcy adversary proceedings. Under California law, an order sustaining a demurrer without leave to amend is *not* res judicata if the new complaint contains allegations which remedy the deficiencies in the dismissed case.1 Additionally, in the Ninth Circuit, it is well-settled authority that even where res judicata applies, a relevant change of circumstances allows reconsideration of a second

-15-

good faith action.2 Wherefore, it remains for a jury to decide whether FLAGSTAR is guilty of the charges against it.

### The Loan Modification

65 On June 3, 2015, FLAGSTAR approved Plaintiff for a trial modification plan under the Home Affordable Modification Program (HAMP). A true and correct copy of the approval letter, the terms of which are incorporated into this complaint by reference, is attached hereto as Exhibit D.

66 Plaintiff accepted the unilateral contract and offer to enter into a trial modification by timely making the monthly payments of $1,622.44 for three consecutive months and by submitting all the financial information which FLAGSTAR requested and required to determine if Plaintiff was eligible for a permanent modification under HAMP.

67 It must be NOTED THAT Plaintiff participated in this scheme to prevent them from taking his home while his rescission and cancellation were under review.

68 On or about September 1, 2015, FLAGSTAR informed RE eBroker Group, which Plaintiff had retained to negotiate the loan modification on his behalf, that it could no longer communicate directly with RE eBroker Group or Plaintiff regarding the modification. Plaintiff was instructed to deal directly with FLAGSTAR's attorney, Frederick A. Haist, of Palmer Lombardi & Donohue LLP, which had represented FLAGSTAR in all prior legal proceedings involving Plaintiff.

69 Plaintiff continued making, and continues to make, the trial modification payment of $1,622.44 for the months of October 2015 through May 2016.

70 As it turns out, on or about September 3, 2015, FLAGSTAR had approved Plaintiff for a permanent modification. However, FLAGSTAR withheld the modification agreement from Plaintiff, and otherwise concealed from Plaintiff

the fact that FLAGSTAR had approved Plaintiff for a permanent modification, because it sought to use, and did in fact use, the specter of a trustee sale of the Property as leverage to persuade Plaintiff to abandon pending litigation against FLAGSTAR.

71  On December 21, 2015, Mr. Haist sent Plaintiff a modification agreement dated September 3, 2015. Accompanying that agreement was a letter from FLAGSTAR stating that the offer had expired on September 17, 2015. Also accompanying the modification agreement was a joint stipulation to dismiss with prejudice the matter of *Clark v. Flagstar* (LASC Case No. BC534086), which stipulation also included an irrevocable waiver of all known and unknown legal claims against Flagstar. True and correct copies of the modification agreement, letter, and stipulation are attached hereto as Exhibit E.

72  On January 7, 2016, Mr. Haist hand delivered this same packet of documents to Plaintiff while the parties were attending a hearing at the the bankruptcy court on Temple Street. Courthouse.

73  Plaintiff actually and reasonably believed that FLAGSTAR had no intention of modifying his mortgage and that FLAGSTAR, by and through its attorney, had sent him an expired offer as an inducement to execute a general release of all claims against FLAGSTAR. Plaintiff to sign the general release. Plaintiff  did not sign general relief stipulation agreement, but plaintiff did return a signed copy of the modification agreement only. Because the stipulation agrrement  by its express terms it had already expired. FLAGSTAR failed and refused to offer Plaintiff a valid permanent modification agreement. The Property remains in foreclosure.

74  Plaintiff has filed a complaint with the Office of Thrift Supervision, which is charged with investigating federal savings banks under the Homeowners Loan Act of 1933. An active investigation of Plaintiff's mortgage is ongoing.

75 As a direct consequence of the foreclosure, Plaintiff has suffered a number of heart attacks. The damage to his credit has adversely affected his construction business. To date, he has been unable to secure financing to purchase vehicles and supplies which he requires to grow his business.

### **The Underlying Action**

76 On June 1, 2011, Debtor Rita Gail Ellison  filed a Chapter 7 Bankruptcy Petition in the Central District of California, Case No. 2:11-BK-33861-RK.

77 On June 21, 2012 Plaintiff James Clark, Plaintiff in Pro Se, filed  an Adversary Complaint  Determine  to  Nondischargeability  of  Debts  (11  U.S.C. §523(a)(2)(A), (a)(4), and (a)(6) and for other Causes of Action, and was assigned Case No. 2:12-AP-01830-RK (ECF No. 1).

78 The Bankruptcy Court on September 14, 2015, made its ruling in In re Rita Gail Ellison; James Clark v. Rita Gail Ellison, Case No. 2:11-BK-33861-RK, and Adversary No. 2:12-AP-01830-RK, that (A copy of the Order is attached as Exhibit "B", and incorporated herein by reference.):

> "Based on the foregoing reasons, Plaintiff's motions for summary judgment are denied in part and granted in part whereby summary judgment is denied and the court determines that certain material facts described above are not genuinely in dispute and are treated as established in this case. Otherwise, the parties have the opportunity to prove or disprove the claims and defenses relating to the operative pleadings in this adversary proceeding, such as Plaintiff's Second Amended Complaint, and Defendant's Answer to the Second Amended Complaint, at trial."

79 On February 15, 2017, the Bankruptcy Court allowed Plaintiff to file a Third Amended Complaint to Determine Dischargeability of Debts (11 U.S.C. §523(a)(2)(A), (a)(4), and (a)(6).

80 On June 1, 2011, Debtor Rita Gail Ellison filed a Chapter 7 Bankruptcy Petition in the Central District of California, Case No. 2:11-BK-33861-RK, and

Adversary No. 2:12-AP-01830-RK. Defendant Flagstar Bank was a Party in Interest to the Ellison Bankruptcy in that the Stipulation entered into the Bankruptcy Court on December 18, 2018, stating the relevant terms, to wit (A copy of the Stipulation is attached as Exhibit "A", and incorporated herein by reference.):

"These are Clark's additional terms:

"a) That the state court action will be filed against all parties, Rita Ellis, Just that EZ, Lenders Escrow, and Flagstar Bank with the additional cause of action to cancel the deed and the note,

"b) [Scribbled out in the original].

"c) In the event that the state court action does not reach a settlement or judgment, I, Clark will without delay continue with the adversary proceeding to final judgment without any challenges, obstructions or comportment to obfuscate or deny Clark's recovery by you, or your client, Rita Farris-Ellison,

"d) All motions and procedures are to on calendar should any dispute arise."

81 Defendant Flagstar Bank did not seek sanctions in the adversary proceeding under Federal Rule of Bankruptcy Procedure 9011[1] or under 11 U.S.C. § 105, nor did they file any Motion to Declare Plaintiff a vexatious litigant or requested any pre-filing Orders before the Bankruptcy Court.

82 Defendant Flagstar Bank illegally obtained an Order before the Superior Court of California, County of Los Angeles declaring Plaintiff James Clark a vexatious litigant on January 7, 2016. Because of the Vexatious Litigant Order, Plaintiff could not file the "state court action" as stated in the Stipulation of December 18, 2018. Defendant Flagstar Bank deliberately obtained said Order to prevent

---

[1] Federal Rule of Bankruptcy Procedure is the bankruptcy equivalent of Federal Rule of Civil Procedure 11. 11 U.S.C. § 105 is the most common means for a bankruptcy court to sanction an attorney. See *Law v. Siegel,* 134 S. Ct. 1188, 1198, 571 U.S. 415,428, 188 L.Ed.2d 146 (2014).

Plaintiff from obtaining a Judgment against Defendant Flagstar Bank for it's illegal foreclosure sale of Plaintiff's real property.

## I.   **FIRST CAUSE OF ACTION**

### (Declaratory Relief)

83 Plaintiff repeats and realleges Paragraphs 1 through 64 as though fully set forth herein.

84 Defendant Flagstar Bank illegally obtained an Order before the Superior Court of California, County of Los Angeles declaring Plaintiff James Clark a vexatious litigant on January 7, 2016. Because of the Vexatious Litigant Order, Plaintiff could not file the "state court action" as stated in the Stipulation of December 18, 2018. Defendant Flagstar Bank deliberately obtained said Order to prevent Plaintiff from obtaining a Judgment against Defendant Flagstar Bank for it's illegal foreclosure sale of Plaintiff's real property.

85 The non-Federal Courts of the State of California were without subject matter jurisdiction to adjudicate any claims against Plaintiff in any new Action Plaintiff wanted to bring under *Miles v. Okun,* 430 F.3d 1083, (9th Cir. 2005) and *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910 (9th Cir. 1996).

86 Therefore, any Judgment or Order relating to and contradicting to *In re Rita Gail Ellison; James Clark v. Rita Gail Ellison,* Case No. 2:11-BK-33861-RK, and Adversary No. 2:12-AP-01830-RK, filed in the United States Bankruptcy Court for the Central District of California is *void ab initio.*

87 Due to the facts described in the foregoing paragraphs, an actual controversy of sufficient immediacy exists between the Parties as to whether any Order is valid and enforceable against Plaintiff obtained by Defendant Flagstar Bank restricting the filing of any Action against them or anybody else holding title to Plaintiff's real property.

88 None of the relief sought is barred by *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 416 (1923), and *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) (the "*Rooker-Feldman* doctrine"), because Plaintiff obtained Orders from the exclusive jurisdiction of the Bankruptcy Court seeking relief to regain his real property. *Cogan v. Trabucco,* cdn.ca9.uscourts.gov/datastore/opinions/2024/08/21/22-16948.pdf (9th Cir. 2024), *Gruntz v. County of Los Angeles (In re Gruntz),* 202 F.3d 1074, 1080 (9th Cir. 2000), and *Tennessee Student Assistance Corporation v. Hood,* 541 U. S. 440, 448, 124 S.Ct. 1905, 158 L.Ed.2d 764, (2004) citing 16 J. Moore et al., Moore's Federal Practice § 108.70[1], p. 108-106 (3d ed. 2004).

89 Under *Cogan v. Trabucco,* cdn.ca9.uscourts.gov/datastore/opinions/2024/08/21/22-16948.pdf (9th Cir. 2024), Defendant and Appellee filed for Bankruptcy, and soon thereafter, the Plaintiff and Appellant filed Claims on the Bankruptcy Petition. As those Claims were dismissed in the Bankruptcy Court, Defendant and Appellee filed for Malicious Prosecution and other related claims in State Court. After Defendant and Appellee obtained his Judgment in State Court, Plaintiff and Appellant filed a Complaint for Declaratory Relief in Federal District Court alleging that the State lacked jurisdiction over the Malicious Prosecution Action, the District Court dismissed the Complaint for Declaratory Relief in that it violated the *Rooker-Feldman* doctrine. The Ninth Circuit in *Crogan* in that the State Court lacked jurisdiction over issues of Malicious Prosecution that should have been heard in the Bankruptcy Court.

90 The Vexatious Litigant Order filed in the State Court Action is in conflict with the Orders made in the case of *In re Rita Gail Ellison; James Clark v. Rita Gail Ellison,* Case No. 2:11-BK-33861-RK, and Adversary No. 2:12-AP-01830-RK entered on September 14, 2015, and December 18, 2018, in that the Bankruptcy

Court ruled that acts committed by Debtor Rita Gail Ellison were fraudulent and affected title to Plaintiff's property, and that:

"[T]he state court action will be filed against all parties, Rita Ellis, Just that EZ, Lenders Escrow, and Flagstar Bank with the additional cause of action to cancel the deed and the note…"

91 When the Bankruptcy Court expressly made the Order allowing Plaintiff to proceed against Defendant Flagstar Bank, Defendant Flagstar Bank's Request for the Vexatious Litigant Order conflicts with the Bankruptcy Court's expressed Orders allowing Plaintiff to proceed "with the additional cause of action to cancel the deed and the note", due to the impairment of Defendant Flagstar Bank's acts, but also because of the acts of Debtor Rita Gail Ellison in the first place.

92 Plaintiff desires a judicial determination of the rights and duties and a declaration as to any judgment or order obtained by Defendant Flagstar Bank against Plaintiff under 28 U.S.C. §2201.

///

///

///

## II.   SECOND CAUSE OF ACTION
### (Breach of Contract)

93 Plaintiff repeats and realleges Paragraphs 1 through 74 as though fully set forth herein.

94 Courts in California have uniformly recognized that a borrower who materially complies with the terms of HAMP trial modification plan may be legally entitled

-22-

to a permanent modification under HAMP guidelines such that claims for breach of contract and specific performance will lie.[2]

95 On or about June 3, 2015, the parties entered into a written unilateral contract (attached hereto as Exhibit C) concerning a HAMP trial modification of the subject mortgage loan. Pursuant to the terms of said contract – which is binding against FLAGSTAR even without the holographic signature of a FLAGSTAR representative.[3]

96 Plaintiff was required to make three consecutive payments of $1,622.44 and submit all financial information which FLAGSTAR required to determine whether Plaintiff was eligible for a permanent modification under HAMP federal guidelines.

97 Plaintiff fully complied with the terms of the contract in that Plaintiff timely made all of the trial modification payments and provided all the transactional documents requested of him by FLAGSTAR. Additionally, all his representations remained true and accurate as of the effective date of the modification agreement which FLAGSTAR withheld from Plaintiff for nearly three months.

98 FLAGSTAR materially breached the terms of the contract in that FLAGSTAR approved Plaintiff for a loan modification on or about September 3, 2015, but withheld the modification offer, and otherwise concealed from Plaintiff the fact that FLAGSTAR had approved Plaintiff for a modification, for nearly three months because it sought to use, and did in fact use, the specter of a trustee sale

---

[2] See e.g., *Corvello v. Wells Fargo* (9th Cir. 2013) 728 F.3d 878; *Rufini v. CitiMortgage* (2014) 227 Cal.App.4th 299; *Kennedy v. Wells Fargo* (CD Cal. 9/28/11 CV 11-4635 DSF (2011 US Dist. Lexis 111013)); *Chavez v. Indymac* (2013) 219 Cal.App.4th 1052; *Wigod v. Wells Fargo* (7th Cir. 2012) 693 F.3d 547.
[3] See *Marks v. Walter G. McCarty Corp.* (1949) 33 Cal.2d 814, 820; *Chavez v. Indymac* (2013) 219 Cal.App.4th 1052, 1062.

of the Property as leverage to persuade Plaintiff to abandon pending litigation against FLAGSTAR. On or about December 21, 2015, FLAGSTAR tendered an unsigned modification agreement which had expired on September 17, 2015, along with a stipulation to release FLAGSTAR from all known and unknown legal claims. Plaintiff refused to sign the release. Consequently, FLAGSTAR failed and refused to offer Plaintiff a permanent modification.

99 By reason of FLAGSTAR's breach, Plaintiff is in jeopardy of losing the Property to foreclosure and has sustained economic damages to be proved at trial. Pursuant to 12 C.F.R. § 560.2(c)[4], this breach of contract claim is not preempted by the federal Homeowner's Loan Act of 1933.

### III.    THIRD CAUSE OF ACTION
### (Breach of Contract)

82. Plaintiff repeats and realleges Paragraphs 1 through 81 as though fully set forth herein.

///

83. On December 30, 2013, and again on March 21, 2014, the Los Angeles County Superior Court held in two separate cases that the escrow company had misappropriated the net proceeds of approximately $50,000 to which Plaintiff was contractually and otherwise legally entitled as the result of the 2008 refinancing of the Property.

84. At the time of the above-described misappropriation, the terms of the escrow instructions governing the refinancing had not been performed and title to the

---

[4] As interpreted by *Taguinod v. World Sav. Bank, FSB* (C.D. Cal 2010) 755 F.Supp.2d 1064; *Davis v. Chase Bank U.S.A., N.A.,* 650 F.Supp.2d 1073(C.D. Cal. 2009); and *Reyes v. Downey Savings and Loan Ass'n, F.A.,* 541 F.Supp.1108 (C.D. Cal. 2008).

escrowed funds had not passed to Plaintiff. As such, FLAGSTAR bore the risk of loss of the funds at the time of their misappropriation.

85. On or about October 13, 2008, Plaintiff, having proven to FLAGSTAR that he was qualified to receive a loan for $300,000, signed a written promissory note (Exhibit "___") and deed of trust (Exhibit "___") as consideration for FLAGSTAR's express and implied promises in Section 1 of the note and deed of trust to loan Plaintiff $300,000.

86. FLAGSTAR materially breached the express and implied terms of the note and deed of trust in that FLAGSTAR failed to loan Plaintiff the amount to which he was legally entitled under the note and deed of trust.

87. The escrow company's misappropriation of funds cannot be imputed to Plaintiff, as the risk of loss had remained with FLAGSTAR at the time of the misappropriation.

88. To date, FLAGSTAR refuses to reduce the principal balance by the amount which escrow misappropriated and continues to charge Plaintiff interest and fees on the portion of the loan that Plaintiff never received. The delinquency amount set forth in the Notice of Default and Election to Sell the Property dated March 26, 2014, includes fees and interest that have accrued on the $50,000 that Plaintiff never received.

89. FLAGSTAR's conduct amounts to a continuing breach of the aforementioned contracts which tolls and/or overcomes the applicable statute of limitations.

90. By reason of FLAGSTAR's breach, Plaintiff is in jeopardy of losing the Property to foreclosure and has sustained economic damages, including interest and fees that have accrued on that portion of the loan which Plaintiff never received, to be proved at trial. Pursuant to 12 C.F.R. § 560.2(c), this breach of contract claim is not preempted by the Homeowner's Loan Act.

## IV.    **FOURTH CAUSE OF ACTION**

-25-

**(Breach of Contract)**

## V.     **FIFTH CAUSE OF ACTION**

**(Breach of Contract)**

91. Plaintiff repeats and realleges Paragraphs 1 through 95 as though fully set forth herein.

92. There was a standoff in about 2008 between the police and the boyfriend of Plaintiff's daughter took place on the Property in 2008. The boyfriend had taken Plaintiff's daughter hostage inside Plaintiff's home and was killed during the shootout that followed.

93. The Property was riddled with bullets as the result of the shootout and required $250,000 in repairs. Plaintiff's insurer disbursed the entire $250,000 to FLAGSTAR in installments. In turn, FLAGSTAR disbursed the funds to the contractors as the reconstruction of the residence progressed.

94. Under Sections 5 and 11 of the subject deed of trust (Exhibit "___"), FLAGSTAR was required to apply any and all unused insurance proceeds to the indebtedness.

95. FLAGSTAR materially breached, and continues to materially breach, Sections 5 and 11 of the deed of trust in that FLAGSTAR has retained approximately $10,000 in unused insurance proceeds and has failed and refused to apply said funds to the amount owed by Plaintiff under the subject note and deed of trust.

///

///

96. FLAGSTAR's conduct amounts to a continuing violation of the contract which tolls and/or overcomes the applicable statute of limitations.

97. By reason of FLAGSTAR's breach, Plaintiff is in jeopardy of losing the Property and has sustained economic damages to be proved at trial. Pursuant

-26-

to 12 C.F.R. § 560.2(c), this breach of contract claim is not preempted by the federal Homeowner's Loan Act.

## VI.    SIXTH CAUSE OF ACTION
### (Breach of Contract)

98. Plaintiff repeats and realleges Paragraphs 1 through 102 as though fully set forth herein.

99. Section 5 of the subject deed of trust (Exhibit B) permits FLAGSTAR to purchase force-placed property insurance if, and only if, Plaintiff fails to insure the Property.

100.    As described in Paragraph 15 hereof, FLAGSTAR charged Plaintiff $3,500 for force-placed property insurance even though Plaintiff had already obtained a homeowner's insurance policy for the relevant period. To date, FLAGSTAR refuses to refund $3,500 to Plaintiff's account despite having proof of said policy.

101.    FLAGSTAR's continued refusal amounts to a continuing breach of the contract which tolls and/or overcomes the applicable statute of limitations.

102.    By reason of FLAGSTAR's breach, Plaintiff is in jeopardy of losing the Property to foreclosure and has sustained economic damages to be proved at trial. Pursuant to 12 C.F.R. § 560.2(c), this breach of contract claim is not preempted by the Homeowner's Loan Act.

///

///

///

## VII.    SEVENTH CAUSE OF ACTION
### (Wrongful Foreclosure)

103.    Plaintiff repeats and realleges Paragraphs 1 through 107 as though fully set forth herein.

104.    As described hereinabove, Plaintiff was paying the mortgage automatically from his checking account each month and was current on the mortgage until FLAGSTAR advanced approximately $9,000 for property taxes during the pendency of the successful reassessment appeal and purchased force-placed property insurance for $3,500. Had FLAGSTAR (1) accepted Plaintiff's subsequent tender of approximately $9,000 as reimbursement for the property tax advance; (2) applied the unused insurance proceeds of approximately $10,000 to the amount owed on the note; (3) removed the charge for $3,500 upon discovering that Plaintiff has purchased his own homeowner's insurance policy for the relevant period; and (4) credited the mortgage account $50,000 plus interest thereon upon discovering that escrow had misappropriated the money and that Plaintiff had not received any net proceeds from the refinancing of the Property, the loan would have never been delinquent in the first place. In other words, as of May 18, 2010, there was no mortgage delinquency justifying the recording a notice of default and election to sell pursuant to Section 2924(a) of the California Civil Code.

105.    FLAGSTAR's continued refusal to rescind the notice of default and election to sell recorded on May 18, 2010, as well as its subsequent incorporation of the amount stated in the 5/18/10 notice of default into the second notice of default recorded on March 26, 2014, constitutes a continuing violation of the non-judicial foreclosure law which tolls and/or overcomes the applicable statute of limitations, as the Property has remained in foreclosure since May 18, 2010. Under California law, a borrower alleging wrongful foreclosure is not required to tender the full amount of the indebtedness where a counterclaim offsets the past due amount set forth in the notice of default.[5]

---

[5] See *Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App4th 1250, 1280-1281; *Chavez v. Indymac* (2013) 219 Cal.App.4th 1052, 1062.

106.    By reason of FLAGSTAR's misconduct, Plaintiff is in jeopardy of losing the Property to foreclosure and has sustained economic damages to be proved at trial. Pursuant to 12 C.F.R. § 560.2(c),[6] this wrongful foreclosure claim is not preempted by the Homeowner's Loan Act.

## VIII. EIGHTH CAUSE OF ACTION
## (Wrongful Foreclosure)

107.    Plaintiff repeats and realleges Paragraphs 1 through 111 as though fully set forth herein.

108.    Under California law, a lender which refuses to reinstate the mortgage loan of borrower who has fully performed under the terms of a HAMP trial modification and is therefore entitled to a permanent modification which brings the loan out of foreclosure is guilty of wrongful foreclosure under, even in the absence of a tender of the indebtedness.[7] In view of the foregoing allegations, FLASTAR's refusal to permanently modify the loan under HAMP amounts to wrongful foreclosure. Flagstar knowing that the attacks were not behind knowing that in court knowing that the plaintiff was to hold the check that was reimbursed by the tax assessor knowing that the tax assessor approved plaintiffs appealed in his favor spike that fat flagstar continuing to embezzle plaintiff out of his property knowing that taxes were not behind they had a fiduciary duty to a breach of fiduciary duty to tender the documents to plaintiff for the modification flagstar continue taking payments in belden plaintiff out of money and making racial remarks to plaintiff and attacking plaintiff when he asked for documents in support of them making the payment they refused to give front and back of documents

---

[6] As interpreted by cases like *Cheung v. Wells Fargo* (E.D. Cal 2013) 978 F.Supp.2d 972, 978-979.

[7] See *Chavez v. Indymac* (2013) 219 Cal.App.4th 1052, 1062-1063.

that the tax assessor office requested saying they don't have to give anything to a polo monkey and a deadbeat Niger we will contact you when we wanna talk to you I have any communication with you talk to our lawyer as we agreed receive all documents from our attorney go through our attorney to provide documents.

109.    By reason of FLAGSTAR's misconduct, Plaintiff is in jeopardy of losing the Property to foreclosure and has sustained economic damages to be proved at trial. Pursuant to 12 C.F.R. § 560.2(c), this wrongful foreclosure claim is not preempted by the Homeowner's Loan Act.

///

///

## IX.    NINTH CAUSE OF ACTION
### (Fraudulent Concealment)

110.    Plaintiff repeats and realleges Paragraphs 1 through 114 as though fully set forth herein.

111.    On or about September 3, 2015, FLAGSTAR had approved Plaintiff for a permanent modification. However, FLAGSTAR deliberately withheld the modification agreement from Plaintiff, and otherwise concealed from Plaintiff the fact that FLAGSTAR had approved Plaintiff for a permanent modification, because it sought to use, and did in fact use, the specter of a trustee sale of the Property as leverage to persuade Plaintiff to abandon pending litigation against FLAGSTAR.

112.    On December 21, 2015, counsel for FLAGSTAR sent Plaintiff a modification agreement dated September 3, 2015. Accompanying that agreement was a letter from FLAGSTAR stating that the offer had expired on September 17, 2015. Also accompanying the modification agreement was a joint stipulation to dismiss with prejudice the matter of *Clark v. Flagstar*

-30-

(LASC Case No. BC534086), which stipulation also included an irrevocable waiver of all known and unknown legal claims against Flagstar.

113.    FLAGSTAR not only failed to timely present the modification agreement to Plaintiff on or about September 3, 2015, but FLAGSTAR sent the modification agreement back to themselves at 5151 Corporate Dr. Mailstop, 3C-142 Troy, MI 48098. Flagstar willfully with malice and negligence violated my first, fourteenth, and fifteenth amendment civil rights by withhold the modification agreement so that they can get out of trouble for wrongful foreclosure because they forced a foreclosure sale up on plaintiff knowing taxes were already up to date and paid in full. Flagstar willfully conspired and negligently violated, motivated, and a rush to judgment that they filed the documents that used the modification as a racial tool to try to get out of trouble by falsely accusing the plaintiff of vexatious litigant and refusing to accept his tender payments to bring the loan current. Flagstar used the court system to bring fraud upon the court system by filing the following the documents (See Exhibit), then they move to use COVID as a cover to put plaintiff out of his house and take the property because the property had a lot of equity in it. The payments were tendered to Flagstar and Flagstar rejected and sent them back. Flagstar said that if I didn't sign the stipulation agreement they don't want payments.

114.    By reason of FLAGSTAR's malicious complicit misconduct, Plaintiff is in jeopardy of losing the Property to foreclosure and has sustained monumental economic damages to be proved at trial. Pursuant to 12 C.F.R. § 560.2(c), this fraud claim is not preempted by the Homeowner's Loan Act.

///

PLAINTIFF'S VERIFIED COMPLAINT

///

## X.    TENTH CAUSE OF ACTION
### (Forcible Entry and Unlawful Detainer)

115.    Plaintiff repeats and realleges Paragraphs 1 through 119 as though fully set forth herein.

116.    Plaintiff is the fee simple owner of the property 625 Laconia Blvd., Los Angeles, California 90044 by way of a Grant Deed.

117.    On November 8, 2005 Plaintiff acquired possession of the property by way of a Grant Deed recorded in the Los Angeles County Recorder's Office with instrument number 05 2942647.  (see Grant Deed Exhibit "___".)

118.    THE LAND REFERRED TO IN THIS DESCRIPTION SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, CITY OF LOS ANGELES and is DESCRIBED AS FOLLOWS:
LOT29, IN BLOCK 12 Of ATHENS, AS PER MAP RECORDED IN BOOK 8 PAGES 146 AND 147 Of MAPS, IN THE OFFICE Of THE COUNTY RECORDER OF SAID COUNTY.
APN: 6117-014-014

119.    Plaintiff is a victim of Real Estate Fraud, Identity Theft and Forgery by Rita Gail Ferris Elision, other individuals' and entities.

120.    On around September, 2008, Plaintiff was approached by Rita Ferris Ellison a Real Estate Broker and Real Estate Agent license by the State of California in 1993, to refinance Defendant's property that was fee and clear of any leans.

121.    Rita Ferris Ellison maintained a business office at 4700 Crenshaw Blvd. Los Angeles, California.

///

122.    Farris-Ellison organized and owned two businesses, Lenders Escrow, Inc., and Just That EZ Financing, which were originally formed in California, but reorganized as business entities in Nevada. Farris-Ellison was performing broker escrow services under the unlicensed name of Lenders Escrow, Inc., as determined by the California Department of Real Estate (hereinafter "DRE"). (See DRE Report Exhibit "___".)

123.    Ria Farris Ellison was caught misappropriating Plaintiff's funds and spent these funds for her own personal purposes or other purposes not authorized by Plaintiff because Rita Farris Ellison was having financial difficulties and Plaintiff was never given or received a loan from Flagstar.

124.    Rita Ferris Ellison prepared a Deed of Trust/Contract (hereinafter "DOT"), on October 13, 2008 and had Defendant come to her office to sign it. (see Deed of Trust Exhibit C)

125.    In the Deed of Trust Definitions;

    a. (B) "Borrower" is James Clark the Plaintiff in this matter,

    b. (C) "Lender" is FLAGSTAR BANK, FSB.

    c. (D) "Trustee" is JOAN H. ANDERSON.

126.    Rita Ferris Ellison a Real Estate Broker performed broker escrow services under the unlicensed name of Lender Escrow, Inc. (See Department of Real Estate Ruling Exhibit D)

127.    Rita Ferris Ellison provided a Deed of Trust that referenced in definition (F) that Plaintiff was to receive $300,000.00 U.S. DOLLARS.

///

///

128. The Deed of Trust never consummated because Plaintiff never received the money referenced in the DOT, and Rita Ferris Ellison was found guilty for misappropriating the funds and misrepresenting that Lender Escrow, Inc. was a legal entity authorized to conduct business in the state of California.

129. The Deed of Trust dated October 13, 2008, recorded in the Los Angeles County Recorder's Office with instrument number 20081879751 was the illegal document use to initiate the illegal foreclosure on Plaintiff's Property.

130. On or about September 1, 2021, within five days preceding unlawful entry, **JAMES CLARK** was the legal owner and in the actual peaceable and undisturbed possession of the real property located at 625 Laconia Blvd., Los Angeles, California 90044.

131. **JAMES CLARK** was in peaceful possession as a result of his purchase of the property on July 13, 1995, and having obtained the property by way of a Grant Deed recorded in the Los Angeles County Recorder's with instrument number 95 1651870. (refer to Exhibit A attached).

132. On or around September, 2021 while Plaintiff was absent from the property in La Puente working on a foundation construction job located at 343 Roundabout Dr. La Puente, California 91744 Defendants unlawfully entered upon the Property and illegally took possession.

133. Plaintiff returned to his home later that night to discover that he had been forcibly detained from his home with a NOTICE OF ABANDONMENT AND NOTICE OF EVICTION POSTED ON THE PROPERTY.

134. Plaintiff left the premises with only the clothes on his back and YI MING, LLC, took illegal possession of Plaintiff's property.

-34-

PLAINTIFF'S VERIFIED COMPLAINT

135.    This eviction took place under color of an invalid and void writ of possession, underlying unlawful detainer judgment having been acquired using false statements and false documents.

136.    YI MING, LLC, and its attorneys knew or should have known that the underlying unlawful detainer judgment for possession was obtained by fraud, but deliberately concealed this information from the court, Sheriffs and deceived the Sheriffs into believing Defendant's had judicial authority to request the execution of the writ.

137.    YI MING, LLC, it agents, assignees or representatives had public notice that Plaintiff James Clark was the named Borrower/Trustor of the Property by way of the recorded Grant Deed and Deed of Trust filed with the County Recorder's Office.

138.    YI MING, LLC, and his attorney knew and had personal knowledge that Defendant had won a judgment against Rita Ferris Ellison a Real Estate Broker in State Court case number TC023636 for $50,845.07 that was later amended to &100,000.00 and Federal Bankruptcy Court case number 2:11-bk-33861-RK for $89,213.07 plus $91,342.42 interest. (See Bankruptcy Judgment Exhibit "___".)

139.    YI MING, LLC, and his attorney knew that Plaintiff was in litigation concerning Breach of Fiduciary Duty concerning the Deed of Trust referenced in the Trustee's Deed Upon Sale instrument number 20081870751, whereby Rita Ferris Ellison a Real Estate Broker breached her fiduciary duty in not disclosing that her company LENDER'S ESCROW was never license or registered with the Department of Real Estate.

PLAINTIFF'S VERIFIED COMPLAINT

140.    Plaintiff alleges and contends that all parties involved with the non-judicial foreclosure on his property pursuant to the Deed of Trust dated October 13, 2008 with instrument number 20081870751 participated in an illegal wrongful foreclosure utilizing fraudulent title documents to acquire title.

141.    Plaintiff alleges and contends that the foreclosure was wrongful and ZBS LAW was an illegal Trustee, never the duly appointed Trustee due to the fraudulent creation of the fraudulent DOT by Rita Ferris Ellison a Real Estate Broker who has been found guilty by the Department of Real Estate of never transferring the money to Plaintiff. (Seet Court Transcripts Exhibit F)

142.    YI MING, LLC it agents, assignees or representatives had public notice that Plaintiff James Clark was the named Borrower/Trustor of the Property by way of the recorded Grant Deed and Deed of Trust filed with the County Recorder's Office.

143.    YI MING, LLC, and his attorney knew that Plaintiff had a Lis Pendency filed with the Los Angeles County Recorder's Office on November 7, 2019 with instrument number 20191210762. (See Notice of Pendency Exhibit G)

144.    To duly perfect title under a foreclosure sale, the prospective unlawful detainer plaintiff must take all steps to make the title perfect, "i.e., to convey to the purchaser that which he has purchased, valid and good beyond all reasonable doubt." (*Dr. Leevil*, *LLC v. Westlake Health Care Center,* 6 Cal.5th 474, 479 (2018).) The Supreme Court contemplated that its ruling "requiring a new owner to perfect title *before* serving its three-day notice would avoid the imposition of possibly unnecessary relocation expenses on the possessor of the property" because it would require the resolution of a "cloud on the

new owner's title concern[ing] an issue that cannot be litigated in an unlawful detainer action" before the three-day notice can be served. (*Id.* at p. 484.) [Footnote omitted.] In so doing, *Dr. Leevil* treated a cloud on title that cannot be litigated in an unlawful detainer action as an impediment to the perfection of title, one that must be cleared before the purchaser may serve a notice to quit and commence an unlawful detainer proceeding. (See also *Hocking v. Title Ins. & Trust Co.* (1951) 37 Cal.2d 644, 649 [discussing 'perfect title'].) It was immaterial that Dr. Leevil had indisputably perfected its title through recordation before filing the unlawful detainer proceeding; Dr. Leevil's failure to do so before serving the notice to quit was fatal to its unlawful detainer proceeding. (*Dr. Leevil*, *supra*, 6 Cal.5th at pp. 479-481.)

145.    Defendants had notice that Plaintiff had also filed a Notice of Related Case with the unlawful detainer case 19STUD11926 dated October 8, 2019 with the Notice Pendency. (See Notice of Related Case Exhibit "___")

146.    YI MING, LLC, and his attorney having full knowledge of title issues in the State Case Action continued to illegally move the UD forward misrepresenting material facts to the tribunal but failed to notify Plaintiff of any trial hearing depriving Plaintiff of his due process rights.

147.    A close review of the court records will show and prove that Defendant obtained a default judgment against Plaintiff and his tenants without due process of law. See in *Titmas v. Superior Court* (2001) 87 Cal.App. 738, 742.

148.    Plaintiff never received any notice of a writ and there was never any posting on the property pursuant to California 2924f.

149.    Plaintiff alleges and contends that The Trustee's Deed was created without authority and has a forged signature of notary J. Develasco. (see Notary Public Oath Application for J. Develasco Exhibit "___")

150.    Plaintiff alleges and contends that the foreclosure was an illegal, fraudulent, and willfully oppressive sale without a power of sale in a mortgage or deed of trust.

151.    Plaintiff has been severely prejudiced and irreparably harmed by their criminal acts.

### DEFENDANTS ILLEGALY TOOK POSSESSION

152.    YI MING, LLC, illegally took possession by force and menaces and threats of violence when they knew that the writ was obtained by fraud. In re. (*Jordan* v. *Talbot, supra,* 55 Cal.2d at p. 605.) Similarly, the court found an unlawful detainer within the meaning of subdivision 1 of Code of Civil Procedure, section 1160 referring to a person who " '[b]y force or by menaces and threats of violence, unlawfully holds and keeps the possession of any real property . . . ." (*Jordan* v. *Talbot, supra,* at p. 608, emphasis omitted.)

153.    YI MING, LLC, again provided and manufactured false and forged documents claiming that pursuant to the same forged Trustee's Deed and unknown and unidentifiable Order, Defendants had been awarded possession and/or ownership of the premises.

154.    By such forcible entry, said title-holder has been deprived of possession of the premises and his contents.

155.    Defendants and each of them, has since September, 2019, have detained, remained and continues to remain, without title-holder's consent, in possession of the premises and its content up to and including the date of the

-38-

filing of this complaint, and are threatening to remain permanently in possession of the premises and its contents.

156.    On November 10, 2023, the title-holder demanded of defendant's agent, any and all unknown occupants and each of them in writing with a five-day notice that they surrender possession of the premises to said owner, but defendants failed to surrender the premises and continue in possession. (See FIVE DAY NOTICE Exhibit "___".)

157.    The five-day notice period to surrender the property expired on November 16, 2023, following posting and mailing of the Demand for Surrender.

158.    By the acts of defendants as alleged above, the title-holder has been deprived of the use and personal property located on the premises.  The reasonable value of the use of the premises is and at all time has been the rate of $150.00 per day, and damages have accrued at that rate since the date of the forcible entry, and will continue to accrue to the title-holder at that rate until possession of the premises is restored to said owner.

159.    The Defendants, fully knowing the consequences of their actions, acted intentionally and with malice to forcibly enter the owner's home and premises and to deprive the owner of possession of the premises and its contents and therefore the owner is entitled to statutory damages of up to $600.00 pursuant to Section 1174(b) of the California Code of Civil procedure.

## XI.    ELEVENTH CAUSE OF ACTION
### (Violations of the Homeowners Bill of Rights act)

160.    Plaintiff repeats and realleges Paragraphs 1 through 170 as though fully set forth herein.

161.    Civil Code §2924.17(b), states that Defendants are required to review before recording any Assignment of the Deed of Trust, Substitution of Trustee, Notice of Default, and Notice of Trustee's Sale whether there is any competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information. None of the Defendants have done so as alleged in this Complaint.

162.    As such, Defendants each had an independent duty to ensure that all of the documents referenced herein and filed on their behalf were "accurate and complete and supported by competent and reliable evidence." Plaintiffs are informed and believe, and thereon allege Defendants, their principals, agents, and/or employees, and each of them willfully or negligently violated California Civil Code section 2924.17 in each and every document they publicly recorded herein by filing publicly recorded instruments related to a foreclosure proceeding without being "accurate and complete and supported by competent and reliable evidence".

163.    Plaintiff is informed and believe, and thereon allege Defendants breached this duty in each and every document publicly recorded herein and subject to section 2924.17.

164.    Plaintiff brings this action pursuant to Cal. Civ. Code section 2924.12(a)-(b) to enjoin material violations under section 2924.17.

165.    Plaintiff is informed and believe, and thereon allege Defendants have filed inaccurate and/or incomplete documents, with falsities and alleges the documents are void as forgeries, specifically in violation of *Wutzke v. Bill Reid Painting Service, Inc,* (1984) 151 Cal.App.3d 36, 42-43.

166.    Plaintiff is informed and believes, and thereon alleges the documents filed by Defendants were not supported by competent and reliable evidence,

and instead filed by individuals with no personal knowledge of Plaintiff's property, loan status, and/or alleged default.

167.     Plaintiff is informed and believe, and thereon allege Defendants filed documents electronically with forgeries, with no review of whether the evidence is competent and/or reliable. Plaintiff alleges Defendants' standard business practice is to record public documents without competent and reliable evidence in violation of Cal Civ. Code §2924.17(b).

168.     Section 2924.17(b) places the burden directly on mortgage servicers as follows:

"(b) Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information."

169.     Plaintiff is informed and believe, and thereon allege that Defendants did not review their own right to foreclose and acted without regard to the truth they had no authority from the beneficiary to foreclose.

170.     Assignees and their agents of the original debt obligation and the security instrument are necessarily required to provide a competent evidentiary foundation that the note and deed were lawfully sold, transferred and accepted by the assignee.

171.     As alleged previously, Plaintiff alleges that Defendants hold no beneficial interest in the property and have no valid authority or right to foreclose on Plaintiffs' property. Plaintiff alleges Defendants did not act on behalf of the beneficiary and do not have evidence to support such claim.

172.     Plaintiff has repeatedly notified Defendants they lack the authority to foreclose, lack the authority to file publicly recorded documents against his

property interest, and that the presently recorded documents need to be rescinded.

173.    However, Defendants continue to file publicly recorded documents in violation of section 2924(a)(6), which states as follows:

"No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when *acting within the scope of authority designated by the holder of the beneficial interest.*" [Emphasis added.]

174.    Plaintiff again alleges that Defendants do not have the authority to commence the foreclosure process as they have not yet been able to prove they have the authority from the beneficial interest to foreclose.

///

175.    Defendants are legally obligated to ensure that all facts contained within all material instruments in the chain of title are true, correct and are verifiable by competent and reliable evidence to support those facts. Plaintiffs are informed and believe, and thereon allege that Defendants have willfully or at the least negligently breached their duty.

176.    All assignments and all recorded instruments must contain truthful statements and facts that are authenticated or verified by evidence and by a person with personal first-hand knowledge, or the instrument is void.

177.    Substantial competent and reliable evidence must be offered upon a challenge by the borrower to support the recitals contained within all instruments that affect their title. Plaintiffs have invoked such a right under

statute and deed of trust contract wherein it states that the borrower has a duty to defend title against all others.

178.    Plaintiff alleges that Defendants had a duty which it has violated by failing to ensure that documents (NOD, Sub. of Trustee, Notice of Trustee Sale, and Assignments of Deed) were complete and supported by admissible, reliable evidence by persons with personal first-hand knowledge of the facts contained within. Defendants' violation of Section 2924.17 is willful.

179.    Defendants failed to produce evidence, upon request by the borrower, that a bona fide beneficiary has directed the valid trustee to execute the acceleration of debt and that the bona fide, authenticated beneficiary has executed and delivered a written "Declaration of Default and Demand for Sale," as stated in the NOD. Such is a violation of Civil Code §§2923.5, and 2923.55.

180.    Furthermore, Defendants have never contacted Plaintiff or any member of her family pursuant Civil Code §§2923.5, and 2923.55, and ascertained any output as whether any workout or home mortgage modification would be feasible under those code sections, nor did Defendants ever signed a Declaration under penalty of perjury showing that they contacted Plaintiff and his family.

181.    Defendants also failed to record a valid substitution of trustee granting the last Trustee the power of sale contained as a clause in Plaintiff's loan contract.

182.    Defendants also failed to produce competent and reliable evidence, upon request by Plaintiff, that all assignments of the deed of trust were executed by valid parties and that valuable consideration was paid for each "grant" of interest (assignment) in the debt obligation. See Cal. Civ. Code § 1066.

183.    All documents executed and recorded by Defendants are alleged as being void and as being forgeries by Plaintiff.

184.    Plaintiff repudiates and refutes the validity, truthfulness and accuracy of all statements made by Defendants within the four corners of all instruments recorded and/or discussed herein.

185.    Plaintiff alleges that Defendants have made, or negligently relied upon, false and misleading statements within assignment instruments, notice of default, substitutions of trustee and notice of sale documents exhibited by Plaintiffs. The falsity of those statements is alleged above in Plaintiffs' opening statement of facts.

186.    Plaintiff alleges that Defendants caused their loan obligation to be unlawfully accelerated.

187.    Plaintiff alleges that Defendants have placed known false, forged instruments into the permanent records of the respective counties.

///

188.    Plaintiff has been damaged as a result of Defendants' violations in that their credit has been destroyed, have suffered emotional distress and humiliation, and lost ownership and equitable possession of Plaintiff's real property due to the actions of Defendants.

189.    Plaintiff alleges Defendants have made multiple and repeated uncorrected violations of section 2924.17(b) and are subject to civil penalties in an action by the government under section 2924.17(c).

190.    Plaintiff is entitled to up to treble damages under Civil Code §2924.12(b) for their failure to review any competent and reliable evidence to substantiate the borrower's default and the right to foreclose.

## XII.   **TWELFTH CAUSE OF ACTION**
### **(Violations of the Truth in Lending Act)**

-44-

191.    Plaintiff repeats and realleges Paragraphs 1 through 201 as though fully set forth herein.

192.    15 U.S.C. § 1601, et seq., is the Federal Truth in Lending Act ("TILA"). The Federal Reserve Board of Governors implements the Federal Truth in Lending Act through Regulation Z (C.F.R. § 2) and its Official Staff Commentary. Compliance by lenders with Regulation Z became mandatory October 1, 1982. Likewise, Official Staff Commentary issued by the Federal Reserve Board is also binding on all lenders.

193.    The purpose of TILA is to protect consumers. This is stated in 12 C.F.R. §226.1, which reads:

> "§226.Authority, purpose, coverage, organization, enforcement and liability... (b) Purpose. The purpose of this regulation is to promote the informed use of consumer credit by requiring disclosures about its terms and costs. The regulation also gives consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling."

205. Reg. Z also mandates very specific disclosure requirements regarding home loans with which lenders, including Defendant, must comply:

> "§ 226.17. General disclosure requirements, (a) Form of disclosures. (1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under § 226.18."

194.    The purpose of the TILA is to assure a meaningful disclosure of credit terms so that the borrowers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing practices.

195.    Defendant Flagstar did give Plaintiff the two Notices of the Right to
Cancel. Plaintiff previously and timely rescinded the loan on October 15,
2008, to Flagstar that preceded the illegal foreclosure and subsequent
eviction. (Exhibit "___").

196.    Instead of honoring the Recission, Defendant Flagstar refused to honor
it, continued to demand payments to the loan, and illegally foreclosed upon
Plaintiff, despite the Recission.

197.    By reason of the aforesaid violations of the Act and Regulation Z,
Defendant Flagstar is liable to Plaintiff in the amount of twice the finance
charge, actual damages to be established at trial, and attorney's fees and costs
in accordance with 15 U.S.C. § 1640.

## XIII.  THIRTEENTH CAUSE OF ACTION
### (Violations of 42 U.S.C. §1983)

198.    Plaintiff repeats and realleges Paragraphs 1 through 208 as though fully
set forth herein.

199.    At all times hereinafter mentioned, each and all of the acts of the
Defendant alleged herein were done by the Defendants under the color
and pretense of the statutes, regulations, customs and usages of the State
and under the authority of their offices as heretofore alleged herein.

200.    Plaintiff, who is a African American, was deprived of an interest
protected by the Constitution and/or laws of the United States of America,
and each and every Defendant caused, by commission or omission, such
deprivation while acting under color of law.

201.    All acts and/or omissions perpetrated by each Defendant were engaged
in maliciously, callously, oppressively, wantonly, recklessly, with deliberate
indifference to the rights already violated, despicably, with evil motive and/or
intent, in disregard of the rights of the Plaintiff.

-46-

202.    Defendants knowingly, or grossly negligently, or with deliberate indifference to the rights allegedly violated, conspired to cause to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in this pleading, and/or improperly, inadequately, with deliberate indifference to the constitutional or other federal rights of persons, grossly negligently, with reckless disregard to constitutional or other federal rights, conspired to violate civil rights, so that each one of them is legally responsible for all of the injuries and/or damages sustained by the Plaintiff pursuant to the principles set forth in *Monell v. New York City Dept. of Social Services* and its progeny. Furthermore, they each follow a policy of "no policy" in protecting the rights of persons, and that the individual Defendants have demonstrated a lack of training and guidance in the protecting of the constitutional and civil rights regarding the protection of the people, and their life and safety. Furthermore, there was sufficient personal involvement could include culpable action or inaction in the training, supervision, or control of subordinates, acquiescence in the constitutional deprivations of which this Action is made, and/or conduct that showed a reckless or callous indifference to the rights of others.

203.    Furthermore, at all times herein mentioned, Defendants, and each of them, were employees acting under the City's direction and control, who knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments respectively to the United States Constitution, which customs, policies, practices and usages at all times herein mentioned required and encouraged the employment, deployment and retention of persons as peace officers and

attorneys who have demonstrated their brutality, dishonesty, bigotry, and numerous other serious abuses of their powers in their employment.

204.    From about July 13, 2008, and onward, Defendants conspired in steps to take away his property, but to illegally have Plaintiff declared a Vexatious Litigant when he was still litigating in *In re Rita Gail Ellison; James Clark v. Rita Gail Ellison,* Case No. 2:11-BK-33861-RK, and Adversary No. 2:12-AP-01830-RK, of which Orders were entered on September 14, 2015, and December 18, 2018, affecting title to Plaintiff's real property.

205.    By reason of Defendants' conduct, Plaintiff was deprived of rights, privileges, and immunities secured to them by the Constitution of the United States and the Constitution and laws of the State of California in that Plaintiff was deprived of his liberty and his freedom from personal harm. Defendants' conduct violates the Fourth, and Fifth Amendments, and the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution, and deprives said Plaintiff of rights under color of State law.

206.    As a direct and proximate result of the wrongful willfully or negligently violated acts of Defendants, Plaintiff was damaged in an amount of $10,000,000. Plaintiff has been totally deprived of his liberty a willfully or negligently violated nd his freedom from personal harm, and has and will have suffered humiliation, anxiety, and emotional and physical distress as well as possible future personal injuries that will continue on into the future, unless this Court intervenes.

207.    Said Plaintiff further seeks compensatory damages for the humiliation, anxiety, physical distress and injuries that Plaintiff has suffered as a direct result of Defendants' wrongful willfully or negligently violated acts as described herein, plus attorney's fees and costs.

208.     The above recited acts of the individual Defendants in conspiring to deprive Plaintiff of his constitutionally protected rights were done with evil motive or intent, or with reckless or callous indifference to said Plaintiff's rights. Plaintiff therefore seeks punitive, exemplary, and constitutional damages in an amount according to proof against the Defendants.

## XIV. **FOURTEENTH CAUSE OF ACTION**

## **(Violations of 42 U.S.C. §1985(3))**

209.     Plaintiff repeats and realleges Paragraphs 1 through 219 as though fully set forth herein.

210.     At all times hereinafter mentioned, each and all of the acts of the Defendant alleged herein were done by the Defendants under the color and pretense of the statutes, regulations, customs and usages of the State and under the authority of their offices as heretofore alleged herein.

211.     Plaintiff, who is an African-American, was deprived of an interest protected by the Constitution and/or laws of the United States of America, and each and every Defendant caused, by commission or omission, such deprivation while acting under color of law.

212.     All acts and/or omissions perpetrated by each Defendant were engaged in maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights already vi willfully or negligently violated olated, despicably, with evil motive and/or intent, in disregard of the rights of the Plaintiff.

213.     Defendants knowingly, or grossly negligently, or with deliberate indifference to the rights allegedly violated, conspired to cause to come into being, maintained, fostered, condoned, approved of, either before the fact or after the fact, ratified, took no action to correct, an official policy, practice, procedure, or custom of permitting the occurrence of the categories of wrongs set forth in this pleading, and/or improperly, inadequately, with deliberate

-49-

indifference to the constitutional or other federal rights of persons, grossly negligently, willfully or negligently violated with reckless disregard to constitutional or other federal rights, conspired to violate civil rights, so that each one of them is legally responsible for all of the injuries and/or damages sustained by the Plaintiff pursuant to the principles set forth in *Monell v. New York City Dept. of Social Services* and its progeny. Furthermore, they each follow a policy of "no policy" in protecting the rights of persons, and that the individual Defendants have demonstrated a lack of training and guidance in the protecting of the constitutional and civil rights regarding the protection of the people, and their life and safety. Furthermore, there was sufficient personal involvement could include culpable action or inaction in the training, supervision, or control of subordinates, acquiescence in the constitutional deprivations of which this Action is made, and/or conduct that showed a reckless or callous indifference to the rights of others.

214.    Furthermore, at all times herein mentioned complicit, Defendants, and each of them, were employees acting under the City's direction and control, who knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments respectively to the United States Constitution, which customs, policies, practices and usages at all times herein mentioned required and encouraged the employment, deployment and retention of persons as peace officers and attorneys who have demonstrated their brutality, dishonesty, bigotry, and numerous other serious abuses of their powers in their employment.

215.    From about July 13, 2008, and onward, Defendants conspired in steps to take away his property, but to illegally have Plaintiff declared a Vexatious Litigant when he was still litigating in *In re Rita Gail Ellison; James Clark v. Rita Gail Ellison,* Case No. 2:11-BK-33861-RK, and Adversary No. 2:12-AP-

01830-RK, of which Orders were entered on September 14, 2015, and December 18, 2018, affecting title to Plaintiff's real property.

216.    By reason of Defendants' conspiratorial conduct, Plaintiff was deprived of rights, privileges, and immunities secured to them by the Constitution of the United States and the Constitution and laws of the State of California in that Plaintiff was deprived of their liberty and their freedom from personal harm. Defendants' conspiratorial conduct violates the Fourth, and first amendment Fifth Amendments, and the due process and equal protection clauses of the Fourteenth Amendment Sixth Amendmennt of the United States Constitution, and deprives said Plaintiffs of rights under color of State law.

217.    As a direct and proximate result of the wrongful malicious acts of Defendants, Plaintiffs were damaged in an amount of $10,000,000. Plaintiffs have been totally deprived of their liberty and their freedom from personal harm, and has and will have suffered humiliation, anxiety, and emotional and physical distress as well as possible future personal injuries that will continue on into the future, unless this Court intervenes.

///

218.    Said Plaintiffs further seek compensatory damages for the humiliation, anxiety, physical distress and injuries that Plaintiffs have suffered as a direct result of Defendants' wrongful malicious willfully or negligently violated acts as described herein, plus attorney's fees and costs.

219.    The above recited acts of the individual Defendants in conspiring to deprive Plaintiffs of their constitutionally protected rights were done with evil motive or intent, or with reckless or callous indifference to said Plaintiffs' rights. Plaintiffs therefore seek punitive, exemplary, and constitutional damages in an amount according to proof against the Defendants.

## XV.  FIFTEENTH CAUSE OF ACTION

**(Violations of Civil Code §51.7)**

220.     Plaintiff repeats and realleges Paragraphs 1 through 230 as though fully set forth herein.

221.     At all times relevant hereto, California Civil Code §51, *et seq.,* was in full force an effect and binding upon defendants, its agents, representatives and employees as alleged herein. Section 51.7 thereof seeks to protect individuals from violence which is based on suspect, arbitrary classifications, including race, national origin, age, and disability, or which is based upon a person's perception that an individual has one or more of those characteristics. The intent of Section 51.7 is to protect all rights.

222.     Since at least October 15, 2008, Plaintiff is an African-American. Plaintiff is informed and believes and thereon allege that Defendants, their employees, agents and representatives knew or should have known that Plaintiff was exercising his First, Fifth, and Fourteenth Amendment rights.

223.     Plaintiff is further informed and believe and thereon allege that the actions of Defendants, their agents, employees, agents and representatives were directly related to his status in exercising his First, Fifth, and Fourteenth Amendment rights, in that Defendants, and each of them, intended to deprive Plaintiff of the full and equal rights in violation of law.

224.     Such conduct in acting against Plaintiff has denied and will continue to deny Plaintiff equal protection and the civil rights guaranteed by Civil Code §51.7.

225.     As the direct and proximate result of the actions of Defendants, their agents, employees, agents, and representatives, Plaintiff has been caused to suffer severe and lasting physical and psychological injuries, medical expenses, loss of income, and the expense of hiring counsel and prosecuting this action, all at least $15,000,000.

226.    Civil Code §52(b) sets forth the penalty to be imposed against individuals who engage in conduct against persons based on suspect, arbitrary classifications, including race, or who perpetrate in such violence based upon a perception that the individual possesses said characteristics as being actual damages suffered, plus an award of exemplary damages, a civil penalty of $25,000, plus attorney's fees.

## XVI.  SIXTEENTH CAUSE OF ACTION

### (Violations of Civil Code §52.1)

227.    Plaintiff repeats and realleges Paragraphs 1 through 237 as though fully set forth herein.

228.    At all times relevant hereto, California Civil Code §51, *et seq.*, was in full force an effect and binding upon defendants, its agents, representatives and employees as alleged herein. Section 52.1 thereof seeks to protect individuals from violence and to protect them in exercising their civil rights. The intent of Section 52.1 is to protect all rights.

///

///

229.    Since at least October 15, 2008, Plaintiff is an African-American. Plaintiff is informed and believes and thereon allege that Defendants, their employees, agents and representatives knew or should have known that Plaintiff was exercising his First, Fifth, and Fourteenth Amendment rights.

230.    Plaintiff is further informed and believe and thereon allege that the actions of Defendants, their agents, employees, agents and representatives were directly related to his status in exercising his First, Fifth, and Fourteenth Amendment rights, in that Defendants, and each of them, intended to deprive Plaintiff of the full and equal rights in violation of law.

231.    Such conduct has denied and will continue to deny Plaintiff equal protection and the civil rights guaranteed by Civil Code §52.1.

-53-

232.     As the direct and proximate result of the actions of Defendants, their agents, employees, agents, and representatives, Plaintiffs have been caused to suffer severe and lasting physical and psychological injuries, medical expenses, loss of income, and the expense of hiring counsel and prosecuting this action, all at least $15,000,000.

233.     Civil Code §52(b) sets forth the penalty to be imposed against individuals who engage in conduct against persons based on suspect, arbitrary classifications, including race, or who perpetrate in such violence based upon a perception that the individual possesses said characteristics as being actual damages suffered, plus an award of exemplary damages, a civil penalty of $25,000, plus attorney's fees.

## XVII. SEVENTEENTH CAUSE OF ACTION

### (Unfair Business Practices)

234.     Plaintiff repeats and realleges Paragraphs 1 through 237 as though fully set forth herein. Plaintiff does not have to repeat all scintilla of all the Causes of Action again in this Cause of Action.

235.     California Business & Professions Code §17200 defines unfair competition to include "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising. ..." The provisions of said law are to be broadly construed.

236.     California Business & Professions Code §17203 provides that "[t]he court may make such orders or judgments ... as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of unfair competition."

237.     California Business & Professions Code §17204 provides for suits for injunctive relief to be brought by both public officials and private attorneys

general: "Actions for injunction pursuant to this chapter may be prosecuted by ... any person acting for the interests of itself, its members or the general public."

238.    Defendants have committed acts in violation of the following:

a. 15 U.S.C. §§1601 et seq.

b. 42 U.S.C. §1983.

c. 42 U.S.C. §1985(3).

d. Civil Code §51.7.

e. Civil Code §52.1.

f. Civil Code §2923.5.

g. Civil Code §2923.55.

h. Civil Code §2924.17.

i. Code of Civil Procedure §1959.

j. Code of Civil Procedure §1960.

k. Code of Civil Procedure §1961a(b)(3).

///

239.    All actions have occurred in County of Los Angeles, State of California.

240.    By their activities and omissions alleged above in violation of the statutes listed in Paragraph 249, Defendants have engaged in unlawful or unfair business practices within the meaning of Business & Professions Code §17200.

241.    Defendants threaten to and unless restrained, will continue to act in violation of the statutes listed in Paragraph 249, and thereby continue and repeat their violations of the Unfair Practices Act.

242.    The actions and omissions of Defendants alleged above in violation of the statutes listed in Paragraph 249 will irreparably harm Plaintiff, and the general public.

-55-

243.    Plaintiff has no plain, speedy, or adequate remedy at law.

1. Plaintiff purchased residential property in LOS ANGELES , CALIFORNIA 90044, California, known and referred to as 625 LACONIA BOULEVARD 90044. More particularly, legal description of this property is: LOT 29, IN BLOCK 12 OF AHTENS, AS PER MAP RECORDED IN THE BOOK 8 PAGES 146 AND 147 OF MAPS IN THE OFFICE OF THE RECORDER OF SAID COUNTY "

Assessor's Parcel No: **6117-014-014**

Hereafter, this address and legal description as well as all

improvements thereon shall be known and referred to as

*Plaintiff's Property.*

244.    FLAG STAR BANK, is a federally chartered savings association

organized and existing under the laws of the United States of

America. Business mailing address 5151 Corporate Drive Troy,

Michigan 48098-2639

245.    This Court has jurisdiction over this matter pursuant

to 28 U.S.C §1331&§1332 pursuant to 15 U.S.C § 1640(e) for TILA

claims and pursuant to 28 U.S.C § 1367 for supplemental,

jurisdiction of Plaintiff's state law claims because these claims

are so related to the claims within the court's original

jurisdiction that they form part of the same case or controversy

under Article 3 of the United States Constitution. The Court has

authority to issue a declaratory judgment by virtue of 28 U.S.C.

§ 2201. Counts arising under contract, common law, and the law of

conveyances in real property are properly asserted under this

Court's pendent jurisdiction. Venue is proper in this district

pursuant to 28 U.S.C. §§ 1391 generally and whereby the real

PLAINTIFF'S VERIFIED COMPLAINT

property and a substantial part of the events and claims, the subject of this suit, are situated here, communications notifying Plaintiffs of a non-judicial foreclosure and election to sell under the security instrument conveyed and enforced by Defendants are in this district, and Defendants principle business are within the forum state of California, reasons set forth below.

246.    Plaintiff's Property is located in Los Angeles County, California and Territorial boundaries of this Northern District Court embrace this county.

247.    Defendant, Flag Star Bank, is a federally chartered savings association organized and existing under the laws of the United States of America. Doing business at 5151 Corporate Drive Troy, Michigan 48098-2639.

248.    Since Plaintiff is seeking to quiet title on Plaintiff Property for Dollars [U.S.$1,500,000.00], the amount in Controversy exceed $75,000.

249.    This is and in rem proceeding pursuant to [Civil Code 761.010. directed against Plaintiffs Property, situated within The boundaries of LOS ANGELES, CALIFORNIA 90044 County. [California]. By virtue of an Interest Only Fixed Rate Note and Deed of Trust dated October 21, 2008, Plaintiff acquired equitable interest in the title. Plaintiff can live on this land

PLAINTIFF'S VERIFIED COMPLAINT

and only plaintiff has the right to sell his home.

250.    Defendant(s) have recorded an interest in Plaintiff's Property.

### PERTINENT FACTS AND LAW

251.    On October 13, 2008, Plaintiff agreed to borrow US 300,000.00 from Flag Star Bank,, secured by Plaintiff's Property. Two instruments were signed by Plaintiff on this date; Interest Only Fixed Note, hereafter note between Plaintiff and Flag Star Bank and Deed of Trust and Plaintiff and Flag Star Bank, See Exhibit A Page(s) One and Two of the Deed Of Trust.

252.    On October 15, 2008 Plaintiff sent letter to the original lender Flag Star Bank, I hereby cancel/rescind the reference loan number 5022197213. (see) Exhibit B

253.    The California Department of Business Oversight Search or Financial Services or Mortgage Lending Licensed in California to Lend Flag Star Bank, was not licensed as California Finance Lender or a Consumer Finance Lender See Exhibit C and Exhibit D California Secretary of State Record not found D.H. Overmyer Co., Inc. v. Frick 405 U.S. 174(1972).

254.    From October 13, 2008 to Present Defendant failed to answer or complied within 20 days to Plaintiff request.

255.    From October 13, 2008 to Present Defendant failed to answer or complied within 20 days to Plaintiff request.

### SUPREME COURT OF THE UNITED STATES

### RULING ON RECISSION

**No. 13-684. Argued 4, 2014- Decicided 13, 2015**

-58-

On January 13, 2015, the misconceptions surrounding rescission were clearly defined and spelled out by way of a very clear and concise statement from SCOTUS Justice Scalia, while speaking for an unusually unanimous Supreme Court, in **Jesinoski v. Countrywide Home Loans,** Inc.(January 13,2015)-(see Exhibit E). JUSTICE SCALIA delivered the 4 unanimous opinion of the COURT: The Truth in Lending Act gives borrowers the right to rescind certain loans for up to three years after the transaction is consummated. The question presented is whether a borrower exercises this right by providing written notice to his lender, or whether he must also file a lawsuit before the 3-year period elapses. "Held: A borrower exercising his right to rescind under the Act need only provide written notice to his lender within the 3-year period, not file suit within that period. Section 1635(a)'s unequivocal terms—a borrower "shall have the right to rescind... by notifying the creditor... of his intention to do so" [Emphasis added]—leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind. This conclusion is not altered by sec 1635(f), which states when the right to rescind must be exercised, but says nothing about tender or how that right is exercised." Scalia goes on to say " The clear impot of sec 1635(a) is that a borrower need only provide written notice to lender in order to exercise his right to rescind …**Because this is all that a borrower must do in order to exercise his right to rescind under the Act**… [Emphasis added].

256.    Plaintiff cannot emphasize enough the importance of

the Supreme Court's decision in **Jesinoski**. For over two decades, the financial industry had used the courts to re-write the specific provisions stated in Truth in Lending Act ("TILA"). Lenders did not feel that they had *any duty* to respond to Rescission Notices and routinely *ignored* the notices. In fact, these lenders did not seem to believe they *even had* a duty to follow any of the provisions of TILA, just as here 5 in Plaintiff's case, but Jesinoski v. Countrywide Home Loans, c. changed this false and self-serving assumption.

257.    The Supreme Court "put the teeth back" in TILLA, with the effect of infuriating these lenders, who apparently wish to avoid beig made accountable for gross, blatant, and wanton misdeeds

### 15 U.S.C subsection 1635(a) Section 1635(b)

### RESCISSION BY OPERATION OF LAW

258.    In this pleading, specifically in the section "Factual Allegations, " there is the reference to the Plaintiff's sending of the "notice to original lender, FLAG STAR BANK, dated October 15, 2008, rescinding the loan number 502197213 "This notice, by operation of law is Plaintiff's timely recission of plaintiff's loan, according to 15 U.S.C subsection 1635(a0, Section 1635(b), by mailing said letter on the herein referenced date, Plaintiff has properly executed Recission on the subject property.

**Rescission is EFFECTIVE upon the moment of being placed in The US Mail for Mailing.**

259.    Up until the recent unanimous Supreme Court ruling on Rescission, many people, lawyers and even judges, did not seem to understand what the paragraph bolded and italicized just above, means. On January 13, 2015, the misconceptions surrounding rescission were clarified and clearly spelled out, by way of a very precise and concise statement from SCOTUS justice Scalia while speaking for an unusually unanimous Supreme Court, in **Jesinoski v. Countrywide Home Loans, Inc.** (January 13, 2015), stating: "… once the letter is dropped in the mail,.. it means that the deal is done, canceled, rescinded…" And what it also means is that the time starts to run on the duties of the "lender(s)" to comply with that cancellation/recission.

260.    When the Notice of Rescission was executed and mailed, it became immediately effective, by operation of law. There is not other interpretation of "effective" because the Supreme Court, under the apparently annoyed pen of Justice Scalia, has said that there is nothing further to debate or interpret in regard TO TILA Rescission.

261During the twenty (20) days after the mailing of a Rescission Notice, the duties of the "lender" or "creditor" are Recission Notice, the duties of the "lender" or "creditor" are very clear, and they are as follows:

(1)    Return the canceled note, (2) File Cancellation of the
       Mortgage or Deed of Trust, and (3) Return all monies paid

PLAINTIFF'S VERIFIED COMPLAINT

by "borrower".

After the lender has has complied with 1635(b)(termination of security interest), and after the lender has returned the canceled Note and Mortgage/Deed of Trust, and after the "lender" has compiled with 12 CFR 1026.23 (d)(2) (Return of any money or property that has been given to anyone), THEN AND ONLY THEN, would the borrower have to tender. **PLEASE NOTE: The reference to "Tender" is not Common Law Rescission, but rather, Statutory Rescission.**

After the twenty (20) days from the receipt of the Notice of Rescission has expired, by operation of law, the recipient is in violation of the statute if they have failed to challenge the After the twenty (20) days from the receipt of the Notice of Rescission has expired, by operation of law, the recipient is in violation of the statute if they have failed to challenge the rescission(i.e. via a lawsuit), and recipient has waived their defenses. If ANY party with claimed interest in the herein subject property had taken issue with recission, said party would have needed to file a lawsuit within the twenty (20) days allowed for performing the duties under TILA. Otherwise, the window closes… with no lawful way for reopening. Period.

## VI. Claims for Relief via Quiet Title

### Count 1 – Rescission under TILA & Reg. Z

262. Plaintiff incorporates each paragraph set forth above as if Fully stated herein

263. As a result of Defendants failure to provide accurate material

disclosures correctly as described above, Plaintiff is entitled and has exercised his right of rescission of the Transaction.

264. Rescission of the Transaction extinguishes any liability Plaintiff has to Defendants for finance or other charges arising from the Transaction.

264. Defendants have a fiduciary duty and obligation to perform upon this notice of rescission by canceling this specific Transaction as well as any enforcement thereof. Accordingly, any alleged security instrument is void and unenforceable Under 15 U.S.C. § 1635(b).

265. Defendants have twenty-days (20) to refund or credit the alleged account all monies paid and void the security interest, or seek judicial guidance.

266. Defendants performance is a condition precedent to Plaintiff's duty to tender and failure to lawfully respond gives rise to statutory and acutual damages under 15 U.S.C. § 1640.

267. Any further acts to enforce and invalid security instrument and impose finance charges and fees are wrongful, improper, and serious breach of of fiduciary duty associated with Defendants obligations. Such acts violate TILA and RESPA, and are contrary to the explicit statutory requirements and contract between parties.

268. Said acts entitles Plaintiff to statutory and actual relief,

orders enforcing recission, and reasonable attorney fee.

## Count 2 – TILA

269. The original payee of the note and beneficiary of all other documents at a purported closing with Defendants acted in contravention of TILA 15 U.S.C. § 1601 et seq. and Reg. Z in the following particulars, each and all of which may also be asserted affirmatively and defensively by Plaintiffs as a result.

270. The TILA Disclosure Statements, and all documents provided to Plaintiff in conjunction with this consumer credit transaction violated the requirements of Truth in Lending and Regulation Z in the following other respects:

   a. By failing to provide all required disclosures prior to consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Reg. Z § 226.17(b),

   b. By Failing to make required rescission disclosures ' clearly and conspicuously' in writing in violation of U.S.C. § 1632(a) and Reg. Z § 226.17(a)(1),

   c. By failing to provide the date of the Transaction or the expiration date recission rights terminate in violation of Reg. Z § 226.23(b)(5).

## Count 3 - Cal. Bus. And Prof. Code § 17200 et seq. Claims & Recoupment

271. Plaintiff re-alleges and incorporates herein the allegations contained in the preceding paragraphs inclusive above.

272. Plaintiff brings this action in an individual capacity as

a private attorney general acting on his own behalf, pursuant to Cal. Business and Professions Code § 17200, et seq. referred to as the Unfair Competition Law ("UCL").

273. Plaintiff is acting in an individual capacity to remedy the ongoing unlawful, unfair and fraudulent business practices alleged herein, and to seek injunctive relief and restitution on his behalf as being affected thereby.

274. The foregoing acts and omissions of Defendants affect trade and commerce as that term is defined under the UCL.

275. The UCL defines unfair competition to include any unlawful unfair, or fraudulent business act or practice and provides that a court may order injunctive relief and restitution to affected parties as a remedy for any violations of the UCL.

Beginning on the dates indicated and at all times relevant herein, Defendants and the DOE Defendants have committed acts of unfair competition proscribed by the UCL including the practices alleged herein against plaintiff .

276. Prior to the filing of the claims in this action, and continuing thereafter, Defendants have been systematically violated the provsions of TILA, the contract between the parties and to such extent as to induce confusion as to source and sponsorship of services.

277. These violations are and were a matter of their standard corporate policy, and constitute a consistent pattern and practice of unlawful corporate behavior.

-65-

278. The business acts and practices of these Defendants, as hereinabove alleged, constitute "unlawful" business practices under UCL in that for the reasons set forth above, said acts and practices violate the provisions of TILA, contract between the parties, and their fiduciary duties.

279. The business acts and practices of these Defendants as hereinabove alleged, constitute "unlawful" business practices under UCL in that said act and practices offend offend public policy and are substantially injurious to the Plaintiff and all consumers, and potential homeowners.

280. In the course of this Transaction, more misrepresentation and/ and/or failed to provide material information about the Transaction as set forth more fully above.

281. Specifically Defendants processed and ratified this Transaction, substantially amended and failed to deliver material disclosures under TILA, failed to comply with the contract between the parties, failed to comply with statutory good faith dealing.

282. Said misrepresentations and failure to make accurate representations were made knowingly or with reason to know that plaintiff would rely thereon.

283. Said misrepresentations and failure to make accurate representations were material to both Transactions from origination to present.

284. Said misrepresentations and failure to make accurate representations were made with intent and the Plaintiff relied

thereon by seeking legal counsel and filing this defensive claim in recoupment.

285. Plaintiff did reasonably rely as specified in these factual allegations.

286. Plaintiff was thereby damaged and has a substantial ascertainable loss.

287. The business acts and practices of Defendants as hereinabove alleged, constitute "fraudulent" business practices under UCL in that said acts and practices are likely to deceive the public and affected consumers as to their legal. rights and obligations, and by use of such deception, failing to deliver material documents, and concealment, may preclude consumers from exercising legal rights to which they are entitled.

288.    The unlawful, unfair and fraudulent business acts and practices of Defendants described herein present a continuing threat to members of the general public and the Plaintiff in that Defendants and the DOE Defendants are currently engaging in such acts and practices, and will persist and continue to

289. Pursuant to the UCL § 17203, Plaintiff seeks an order enjoining Defendants from engaging in the acts and practices as hereinabove alleged, and ordering that Defendants provide appropriate restitution to Plaintiff.

290. . Plaintiff seeks recovery of attorneys' fees, cost and expenses incurred in the filing and prosecuting this action pursuant to the Code of Civil Procedure § 1021.5 and any other applicable law.

### *First Cause of Action for Accounting.*

291.

PLAINTIFF'S VERIFIED COMPLAINT

Plaintiffs repeat and reallege each and every allegation of the Introductory paragraphs and incorporate them herein as if set forth in full at this point.

292.    On or about August 27 ,2009 sent Plaintiff a letter wherein  FLAGSTAR BANK indicated that it was "reviewing our records" and that they would "respond within  Re; YOUR MORTGAGE LOAN WITH  FLAGSTAR  BANK LOAN NO .502197213 Dear Mr Clark ; I have received the letter that you faxed to me earlier this week. As I mentioned in our earlier telephone conversation , we have asked  just that ez  financial Corporation to provide us with a copy of the documents that you signed when we receive those documents, we will contact you.."  sincerely MICHELE K SPEAR ATTORNEY AT LAW

293.    The amount of money due from Plaintiffs to Defendants, is unknown to Plaintiffs and cannot be ascertained without an accounting of the payments and disbursements by both

FLAGSTAR

Cause of Action to

**_SET ASIDE TRUSTEE'S SALE_**

(Against  FLAGSTAR BANK, , and DOES to )

294  Plaintiff incorporates by reference paragraphs through  as though fully set forth below.

295.    Defendants acquired title to the Property with prior knowledge of the misconduct alleged hereinabove.

296.    Plaintiff has no adequate remedy at law because of the presumed uniqueness of and sentimental value that has attached to the Property, which is plaintiff's principal residence.

297.    As described hereinabove, the Property was sold despite the fact that plaintiff attempted to tender, and did in fact tender, an amount of money sufficient to reinstate the subject loan and avoid the trustee sale of the Property.

298.    Plaintiff had the financial means to reinstate the loan prior to the trustee sale and have and will have the financial wherewithal to reinstate the loan and/or redeem the Property upon being restored to title.

299.    Wherefore, equity demands that the trustee sale be set aside on account of wrongful foreclose and that plaintiff be restored to title.

## EIGHTEENTH CAUSE OF ACTION
## FOR BREACH OF FIDUCIARY DUTY

300.    Plaintiff incorporates the above-mentioned allegations by reference as contained in the above-mentioned paragraphs numbered . Rita was a fiduciary who had a legal duty to safeguard and protect me-but she did not. Moreover, Rita had a duty of due care-she acted in the capacity of a real estate broker-a licensee of the CDRE. Indeed, so did RITA GAIL FARRIS-ELLISON,  JUST THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC, CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI MING LLC, they had a fiduciary duty to me but they breached it by allowing Rita to take my money and she did. RITA GAIL FARRIS-ELLISON,  JUST THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC, CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI MING LLC breach of their duty caused me direct harm and Rita's breach has caused me the loss of my $100,000.00 state court judgment.

## NINEENTH CAUSE OF ACTION
## FOR AN INJUNCTION-(AGAINST FLAGSTAR BANK FIRST AMERICAN TITLEAND FARRIS)

301. Plaintiff  re-alleges and incorporates by this reference as though fully set forth herein each and every allegation contained in paragraphs 1 through 21. On or before this date, all defendants have asserted an illegal right to foreclose on my property. All defendants promise's to

-69-

foreclose on Plaintiff's property as created and exposed Plaintiff to great and irreparable injury, for which pecuniary compensation would not afford adequate relief because Plaintiff would have lost his home. All defendants threaten to resell the property to Plaintiff's great and irreparable injury, for which pecuniary compensation would not afford adequate relief because Plaintiff would have lost his home. Plaintiff seeks an injunction enjoining all Defendants from foreclosing, removing or evicting Plaintiff and reselling the property during the pendency of this action.

40a. Plaintiffs are informed and believe, and based upon such information and belief allege, that there now exist certain controversies and disputes between Plaintiffs and the Defendant's, in that Plaintiffs contend that:

40b. Plaintiff purchased the Property, a *bona fide* purchasers for Value, and is the sole owners of the Property, and, therefore, none of the Defendant's do not have And cannot claim any ownership interest or rights of any kind in the Property; All defendant's are immediately and forever are barred, under the doctrine of equitable estoppel from asserting any claim based on their oral and written representations, conduct, and omissions, in connection with the Farris/Clark escrow, and from transferring the Clark's fee simple RITA GAIL FARRIS-ELLISON,  JUST THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC, CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI MING LLC  to any Defendant. All Defendants are immediately and forever barred, under the doctrine of laches, based on their failure to assert any claim.

40c. Plaintiff's property is now unmarketable and I am irreparably harmed and damaged if said court does not issue a judgment against all defendants. and any and all other Persons claiming under them, declaring that Plaintiff is the sole and rightful Owners of the Property; and that Plaintiff is entitled to a preliminary and a permanent injunction against all defendant's  and any and all other persons from claiming or prosecuting against Plaintiff. Thus, Plaintiff requests a declaration of his rights.

PLAINTIFF'S VERIFIED COMPLAINT

## TWENTIETH CAUSE OF ACTION

## FOR CANCELALTION OF WRITTEN INSTRUMENT-CANCELL THE DEED OF

## TRUST AND THE NOTE

302. Plaintiff re alleges and incorporates this by reference as though fully set forth herein each and every allegation contained in paragraphs .

303. The written instrument sought to be cancelled in this cause of action was executed in the County of Los Angeles, State of California. Moreover, the real property is situated in the County of Los Angeles, State of California.  Specifically, the legal description is

*"The land referred to in this description situated in the State of California, County of Los Angeles, City of Los Angeles, and is described as follows:*

*LOT 29, IN BLOCK 12 OF ATHENS, AS PER MAP RECORDED IN BOOK 8 PAGES 146 AND 147 OF MAPS, IN THE OFFICE OF THE RECORDER OF SAID COUNTY."* (See Exhibit "A")**APN #6117-014-014**

304. As stated above, RITA GAIL FARRIS-ELLISON,  JUST THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC, CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI MING LLC approved my re-finance loan that was falsely brokered by Rita Gail Farris-Ellison and prior to the loan being funded my mother deeded the property to me.

The deed of trust (DOT) with its form, contents, clauses are known to the defendants. With RITA GAIL FARRIS-ELLISON,  JUST THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC, CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI MING LLC letter dated May 17, 2018 indicating their illegal intent to allege a false default and then foreclose justifies cancelling the written instrument on several grounds:

a)  Defendant, Farris-Ellison was found guilty of "serious misconduct," by the California Department of Real Estate (CDRE);

b)  Defendant, Farris-Ellison illegally procured a loan because she had no legitimate real
estate licenses; Rita's illegal comportment has injured me and my dot is forever damaged;

c)  Defendant, RITA GAIL FARRIS-ELLISON,  JUST THAT EZ FINANCIAL,
FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC,
CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC,
DOE BANK, FANGLU MO, and YI MING LLC, has no legal or contractual authorization to
"accelerate" my loan because a) I have paid my monthly payments-but RITA GAIL FARRIS-
ELLISON,  JUST THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE
COMPANY, LENDERS ESCROW INC, CIVIC FINANCIAL SERVICES, LLC, TRUSTEE
ENTRA DEFAULT SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI MING LLC  has
steadfastly declined to credit or account for my mortgage payments to be reduced, b) no escrow
or bank account

d)  I have paid over $100,000.00 in mortgage monthly payments but Defendant, RITA GAIL
FARRIS-ELLISON,  JUST THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN
TITLE COMPANY, LENDERS ESCROW INC, CIVIC FINANCIAL SERVICES, LLC,
TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI
MING LLC refuses to accept my payments-despite the deed and Defendant, RITA GAIL
FARRIS-ELLISON,  JUST THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN
TITLE COMPANY, LENDERS ESCROW INC, CIVIC FINANCIAL SERVICES, LLC,
TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI
MING LLC signature on the *Home Affordable Modification Trial Program Plan (HAMTPP*
which required that Defendant, RITA GAIL FARRIS-ELLISON,  JUST THAT EZ
FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS
ESCROW INC, CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT
SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI MING LLC  accept my payments-but
Defendant, RITA GAIL FARRIS-ELLISON,  JUST THAT EZ FINANCIAL, FLAGSTAR
BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC, CIVIC

FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC, DOE

BANK, FANGLU MO, and YI MING LLC again has repugnantly rejected my payments.

e)  Defendant, RITA GAIL FARRIS-ELLISON,  JUST THAT EZ FINANCIAL,

FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC,

CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC,

DOE BANK, FANGLU MO, and YI MING LLC has violated the terms, conditions, clauses of

the dot and California statutes on foreclosures.

305.    My dot is void based on the illegal comportment by a) Defendant, Farris-Ellison

and b) Defendant, RITA GAIL FARRIS-ELLISON,  JUST THAT EZ FINANCIAL,

FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC,

CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC,

DOE BANK, FANGLU MO, and YI MING LLC and the dot must be cancelled. **TENTH**

## **TWENTY FIRST CAUSE OF ACTION**

## **FOR SLANDER OF TITLE**

306. Plaintiff re-alleges and incorporates this by reference as though fully set forth herein

each and every allegation contained in paragraphs . On or before this filing, and continuing to

date, all of the Defendant's and Does have  willfully, wrongfully, without justification, and

without privilege, invaded Plaintiffs' proper right in the Property, by publishing by written and

spoken means to Plaintiffs' mortgage lender, and to various third parties, and to the public on the

Internet, that the Defendant's own said property. However, these claims, assertions, statements

and documents and words were and are false, untrue and disparaging to Plaintiff and my

Property, have cast doubt on the existence and/or extent of Plaintiffs' interest in the Property,

and disparaged Plaintiffs' RITA GAIL FARRIS-ELLISON,  JUST THAT EZ FINANCIAL,

FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC,

CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC,

DOE BANK, FANGLU MO, and YI MING LLC to the Property.  In addition, it is reasonably

foreseeable that recipients of the Defendant's  words, including but not limited to Plaintiffs'

existing mortgage lender or other lenders, Plaintiffs' future lenders, future potential purchasers of

the Property, and RITA GAIL FARRIS-ELLISON,  JUST THAT EZ FINANCIAL,

FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC,

CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC,

DOE BANK, FANGLU MO, and YI MING LLC insurers in any future sale, re-financing, or

mortgage transactions would be deterred from entering into any transaction that involved the

Property, or such recipients would be willing to enter into a transaction only on such terms which

would have significant negative economic effect of Plaintiffs. See the cancellation dated October

15, 2008.

    47a. Furthermore, the Defendant's and Does words-RITA GAIL FARRIS-ELLISON,  JUST

THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY,

LENDERS ESCROW INC, CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA

DEFAULT SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI MING LLC lawyers are

aware and directly impaired the immediate salability of the Property a future purchaser, the

mortgage ability of the Property to a future lender, or the vendibility on the open market in a sum

to be proved. Not only that, the Defendant's oral and written statements to Plaintiffs and third

parties, including in the social media, has cast doubt on Plaintiffs' RITA GAIL FARRIS-

ELLISON,  JUST THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE

COMPANY, LENDERS ESCROW INC, CIVIC FINANCIAL SERVICES, LLC, TRUSTEE

ENTRA DEFAULT SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI MING LLC and

honesty, and made it necessary for Plaintiffs to retain attorneys and to bring this action to defend

their title.  Therefore, Plaintiffs are entitled to recovery attorney fees and costs.  The exact

amount of such damages not known to Plaintiffs and this time, and Plaintiffs will move to amend

this Complaint to state such amount when the same becomes known, or on proof thereof.

    47b. Plaintiff is  informed and believe, and basted upon such information and belief allege,

that the Defendant's and Does words and acts were motivated by oppression, fraud, and malice,

thereby justifying awarding of exemplary and punitive damages according to proof.

## TWENTY SECOND CAUSE OF ACTION FOR

## NEGLIGENCE

## (AGAINST DEFENDANT)

(Against FLAGSTAR BANKand DOES )

307.    At all times relevant herein, the Foreclosing Defendants, acting as lender, loan servicer and Escrow Officer, had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited, accurate crediting of payments made by Plaintiffs.

308. In taking the actions alleged above, and in failing to take the actions as alleged above, the Foreclosing Defendants breached their duty of care and skill to Plaintiffs in the servicing of Plaintiffs' loan by, among other things, failing to properly and accurately credit payments made by Plaintiffs toward the loan, preparing and filing false documents, and foreclosing on 625 Laconia Blvd. Los Angeles, CA 90044 without having the legal authority and/or proper documentation to do so.

309. As a direct and proximate result of the negligence and carelessness of the Foreclosing Defendants as set forth above, Plaintiffs suffered general and special damages in an amount to be determined at trial.

310. Plaintiff incorporates by reference paragraphs 1 through  as though fully set forth below.

311. Defendants, each of them, in their respective capacities as purported beneficiary, trustee and loan servicer owed plaintiff, the borrower, a duty of care in the administration, execution and foreclosure of the promissory note and deed of trust.  Defendants, and each of them, failed to exercise due care toward plaintiff in that they:

>    (a).    Repeatedly refused and failed to respond to plaintiff's telephonic and written
>            inquires about the amount owed under the note and the amount required to
>            reinstate the loan;

-75-

(b).    Repeatedly misrepresented orally and in writing the amount owed under the subject note and the amount required to reinstate the loan;

(c).    Failed to credit and properly apply one or more of plaintiff's monthly payments to the mortgage account in accordance with the terms of the promissory note and deed of trust, causing the account to appear delinquent and proximately resulting in the improper filing of a notice of default and notice of trustee sale;

(d).    Refused and otherwise failed to credit and properly apply to plaintiff's mortgage account plaintiff's tender of the funds required to reinstate the subject loan at least five business days before the trustee sale;

(e).    Charged to plaintiff's mortgage account excessive and illegitimate trustee's fees, attorney's fees, and other legal and administrative fees that constituted unlawful liquidated damages under the promissory note and deed of trust and were otherwise prohibited by Sections 2924c, 2924d and related sections of the Civil Code;

(f).    Failed to comply with the statutory requirements of a valid notice of default, to wit, they (ii) failed to include in the notice of default a statement accurately setting forth the nature of each breach under the promissory note and deed of trust; (ii) failed to properly record and serve on plaintiff written notice of default; and (iii) failed to state in the notice of default the amount actually required to reinstate the loan;

(g).    Failed to comply with the statutory requirements of a valid notice of trustee sale, to wit, they (i) failed to properly record, publish, post on the Property and serve on plaintiff notice of the sale (Section 2924f); (ii) noticed the trustee sale prematurely under Section and 2924 of the Civil Code; and (iii) failed to include in the notice of sale an accurate statement of the total amount of the unpaid

balance of the obligation secured by the Property to be sold and reasonably
estimated costs, expenses, and advances at the time of the initial publication of the
notice of sale;

(h).    Breached an oral and written agreement(s) with plaintiff to reinstate the loan and
avoid the trustee sale in contravention of Section 2924g of the Civil Code; and

(i).    Sold the Property despite having waived its right to foreclose by accepting
payments after initiating non-judicial foreclosure.

312. As the proximate result of defendants' conduct, plaintiff has suffered economic and
non-economic damages to be proved at trial.

## TWENTY THIRD CAUSE OF ACTION
## FRAUD

313. The Foreclosing Defendants engaged in a pattern and practice of defrauding Plaintiffs in
that, during the life of the mortgage loan, the Foreclosing Defendants failed to properly credit
payments made and foreclosed on 625 LACOINA BLVD. LOS ANGELES, CA 90044 based on
Plaintiffs' alleged non-payment which they knew to be false.

314. The Foreclosing Defendants had actual knowledge that the Plaintiffs' account was not
accurate but that the Foreclosing Defendants could use the inaccuracy to foreclose on 625
LACOINA BLVD. LOS ANGELES, CA 90044   which had substantial equity, to recover its
excessive fees, charges and interest.  Plaintiffs made such payments and provided proof of the
payments based on the improper, inaccurate, and fraudulent representations as to their account.
The Foreclosing Defendants also utilized amounts known to the Defendants to be inaccurate to
determine the amount allegedly due and owing for purposes of foreclosure.

315. Additionally, the Foreclosing Defendants concealed material facts known to them but not to Plaintiffs regarding payments, notices, assignments, transfers, late fees and charges with the intent to defraud Plaintiffs.

316. The Foreclosing Defendants made the above-referenced false representations, concealments and non-disclosures with knowledge of the misrepresentations, intending to induce Plaintiffs' reliance, which the unsuspecting Plaintiffs justifiably relied upon, resulting in damage to their credit standing, costs and loss of their property.  Plaintiffs were unaware of the true facts. Had Plaintiffs known the true facts, Plaintiffs, among other things, would not have maintained the Foreclosing Defendants as their lender, servicer and trustee (and their alleged agents) and/or would have taken legal action immediately to save their house.

317. As a result of the Foreclosing Defendants' fraudulent conduct, Plaintiffs have suffered compensatory, general and special damages in an amount to proof.  Additionally, the Foreclosing Defendants acted with malice, fraud and/or oppression and, thus, Plaintiffs are entitled to an award of punitive damages.

## TWENTY FOURTH CAUSE OF ACTION
## TO VOID OR CANCEL TRUSTEE'S DEED UPON SALE
## (AGAINST THE FORECLOSING DEFENDANTS)

318. Although the trustee's deed upon sale appears valid on its face, it is invalid, and of no force and effect, for the reasons set forth above including, inter alia, the fact the Deed of Trust which purportedly secured the Note, which served as the basis for a claim to have the right to conduct a non-judicial foreclosure was at all times void due to the wrongful and improper assignment to the Foreclosing Defendants.

319. Plaintiffs are therefore entitled to an order that the Trustee's Deed upon Sale is void ab initio and cancelling such Trustee's Deed.

## TWENTY FIFTH CAUSE OF ACTION FOR
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
## (AGAINST THE FORECLOSING DEFENDANTS)

(Against FLAGSTAR BANK and DOES )

320. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.  This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement.  The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose.  This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

321. Alternatively, if the note and deed of trust was validly and properly assigned to the Foreclosing Defendants, the Foreclosing Defendants did not act in good faith and did not deal fairly with Plaintiffs in connection with the note and deed of trust when they refused to properly apply the payments to their loan and thereafter foreclosed on 625 LACOINA BLVD. LOS ANGELES, CA 90044 even though Plaintiffs provided proof of payments for the allegedly tax efficient he fixes the end the taxes from the tax assessor skipped months and thereafter refused to resolve the mistake with Plaintiffs in an equitable fashion.

322. The Foreclosing Defendants enjoyed substantial discretionary power affecting the rights of Plaintiff during the events alleged in this Complaint.  They were required to exercise such power in good faith.

323. The Foreclosing Defendants engaged in such conduct to drive Plaintiffs into foreclosure so that they could acquire the 625 LACOINA BLVD. LOS ANGELES, CA 90044 with its large equity at a bargain basement price.  These actions were a bad faith breach of the contract

between Plaintiffs and the Foreclosing Defendants which show that they had no intention of performing the contract, consisting of the original note and deed of trust, in good faith.

324. As a result of the Foreclosing Defendants' breaches of this covenant, Plaintiffs have suffered general and special damages in an amount to be determined at trial.

325. Plaintiff incorporates by reference paragraphs 1 through360 as though fully set forth below.

326. Defendants, and each of them, owed plaintiff an implied contractual duty of good faith and fair dealing under the aforesaid promissory note and deed of trust.

327. Defendants knew or should have known that the Property had substantial negative equity and that defendants would suffer a significant monetary loss immediately following a trustee sale and additional monetary losses in connection with the post-sale management, maintenance and resale of the Property.

328. Plaintiff is informed and believed and thereon alleges that defendants knew or should have known that the anticipated recovery under a loan modification or workout plan would have exceeded the anticipated recovery through foreclosure on a net present value basis

329. Plaintiff had the financial ability to make the loan payments if the loan had been modified according to standard loss mitigation practices then prevalent in the mortgage industry.

330. Defendants, and each of them, breached the implied covenant of good faith and fair dealing in that they refused plaintiff a feasible loan modification or other workout plan, and this even though the anticipated recovery under a loan modification or workout plan would have exceeded the anticipated recovery through foreclosure on a net present value basis. Defendants are for-profit entities that had no good faith commercial explanation for their conduct.

331. By reason of defendants' breach, plaintiff has suffered economic and non-economic damages to be proved at trial.

## TWENTY SIXTH CAUSE OF ACTION FOR
## UNJUST ENRICHMENT
## (AGAINST THE FORECLOSING DEFENDANTS)

332. By their wrongful acts and omissions, the Foreclosing Defendants have been unjustly enriched at the expense of Plaintiffs, and thus Plaintiffs have been unjustly deprived.

333. By reason of the foregoing, Plaintiffs seek restitution from the Foreclosing Defendants, and an order of this Court disgorging all profits, benefits, and other compensation obtained by the Foreclosing Defendants from their wrongful conduct.


## TWENTY SEVENTH CAUSE OF ACTION FOR
## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS
## 17200 ET SEQ.
## (AGAINST THE FORECLOSING DEFENDANTS)

334. California Business & Professions Code Section 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

335. As more fully described above, the Foreclosing Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice. This conduct is ongoing and continues to this date.

336. Specifically, the Foreclosing Defendants engage in deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, foreclosure of residential properties and related matters by

    (a) Assessing improper or excessive late fees;

(b)  Improperly characterizing customers' accounts as being in default or delinquent status to generate unwarranted fees;

(c)  Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

(d)  Misapplying or failing to apply customer payments;

(e)  Failing to provide adequate monthly statement information to customers regarding the status of their accounts, payments owed, and/or basis for fees assessed;

(f)  Seeking to collect, and collecting, various improper fees, costs and charges, that are either not legally due under the mortgage contract or California law, or that are in excess of amounts legally due;

(g)  Mishandling borrowers' mortgage payments and failing to timely or properly credit payments received, resulting in late charges, delinquencies or default;

(h)  Treating borrowers as in default on their loans even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements or California law;

(i)  Failing to disclose the fees, costs and charges allowable under the mortgage contract;

(j)  Ignoring grace periods;

(k)  Executing and recording false and misleading documents; and

(l)  Acting as beneficiaries and trustees without the legal authority to do so.

(j)  overcharging on taxes finding property with tax inefficiencies are mistakes by the tax assessor and foreclosing on the property and fleecing the nation

337. The Foreclosing Defendants fail to act in good faith as they take fees for services but do not render them competently and in compliance with applicable law.

-82-

338. Moreover, the Foreclosing Defendants engage in a uniform pattern and practice of unfair and overly-aggressive servicing that result in the assessment of unwarranted and unfair fees against California consumers, and premature default often resulting in unfair and illegal foreclosure proceedings.  The scheme implemented by the Foreclosing Defendants is designed to defraud California consumers and enrich the Foreclosing Defendants.

339. The foregoing acts and practices have caused substantial harm to California consumers.

340. As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of the Foreclosing Defendants, Plaintiffs and California consumers have suffered and will continue to suffer damages in the form of unfair and unwarranted late fees and other improper fees and charges.

341. By reason of the foregoing, the Foreclosing Defendants have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to Plaintiffs and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to California Business & Professions Code Sections 17203 and 17204. Additionally, Plaintiffs are therefore entitled to injunctive relief and attorney's fees as available under California Business and Professions Code Sec. 17200 and related sections.

## TWENTY EIGHTH CAUSE OF ACTION FOR
## BREACH OF WRITTEN CONTRACT
## (Against FLAGSTAR BANK ALL DOES )

342. Plaintiff incorporates by reference paragraphs 1 through 16 as though fully set forth below.

-83-

343. On or about May 10, 2008, plaintiff executed a standard, boilerplate written promissory note and deed of trust, which documents individually and collectively mirrored and incorporated by reference the foreclosure provisions of Section 2923 et seq. of the California Civil Code and governed, inter alia, the application of payments to the mortgage account, the interest rate to be charged on the amount loaned, the assessment of interest and legal and administrative fees in the event of default, substitution of the trustee and beneficiary, the payment of real property taxes and hazard insurance, forbearances and waivers, and requests for information and notice between the parties.

344. Defendants, and each of them, thereafter purportedly became party to both contracts by way of assignment, endorsement or operation of law in their respective capacities as purported lender/beneficiary, loan servicer, and trustee as alleged hereinabove.

345. The consideration set forth in said contracts was fair and reasonable.

346. Plaintiff performed all conditions, covenants, and promises required by her on her part to be performed in accordance with the terms and conditions of the contracts. To the extent plaintiff may not have performed, his non-performance was excused by the prior non-performance of defendants.

347. Plaintiff is informed and believes and thereon alleges that defendants, and each of them, materially breached the terms of said contracts in that they:

    (a).    Repeatedly refused and failed to respond to plaintiff's telephonic and written inquires about the amount owed under the subject note and the amount required to reinstate the loan;

    (b).    Repeatedly misrepresented orally and in writing the amount owed under the subject note and the amount required to reinstate the loan;

(c).   Failed to credit and properly apply on or more of plaintiff's monthly payments to
the mortgage account in accordance with the terms of the promissory note and
deed of trust, causing the account to appear delinquent and proximately resulting
in the improper filing of a notice of default and notice of trustee sale;

(d).   Refused and otherwise failed to credit and properly apply plaintiff's tender of the
funds required to reinstate the subject loan;

(e).   Charged to plaintiff's mortgage account excessive and illegitimate trustee's fees,
attorney's fees, and other legal and administrative fees that were prohibited by the
terms of the promissory note, deed of trust and by Section 2924 et seq. of the
Civil Code and which constituted unlawful liquidated damages under applicable
law;

(f).   Charged to plaintiff's mortgage account interest on the principal balance in excess
of what was permitted under the promissory note and deed of trust and by
applicable law;

(g).   Failed to comply with the statutory requirements of a valid notice of default, to
wit, they  (i) failed to include in the notice of default a statement accurately
setting forth the nature of each breach under the promissory note and deed of
trust; (i) failed to properly record and serve on plaintiff written notice of default;
and (iii) failed to state in the notice of default the amount actually required to
reinstate the loan;

(h).   Failed to comply with the statutory requirements of a valid notice of trustee sale,
to wit, they (i) failed to properly record, publish, post on the Property, and serve
on plaintiff notice of the sale (Section 2924f); (ii) noticed the trustee sale
prematurely under Section 2924 of the Civil Code; and (iii) failed to include in the
notice of sale an accurate statement of the total amount of the unpaid balance of

the obligation secured by the Property to be sold and reasonably estimated costs,
expenses, and advances at the time of the initial publication of the notice of sale;

(i).    Breached an oral and written agreement(s) with plaintiff to reinstate the loan and
avoid the trustee sale in contravention of Section 2924g of the Civil Code; and

(j).    Sold the Property despite having waived its right to foreclose by accepting
payments after initiating non-judicial foreclosure.

348. By reason of defendants' breach of said agreements, plaintiff suffered economic and
non-economic damages to be proved at trial.

## TWENTY NINETH CAUSE OF ACTION TO
## SET ASIDE TRUSTEE'S SALE
## (AGAINST ALL DEFENDANTS)

349. Plaintiff incorporates by reference paragraphs  through  as though fully set forth below.

350. RESIDENTIAL acquired RITA GAIL FARRIS-ELLISON,  JUST THAT EZ
FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS
ESCROW INC, CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT
SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI MING LLC to the Property with prior
knowledge of the misconduct alleged hereinabove.

351. Plaintiff has no adequate remedy at law because of the presumed uniqueness of and
sentimental value that has attached to the Property.

352. As described hereinabove, the Property was sold despite the fact that plaintiff attempted
to tender, and did in fact tender, an amount of money sufficient to reinstate the subject loan and
avoid the trustee sale of the Property.

PLAINTIFF'S VERIFIED COMPLAINT

353. Plaintiff had the financial means to reinstate the loan prior to the trustee sale and have and will have the financial wherewithal to reinstate the loan and/or redeem the Property upon being restored to title.

354. Wherefore, equity demands that the trustee sale be set aside on account of wrongful foreclose and that plaintiff be restored to title.    2. Defendant, FLAGSTAR BANK, claims to be 'the owner of the subject property, by virtue of a Trustee's Deed after Sale signed by First American Trustee Servicing Solutions LLC and recorded in the office of the Contra Costa Recorder as Document 2011 0116629-00 on June 13, 2011.

355. FLAGSTAR BANK [FLAGSTAR BANK] is a national bank that does business in California. FLAGSTAR BANK made the loan which is the subject of this lawsuit and was the foreclosing beneficiary. FLAGSTAR BANK promptly sold the loan to an unidentified entity and is currently the servicer of the loan.

356. Plaintiffs do not know the true names and capacities, whether corporate, associate, or individual, of defendants sued herein as DOE 1 through DOE 360 and, for that reason, has sued said defendants by such fictitious names, and plaintiffs pray leave to insert the true names and. capacities of said defendants when the same are ascertained. Plaintiffs are informed and believes, and thereon alleges, that each of the defendants designated herein as DOE 1-360 is negligently or otherwise responsible in some manner for the events and happenings referred to and by such negligence has proximately caused the wrongful injuries of the plaintiff as herein alleged. The defendants designated as DOE 1-360 claim some interest in the subject property which is adverse to plaintiffs and said claims are invalid.

357. In order to secure payment of principal and interest for a loan on the subject property, plaintiffs executed the Deed of Trust which was recorded with the Contra Costa Recorder. Plaintiffs ask that the Court take judicial notice of this deed of trust and its contents. Said security instrument was prepared by

FLAGSTAR BANK and FLAGSTAR BANK agreed to all the terms in said

deed of trust.

358 FLAGSTAR BANK caused a Notice of Default, Notice of Trustee Sale and

Trustee Deed to be recorded against the subject property contrary to the

provisions of the Deed of Trust. In particular, Paragraph 9 of the Deed of trust

explicitly required FLAGSTAR BANK and its Trustee to comply with the

provisions of the National Housing Act **[11** U.S.C. §1701 et seq and

implementing regulations]. The regulations referenced in paragraph 9(d) of the

Deed of Trust state explicitly:

```
It is the intent of the Department that
no mortgagee shall commence foreclosure
oracquire title until the requirements
of this subpart have been followed.
[24 CFR §203.500] (emphasis added
```

FLAGSTAR BANK secured its Trustee Deed after Sale without complying with the requirements

of the National Housing Act or of the Federal Fair Debt Collection Practices Act [FDCPA, 15

U.S.C. §1692].

359.In particular, FLAGSTAR BANK failed to engage in any of the required loss mitigation rules

required by the National Housing Act. Plaintiffs paid a substantial fee when the loan was originated

for the privilege of securing the protections of 12 U.S.C. §1715u and the implementing

regulations. Among these protections are the requirement that FLAGSTAR BANK meet with

plaintiffs on a face to face basis to discuss alternatives to the requirement that FLAGSTAR BANK

meet with plaintiffs on a face to face basis to discuss alternatives to forclosure and modifications

of the subject loan. Also FLAGSTAR BANK was required to secure the approval of the

Secretary of Housing and Urban Development prior to commencing any foreclosure

proceedings. In addition FLAGSTAR BANK as required to accept modifications to the

loan pursuant to the HAMP program.FLAGSTAR BANK breached all these obligations, and all

the other requirements of law by prematurely foreclosing on the subject property. FLAGSTAR
BANK failed secure the required HUD

-88-

approval to foreclosure, failed to meet with plaintiffs, failed to explore alternatives to foreclosure and failed to accept

plaintiffs into the HAMP program as required by law and the deed of trust.

360. In addition, FLAGSTAR BANK and its collection agent, First American, breached their obligations in paragraph 18 of the deed of trust. This paragraph incorporates Chapter 38A of the National Housing Act. This Chapter required the non-judicial trustee sale to be conducted pursuant to the federalrequirements, and by a Foreclosure Commissioner. In fact noForeclosure Commissioner was appointed, contrary to the provisions of the deed of trust and National Housing Act.

359. In addition, First American Trustee Servicing Solutions LLC [First American] was employed by FLAGSTAR BANK as a debt collector after plaintiffs defaulted on their loan payment. First American failed to provide plaintiffs the Debt Validation Notice required by the FDCPA. First American also engaged in unfair debt collection practices by proceeding to sell the subject property with actual knowledge that plaintiffs were being denied the protections which are summarized in paragraph 9 of the Deed of Trust.

357. The Trustee Sale was improperly held and the Trustee's Deed after Sale was wrongfully executed, delivered and recorded. In particular, the trustee sale was held in violation of paragraph 9 of the Deed of Trust and contrary to the FDCPA. Plaintiff is entitled to remain in possession of said property and will sustain irreparable damages if forced to vacate the property. FLAGSTAR BANK has threatened to evict plaintiffs and filed an unlawful detainer action in this Court. Rebecca Hardie, The judge hearing said eviction action, concluded that the deficiencies in the trustee sale summarized in this Complaint are beyond the jurisdiction of the limited jurisdiction unlawful detainer proceedings. For this reason, Judge Hardie failed to address these issues.

358. Plaintiffs are entitled to an order permitting them to reside in the subject property during the pendency of this litigation. In addition, they are entitled to the cancellation of the Trustee's Deed after Sale and damages for the breach of the FDCPA. Plaintiffs are entitled to this relief pursuant to the Consent Judgment filed in the US District Court for the District of Columbia as Civil Action No 1:12-cv-00361RMC and approved by the Court on April 4, 2012.

### THIRTIETH CAUSE OF ACTION

### [Canellation of FLAGSTAR BANK YI MING LLC

### Trustees Deed based on Consent Judgment-Against

### RITA GAIL FARRIS-ELLISON ]

359. Plaintiffs incorporate by reference all the allegations in paragraphs through as if set forth in

full.

360 Plaintiffs seek to quiet title against the claims of FLAGSTAR BANK as reflected in the Trustee Deed after Sale. Plaintiffs acknowledge FLAGSTAR BANK Yi MING LLC as their lender, pursuant to the Deed of Trust. Plaintiffs are ready, willing and able to make the payments required of them pursuant to this Deed of Trust, as appropriately modified pursuant to the Consent Judgment. The amount of these payments must be as set forth in the RAMP program and the related programs for which plaintiffs are intended as third party creditor beneficiaries by virtue of the Consent Judgment. Plaintiffs believe that the doctrine of Judicial Estoppel prevents FLAGSTAR BANK  yi MING LLC from taking a position in this Court which differs from the position taken in the Consent Judgment.

361. Plaintiffs have named as defendants all persons unknown who claim any legal or equitable interest in the subject property. Said persons are designated ads DOES 1-.360

362. Plaintiffs desire and are entitled to a judicial declaration quieting title in their names, subject to the Deed of Trust in favor of FLAGSTAR BANK as of June 13, 2011. The Trustee Deed which First American recorded on June 11, 2011 should be canceled.

363. Plaintiffs are entitled to an accounting to determine the amount due under the Deed of Trust, as well as the appropriate payment schedule, monthly payments due to FLAGSTAR BANK as provided in the Consent Judgment. Plaintiffs are ready, willing, and able to make all their required payments on the loan as modified pursuant to the terms provided in the Consent Judment

364.

A.    THE LAW FAVORS DISPOSING OF CASES ON THEIR MERITS

Numerous decisions of the California Supreme Court make it clear that the law favors disposing of cases on their merits.

"It is the policy of law to favor, whenever possible, a hearing on the merits. Appellate courts are much more disposed to affirm an order when the result is to compel a trial on the

1  merits than when the default judgment is allowed to stand. Therefore, when a party in default

2  moves promptly to seek relief, very slight evidence is required to justify a trial court's order

3  setting aside a default". *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.

4        Because the law strongly favors trial and disposition on the merits, any doubts must be

5  resolved in favor of the party seeking relief from default. *Elston v. City of Turlock* (1985) 38

6  Cal.3d 227, 233.

7        If granting the relief will not prejudice the opposing party (other than losing the advantage of

8  the default), "the original negligence in allowing the default to be taken will be excused on a weak

9  showing." *Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 740.

10       As shown by the Declarations of William Clark and Frank Schneider. Therefore, the Court

11 should grant his Motion so he can have his day in Court, and this case can be disposed of on its

12 merits as the law favors.

13                    I.    **NON-JUDICIAL FORECLOSURES ARE CREATURE OF THE STATUE**

15       In the instant action both Code of Civil Procedure 1161a(b)((3), the statutory grounds for

16 unlawful detainer after a foreclosure, and Civil Code 2924 et. Seq., are specific statutes, the former

17 controlling the sale of the property after a foreclosure, and the latter statute(s) stating the manner

18 in which a non-judicial foreclosure must be followed to be valid. Both statutes must be read

19 together in harmony with each, or inconsistent and invalid results will occur, and due process is

20 violated,

21       A nonjudicial foreclosure sale is a creature of statute dealing with Deeds of Trust and real

22 property. (Kachlon v. Markowitz (2008) 168 Cal.App.4th 316, 334 [85 Cal. Rptr. 3d 532] [—The

23 Civil Code contains a comprehensive statutory scheme regulating nonjudicial foreclosure. I].) The

24 trustee's role in preparing for and conducting the sale is set forth in detail in Civil Code section

25 2924 et seq. —The trustee in nonjudicial foreclosure is not a true trustee with fiduciary duties, but

26 rather a common agent for the trustor and beneficiary. (Vournas v. Fidelity Nat. Tit. Ins. Co.

27 (1999)] 73 Cal.App.4th [668,] 677 [86 Cal. Rptr. 2d 490].) The scope and nature of the trustee's

28 duties are exclusively defined by the deed of trust and the governing statutes. No other common

law duties exist. (I. E. Associates v. Safeco Title Ins. Co. (1985) 39 Cal.3d 281, 287–288 [216 Cal. Rptr. 438, 702 P.2d 596] ... ; Residential Capital v. Cal-Western Reconveyance Corp. (2003) 108 Cal.App.4th 807, 827 [134 Cal. Rptr. 2d 162].)l (Kachlon v. Markowitz, supra, at p. 335.)

The illegal Trustee that held a Trustee's Sale was different that Defendant's Trustee in the Deed of Trust and Plaintiff failed to provide any evidence to the contrary.

## STATUTES ARE TO BE STRICTLY FOLLOWED

365 In California, the regulation of nonjudicial foreclosures pursuant to a power of sale is governed by the "'comprehensive framework' " of sections 2924 through 2924k. (Melendrez v. D&I Investment, Inc. (2005) 127 Cal.App.4th 1238, quoting Moeller v. Lien (1994) 25 Cal.App.4th 822, 830; see also Ung v. Koehler (2005) 135 Cal.App.4th 186, 202 [exercise of power of sale in a deed of trust " 'is carefully circumscribed by statute' "]; Knapp v. Doherty (2004) 123 Cal.App.4th 76, 86.) The statutory scheme is intended to be "exhaustive" and courts will not incorporate unrelated provisions into statutory nonjudicial foreclosure proceedings. (See Moeller, at p. 834.) Under the scheme, a "trustee, mortgagee or beneficiary, or any of their authorized agents" may record the notice of default—the document that initiates the nonjudicial foreclosure process. (§ 2924, subd. (a)(1); see also § 2924b subd. (b)(4) ["A 'person authorized to record the notice of default or the notice of sale' shall include an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee"].

366 Strict compliance with the statue was also confirmed in the recently decided California Supreme court ruling of Dr. Leevil, LLC v. Westlake Health Care Center 6 Cal. 5th 474 *; 431 P.3d 151 **; 241 Cal. Rptr. 3d 12 ***; 2018 Cal. LEXIS 9546: at CA (4)[ ] (4) "It has long been recognized that the unlawful detainer statutes are to be strictly construed and that relief not statutorily authorized may not be given due to the summary nature of the proceedings. [Citation.] The statutory requirements in such proceedings '"must be followedstrictly ... ."'" (WDT-Winchester v. Nilsson (1994) 27 Cal.App.4th 516, 526 [32 Cal.Rptr.2d 511]; see Underwood v. Corsino (2005) 133 Cal.App.4th 132, 135 [34 Cal. Rptr. 3d 542]; Cal-American Income Property Fund IV v. Ho (1984) 161 Cal.App.3d 583, 585 [207 Cal. Rptr. 532].) "The remedy of unlawful

-92-

detainer is a summary proceeding to determine the right to possession of real property. Since it is purely statutory in nature, it is essential that a party seeking the remedy bring himself clearly within the statute." (Baugh v. Consumers Associates, Ltd. (1966) 241 Cal.App.2d 672, 674 [50 Cal. Rptr. 822].) CA (5) [ ]

367 Defendant, is not exempt from making sure all statutes have been strictly complied with before bringing an unlawful detainer action pursuant to CCP 1161a (b)(3).

368  Defendant will lay down the foundation to prove to the court that his case parallels Fredeick A Haist  in that there was an utter failure of strict compliance with the statutes and Defendant failed to meet its burden of proving standing to bring the action Cal. Evid. Code §403.

**V.    THE COURT GAVE FAVOR AND LEGAL ADVICE TO DEFENDANT. THE COURT IGNORED FACTS AND EVIDENCE PRESENTED BEFORE THE COURT BY PLAINTIFF   IN FAVOR OF LACK OF FACTS AND MISREPRENTATIONS OF MATERIAL FACTS PRESENTED BY DEFENDANT AND DEFENDANT ATTORNEY.**

368  Plaintiff seeks to set aside the Judgment and Statement of Decision pursuant to Code of Civil Procedure §657, and/or the "inherent power" of the court, inter alia, on the grounds that the sale was not in compliance with §2924 et. al., nor the Deed of Trust, as there was a complete and utter failure of proof that the sale was in compliance with Civil Code §2924 et. al., the Deed of Trust, and "title has not been duly perfected", as the evidence submitted by Plaintiff admitted shows the transfer of title was done by fraud, forgery and Aggravated Identity theft. The foreclosure was conducted by an illegal Trustee who did not have the "contractual power" of the Deed of Trust to sell the property in violation of California 2923.5 "Due Diligence Clause" and a Defective Declaration in violation of statutory requirement of CCP 2015.5 (Note: The alleged sale was for a lien only and not the property itself).

///

///

**VI.    369    THE FOURTEENTH AMENDMENT AND CALIFORNIA CONSTITUTION, ARTICLE I, §16 PROHIBITS A JUDGMENT BASED ON A LACK OF DUE PROCESS AND A LACK OF A JURY TRIAL.**

A.  NO NOTICE TO QUIT AND NO SUMMONS AND COMPLAINT WAS SERVED ON PLAINTIFF.

The case of *Nativi v. Deutsche Bank Nat'l Trust Co.* (Cal. App. 6 Dist. 2014) 223 Cal.App.4th 261, 269-270, 167 Cal.Rptr.3d 173, explains that:

> "Section 1161b was amended in 2012 (Stats. 2012, ch. 562, § 3, p. 4960) and the amendment went into effect on January 1, 2013. (See Cal. Const., art. IV, § 8, subd. (c); Gov. Code, § 9600, subd. (a).) As amended, section 1161b, subdivision (a), provides: 'Notwithstanding Section 1161a, a tenant or subtenant in possession of a rental housing unit under a month-to-month lease or periodic tenancy at the time the property is sold in foreclosure shall be given 90 days' written notice to quit pursuant to Section 1162 before the tenant or subtenant may be removed from the property as prescribed in this chapter.' As amended, section 1161b, subdivision (b), additionally provides that 'tenants or subtenants holding possession of a rental housing unit under a fixed-term residential lease entered into before transfer of title at the foreclosure sale shall have the right to possession until the end of the lease term, and all rights and obligations under the lease shall survive foreclosure . . . .' (Italics added.) A fixed-term residential lease is not entitled to this additional protection, however, where '[t]he purchaser or successor in interest will occupy the housing unit as a primary residence,' '[t]he lessee is the mortgagor or the child, spouse, or parent of the mortgagor,; '[t]he lease was not the result of an arms' length transaction,' or '[t]he lease requires the receipt of rent that is substantially less than fair market rent for the property, except when rent is reduced or subsidized due to a federal, state, or local subsidy or law.' (§ 1161b, subd. (b).) Section 1161b does 'not apply if any party to the note remains in the property as a tenant, subtenant, or occupant.' (§ 1161b, subd. (d).)" [See also *Crescent Capital Holdings, LLC v. Motiv8 Invs.* (Cal. Super. 2022) 75 Cal.App.5th Supp. 1, 10.]

Section 1161b was enacted in 2008 in the wake of the foreclosure crisis (Stats. 2008, ch. 69, §§ 1, 6, 10 ), and amended in 2012 in an effort to bring California law in line with the federal Protecting Tenants at Foreclosure Act of 2009 (PTFA) (Stats. 2012, ch. 562, § 3). "[T]he PTFA provides protections for bona fide tenants of residential real property at foreclosure" by allowing "a bona fide lease for a term to survive foreclosure through the end of the lease term subject to the limited authority of the immediate successor in interest to terminate the lease, with proper notice, upon sale to a purchaser who intends to occupy the unit as a primary residence." (*Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 269-270, 167 Cal.Rptr.3d 173.) Thus, as amended, section 1161b, subdivision (b), provides that "tenants or subtenants holding possession of a rental housing unit under a fixed-term residential lease entered into before transfer of title at the foreclosure sale shall have the right to possession until the end of the lease term, and

-94-

all rights and obligations under the lease shall survive foreclosure ...," but cautions that this protection does not apply when, among other circumstances, the lease was not negotiated at arms' length or when it requires the receipt of rent that is substantially less than fair market rent for the property. (§ 1161b, subd. (b)(3), (4).)

Here, Defendant was never served with a Notice to Quit and the Summons and Complaint. His due process rights were violated without service of these documents. There should be no Judgment in this case.

In the instant action both Code of Civil Procedure §1 161a(b)(3), the statutory grounds for unlawful detainer after a foreclosure, and Civil Code §2924 et seq are specific statutes, the former controlling the sale of property after a foreclosure, and the latter statute(s) stating the manner in which a non-judicial foreclosure must be followed to be valid. Both statutes must be read together, in harmony with each, or inconsistent and invalid results will occur, and due process is violated.

That leaves us solely with Civil Code §2924(a)(6), that only the valid Trustee and the beneficial owner of the promissory note may initiate a foreclosure, which was not done in this case.

As shown above, the Plaintiffs own evidence has proved the specific facts of an illegal Trustee and beneficiary, and the sale was based on fraud, forged documents, and illegal issues.

An unlawful detainer after a foreclosure has been completed, is brought pursuant to Code of Civil Procedure §1161a(b)(3), and the elements of a post foreclosure unlawful detainer the Plaintiff has the burden to prove (1) the Defendant executed the Deed of Trust being foreclosed on, (2) there was a three day written notice given to the person(s) sought to be removed (3) served in compliance with Code of Civil Procedure §1162, (4) the defendant failed to leave after the expiration of the three days' notice, (5) the sale was in "accordance" with Civil Code §2924, and (6) title has been "duly perfected".

Thus, in bringing this action, Plaintiff specifically put at issue its Validity of title, which has not been tested until it is tried in court, as a foreclosure is NOT a judicial determination.

The court in an unlawful detainer under Code of Civil Procedure, section 1161a, subdivision (4), has jurisdiction to determine the validity of such defenses.

B.  PLAINTIFF  WAS DENIED HIS JURY TRIAL IN THIS CASE.

The case of *Chen v. Lin,* 42 Cal.App.5th Supp. 12, 16-17 (Cal. Super. 2019), states that:

"The court's determination that defendant showed up for trial unprepared—failing to produce proposed jury instructions and other documents and not having met and conferred with her opponent's counsel—is undisputed. Whether this amounted to a lawful ground to deprive Plaintiff of the right to jury trial is a legal issue, and "[w]e review legal questions de novo. [Citation.]" (*Florio v. Lau* (1998) 68 Cal.App.4th 637, 641, 80 Cal.Rptr.2d 409 ; see also *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 836, 102 Cal.Rptr.2d 719, 14 P.3d 930 [issues pertaining to constitutional and statutory construction are reviewed de novo on appeal].)

Article I, section 16 of the California Constitution gives parties in a civil dispute the right to trial by jury, providing, in relevant part, 'Trial by jury is an inviolate right and shall be secured to all ....' The fundamental right to a jury trial in civil cases is specifically guaranteed in unlawful detainer actions by Code of Civil Procedure section 1171. (See *Munoz v. Silva* (2013) 216 Cal.App.4th Supp. 11, 14, 157 Cal.Rptr.3d 889.) In such cases, the statute states, in relevant part, 'Whenever an issue of fact is presented by the pleadings, it must be tried by a jury, unless such jury be waived as in other cases. ...' (Code Civ. Proc., § 1171.) The right to a jury of one's peers is '"a basic and fundamental part of our system of jurisprudence. ... As such, it should be zealously guarded by the courts. ... In case of doubt therefore, the issue should be resolved in favor of preserving a litigant's right to trial by jury." [Citations.]' (*Cohill v. Nationwide Auto Service* (1993) 16 Cal.App.4th 696, 699, 19 Cal.Rptr.2d 924 ; see *Byram v. Superior Court* (1977) 74 Cal.App.3d 648, 654, 141 Cal.Rptr. 604.)"

Here, Plaintiff was denied his right to a Jury Trial when the Judge illegally excluded him from his Trial .Plaintiff should be retried with a competent Jury PRESENT.

///

///

///

///

## 400    THE COURT MUST STRICTLY ENFORCE THE TECHNICAL REQUIREMENTS FOR A NON JUDICIAL FORECLOSURE

The harshness of non-judicial foreclosure has been recognized. 'The exercise of the power of sale is a harsh method of foreclosing the rights of the grantor." *Anderson v. Heart Federal Savings* (1989) 208 Cal.App. 3d 202, 6 215, citing to *System Inv. Corporation v. Union Bank* (1971) 21 Cal.App.3d 137, 153. The statutory requirements

are intended to protect the trustor from a wrongful or unfair loss of his property. *Moeller v. Lien* (1994) 25 Cal.App. 4th 822, 830; accord, *Hicks v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496, 503, Lo *Nguyen v. Calhoun* (6th District 2003) 105 Cal.App.4th 428, 440, and a valid foreclosure by the private power of sale requires strict compliance with the requirements of the statute. Miller & Starr, California Real Estate (3d ed.), Deeds of Trust and Mortgages, Chapter 10 § 10.179; *Anderson v. Heart Federal Sav. & Loan Assn.,* 208 Cal. App. 3d 202,211 (3d Dist. 1989),

401 Here Civil Code §2924a(6) has codified these cases by stating only the Beneficiary under the promissory note, deed of trust, or trustee may initiate a foreclosure.

402 The same reasoning applies even to a notice of n trustee's sale. Courts will set aside a foreclosure sale when there has been fraud, when the sale has been improperly, unfairly, or unlawfully conducted, or when there has been such a mistake that it would be inequitable to let it stand. *Bank of America Nat. Trust & Savings Ass 'n v. Reidy* (1940) 15 Cal. 2d 243, 248; *Whitman v. Translate Title Co.* (4th Dist. 1985) 165 Cal. App. 3d 312, 322-323; In re Worcester (9th Cir. 1987) 811 F.2d 1224, 1228. See also *Smith v. Williams* (1961) 55 Cal. 2d 617, 621; *Stirton v. Pastor* (4th Dist. 1960) 177 Cal. App. 2d 232, 234; *Brown v. Busch* (3d Dist. J 95 7) 152 Cal.App. 2d 200, 203-204.

///

## 403   DEFENDANT COMPLAINT IS INSUFFICIENT TO MEET ITS PRELIMINARY FACT

404 Here, Defendant  brought a Complaint for unlawful detainer without standing or the capacity to bring this action.

405    Defendant  is in violation of CCP 367, Cal. Civ. Code §1812.10 (c), CCP §396(a) and CCP §446.

406 Defendant  fails to state a cause of action for unlawful detainer pursuant to CCP 1161a as when there has been illegal transfer in the Chain of Title to the property. There was no entity that is the holder of the beneficial interest to the Deed of Trust pursuant to Cal. Civ. Code 2924(a)(6).

407 A Factual claim requires the citing of a known duty a breach of which is the causation of damages that be attested to by at least one known competent fact witness that Plaintiff can cross examine this person under oath regarding the rules of evidence.

Defendant verified the complaint on information and belief in violation of Cal. Civ. Code 1812.10 (c).

The complaint fails on multiple levels:

1. Defendant failed to provide a verification in compliance with of Cal Civ. Code 1812.10 (c) and CCP 396(a); In any action subject to this section, concurrently with the filing of the complaint, the defendant shall file an affidavit stating facts showing that the action has been commenced in a superior court and court location described in this section as a proper place for the trial of the action. Those facts may be stated in a verified complaint and shall not be stated on **information or belief**. When that affidavit is filed with the complaint, a copy thereof shall be served with the summons. **If a defendant fails to file the affidavit or state facts in a verified complaint required by this section, no further** proceedings may occur, but the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice.

2. Where the verification, or affidavit, is to be "used as evidence" of facts, " Section 446 [Code Civ. Proc.] does not apply." (*Toboni v. Pennington Millnery Co.,* supra, p. 52.) [4] Matters alleged on "information and belief" do "not serve to establish the facts ... because an affidavit which is to be used as evidence must be positive, direct and not based upon hearsay." (*Gutierrez v. Superior Court,* 243 Cal. App. 2d 710, 725 [52 Cal. Rptr. 592].)

3. See in Star Motor Imports, Inc. v. Superior Court, 88 Cal. App. 3d 201. [1c] An affidavit based on "information and belief" is hearsay and must be disregarded (*Franklin v. Nat C. Goldstone Agency,* 33 Cal. 2d 628, 631 [204 P.2d 37]; *Moore v. Thompson,* 138 Cal. 23, 26 [70 P. 930]; *Judd v. Superior Court,* 60 Cal. App. 3d 38, 43 [131 Cal. Rptr. 246]; *Tracy v. Tracy,* 213 Cal. App. 2d 359, 362 [28 Cal.Rptr. 815]), and it is "unavailing for any purpose" whatsoever (*Gay v. Torrance,* 145 Cal. 144, 151 [76 P. 717]

408    Without a valid verified complaint by anyone with personal knowledge, defendant fails to plead the essential elements of this claim and fails to state any cause of action against plaintiff. As defendant fails to plead its claim sufficiently and fails to state a valid claim for relief, plaintiffs respectfully requests that the Demurrer be sustained and defedant meritless complaint be dismissed.

**409**    B**THE COURT SHOULD HAD SUSTAINED THE GENERAL DEMURRER TO THE COMPLAINT BECAUSE THE COMPLAINT FAILS TO STATE FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF ACTION.**

410 California Code of Civil Procedure §430.10 et. seq. which states the following in relevant part:

**§430.10.** The party against whom a Complaint or cross-Complaint has been filed may object, by demurrer or answer as provided in Section **430**.**30**, to the pleading on any one or more of the following grounds:

   a.  Defendant lacks the capacity to bring this action.
   b.  Defendant lacks standing to sue in this action.
   c.  The Complaint is verified on information and belief.
   d.  The verification fails to follow the statute CCP 446.
   e.  The Complaint fails to state it is a proper court of jurisdiction.
   f.   Defendant  complaint for unlawful detainer fails to state facts sufficient to constitute a cause of action, because  Defendant has not pled, and cannot plead the requisite elements of the unlawful detainer pursuant to CCP 1161a.
   g.  Defendant complaint fails to provide and factual evidence to meet Defendant burden of proof.

   **§430**.**30**.  (a) When any ground for objection to a Complaint, cross-Complaint, or answer appears on the face thereof, or from any matter of which the court is required to or may take judicial notice, the objection on that ground may be taken by a Demurrer to the pleading.
      (b) When any ground for objection to a Complaint or cross-Complaint does not appear on the face of the pleading, the objection may be taken by answer.
      (c) A party objecting to a Complaint or cross-Complaint may demur and answer at the same time.

   **§430**.**50**. (a) A Demurrer to a Complaint or cross-Complaint may be taken to the whole Complaint or cross-Complaint or to any of the causes of action stated therein.(b) A demurrer to an answer may be taken to the whole answer or to any one or more of the several defenses set up in the answer.

411When any ground for objection to a Complaint appears on the face thereof, the objection on that ground may be taken by a demurrer to the pleading. *See* Code Civ. Proc. §430.30(a).

412 The party against whom a Complaint has been filed may object, by Demurrer to the

pleading, on the ground that the pleading does not state facts sufficient to constitute a cause of action. *See* Code Civ. Proc. §430.10(e).

413  In order to be a sufficient verified Complaint, it must contain a statement of facts by a Real Party In Interest with firsthand personal knowledge, without the aid of other conjectured facts not stated, shows a complete cause of action. *See **Going v. Dinwiddie*** (1890) 86 Cal. 633, 637; *See **Garcia v. Superior Court*** (1990) 50 Cal. 3d 728, 737.

## ESSENTIAL FACTS HAVE NOT BEEN ALLEGED

414 The Complaint "provides no evidence to support its "preliminary facts." In ruling on a Demurrer: The Court does not, assume the truth of contentions, deductions, or conclusions of fact or law set out in any complaint (***Daar v. Yellow Cab Co.,*** (1967) 67 Cal.2d 695, 713, 63 Cal. Rptr. 724, 433 P.2d 732.) (Emphasis added.)

415 The recitals in the Complaint are purely speculated hearsay and objected to.

The Complaint and all documents filed with it are not self authenticating and are objected to under California Evidence Code 1401(a)(b).

416  First, the complaint is reviewed de novo to determine whether it contains sufficient facts to state a cause of action.  A ruling "of the court is to be based upon facts which may be presented to it, and not upon the belief of the affiant." (*Pelegrinelli v. McCloud River etc. Co.,* 1 Cal. App. 593, 597 [82 P. 695].) Such allegations on "information and belief" furnish " 'no proof of the facts stated . ...'" (*Franklin v. Nat C. Goldstone Agency,* supra, 33 Cal. 2d 628, 631 Cal. 2d 628, 631; Kellett v. Kellett, 2 Cal. 2d 45, 48 [39 P.2d 203].)

417 Accordingly, "[contentions, deductions or conclusions of fact or law alleged in the complaint are not considered in judging its sufficiency" against a demurrer, *C&H Foods Co. v. Hartford,* 163 Cal. App. 3d 1055, 1062 (1984), and must be disregarded. See *Cantu v. Resolution Trust Corp.* 4 Cal App. 19th 857, 881 (1992). Moreover, general pleadings are controlled by specific allegations. See e.g. *Iverson Yoakum, Papiano & Hatch v. Berwald,* 76 Cal. App. 19th 990, 995 (1999) (denying motion for reconsideration on demurrer) Defendant Complaint fails to plead any specific facts against . Plaintiff

418 Here Defendant  improper verified complaint has failed to provide any facts or evidence to state a cause of action.

419  The Complaint is boiler plate assumptions and conclusions with no facts to support their allegation.

420  Defendant claims should be dismissed when it clearly appears that no set of facts that can be proved which will entitle them to recover. (*Quake Construction Inc. v. American Airlines, Inc.*, 152 Ill. Dec. 308, 31-2 (Ill. S. Ct. 1990).

**404    NOTICE OF DEFAULT IS VOID FOR FAILURE TO COMPLY WITH CIVIL CODE §2923.5.**

421  The State Supreme Court in *Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 606, fn. 2, held that:

> "Section 2015.5 states: "Whenever, under any law of this state or under any rule, regulation, order or requirement made pursuant to the law of this state, any matter is required or permitted to be supported, evidenced, established, or proved by the **sworn statement**, **declaration**,**verification**, **certificate**, **oath**, **or affidavit**, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may with like force and effect be supported, evidenced, established or proved by the unsworn statement, declaration, verification, or certificate, in writing of such person *which recites that it is certified or declared by him or her to be true under penalty of perjury, is subscribed by him or her, and (1), if executed within this state, states the date and place of execution, or (2), if executed at any place, within or without this state, states the date of execution and that it is so certified or declared under the laws of the State of California...*"

The case of *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) www.courts.ca.gov/opinions/archive/S233526.PDF, at pp. 7-8, provides:

> "Although not mentioned in the SLAPP Act, the Code of Civil Procedure also allows a court to consider, in lieu of an affidavit, certain written declarations. To qualify as an alternative to an affidavit, a declaration must be signed and recite that the person making it certifies it to be true under penalty of perjury. The document must reflect the date and place of execution, if signed in California, or recite that it is executed 'under the laws of the State of California.' (§ 2015.5; see *Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 610 (*Kulshrestha*).)

> "The purpose of the statutory references to affidavits and declarations is to enhance reliability. 'As with live testimony, the oath-taking procedures for affidavits help prevent perjury. [Citation.] [¶] In 1957, the Legislature enacted section 2015.5, authorizing declarations under penalty of perjury. [Citation.] Lawmakers expressed concern that the oath-and-affidavit procedure was both cumbersome and widely ignored. [Citation.] Declarations serve as a more

-101-

streamlined means of ensuring that the witness understands "the grave responsibility he has assumed with respect to the truth[]."' (*Kulshrestha, supra,* 33 Cal.4th at p. 609.) *Kulshrestha* concluded that the out-of-state declaration at issue there failed to comply with section 2015.5 because it did not reflect it was made under penalty of California's perjury laws. (*Kulshrestha,* at pp. 610-618.)"

Civil Code §2923.5(b) also states that:

"(b) A notice of default recorded pursuant to Section 2924 shall include a ***declaration*** that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of 'borrower' pursuant to subdivision (c) of Section 2920.5."

The case of *Vong v. Bank of America, N. A.,* 2013 WL 2254243, at p. 7 (E. D. Cal. 2013), explains that:

"Defendant's attack on the first element fails because plaintiff adequately alleges that defendant lacks the authority to foreclose, and that foreclosure at this point would be illegal for failure to comply with a statutory condition precedent, namely Cal. Civ. Code § 2923.5. Hidden away in his Third Cause of Action (and completely missing from the 'wrongful foreclosure' allegations), is plaintiff's allegation that defendant 'violated California Civil Code Section 2923.5 by failing to contact Plaintiff, in person or by telephone, at least thirty (30) days prior to causing ReconTrust to record the Notice of Default.' Complaint at 12 ¶ 14. 17 This allegation is plainly sufficient to state 'a cause of action for wrongful foreclosure based on the purported failure to comply with Civil Code section 2923.5 before recordation of the notice of default.' *Intengan v. BAC Home Loans Servicing LP,* 214 Cal. App. 4th 1047, 1058, 154 Cal. Rptr. 3d 727 (1st Dist. 2013).

"Under California law, the trustee may not exercise its power of sale until it has first filed a notice of default in the county recorder's office. Cal. Civ. Code § 2924(a) (1). However, the trustee 'may not record a notice of default' until it has first contacted the borrower 'in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.' Cal. Civ. Code § 2923.5(a) (1) (A), (a) (2)."

Here, the "Declaration" of the servicer did not meet the requirements of a Declaration under Code of Civil Procedure §2015.5. Lack of the Declaration makes the Notice of Default void, and all other acts done to the conclusion of the Trustee's Dee Upon Sale. Any other reasons would put foreclosures in an arbitrary dream world.

**421    HOMEOWNER BILL OF RIGHTS PROHIBITS ANY ENTITY FROM FORECLOSING UNLESS IT IS THE BENEFICIARY UNDER THE NOTE AND DEED OF TRUST.**

California Civil Code 2924 (a)(6) states that:

> "An entity shall not record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. An agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust shall not record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest."

Here, the "Declaration" of the servicer did not meet the requirements of a Declaration under Code of Civil Procedure §2015.5. Lack of the Declaration makes the Notice of Default void, and all other acts done to the conclusion of the Trustee's Dee Upon Sale. Any other reasons would put foreclosures in an arbitrary dream world.

422    Plaintiff challenges and disputes the truthfulness of the first Assignment that allegedly transferred by   YI MING LLC, A DIVISION OF FLAGSTAR BANK."

423   The Second Assignment is requested by YI MING LLC and made from YI MING LLC. To MERS.

424 The first ADOT by  YI MING LLC. A DIVISION OF FLAGSTAR BANK is made to the FLAGSTAR BANK..

425 The second ADOT by FLAGSTAR BANK  . Is made to MERS. The third assignment, a Corporate Assignment of Deed of Trust hereinafter "CADOT" is in violation of CCP 2015.5.

426  The Supreme Court of California Kulshrestha v. First Union  Commercial Corp. (2004) 33 Cal.4th 601, 616 [15 Cal.Rptr.3d 793, 93 P.3d 386]; A declaration is defective under governing statute absent an express facial link to California or its perjury laws. West's Ann. Cal. C.C.P. §2015.5.

427 Defendant challenges and disputes the Truthfulness of all three Assignments.

**428 NOTICE OF DEFAULT**: The NOD is defective and void on its face as it was issued without authority and prematurely in violation of California Civil Code 2923.5 "Due Diligence Clause".

429    The declaration attached to the NOD is in violation of CCP 2015.5. See in re: Kulshrestha v. First Union Commercial Corp. (2004) 33 Cal.4th 601, 616 [15 Cal.Rptr.3d 793, 93 P.3d 386]; A declaration is defective under governing statute absent an express facial link to California or its perjury laws. West's Ann. Cal. C.C.P. § 2015.5.

430 Plaintiff  declares that at no time did the Lender, Beneficiary, Mortgage Servicer, Trustee or Agent whomever they maybe, never contacted the Plaintiff to workout foreclosure avoidance pursuant to the "DUE DILIGENCE CLAUSE" pursuant to Cal. Civ. Code 2923.5 et.al. Because there was no default as defendant was not in default, quite the opposite. Plaintiff's property was all but paid in full.

431The Substitution of Trustee ("SOT" is defective and void on its face and not in compliance with CCP 2015.5.

432 The Trustee's Deed Upon Sale is defective and void on its face due to the void title transfer irregularities referenced above.

433 National Default Servicing Corporation was never granted the power of sale clause in the DOT and was acting as an illegal trustee.

434 Plaintiff  has every due process right to challenge, dispute the truthfulness of the DOT, Assignments of Deed of Trust, the Substitution of Trustee, NOD, NTS and the TDUS.

435 Plaintiff  was denied he due process right to defendant he  property rights. See in Titmas v. Superior Court (2001) 87 Cal.App. 738, 742.

**436  Plaintiff  MAY CHALLENGE THE COMPLAINT BY CHALLENGING THE TITLE OF THE PROPERTY AFTER SALE, WHICH THE TITLE IS VOID BECAUSE OF FORGED DOCUMENTS.**

PLAINTIFF'S VERIFIED COMPLAINT

437 Plaintiff is claiming that documents, as alleged above. are void due to the fact that the documents are robo-signed and forgeries.

Commercial Code §3308(a) states that:

"(a) In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature. If an action to enforce the instrument is brought against a person as the undisclosed principal of a person who signed the instrument as a party to the instrument, the plaintiff has the burden of establishing that the defendant is liable on the instrument as a represented person under subdivision (a) of Section 340."

///

438 Defendant has sufficiently rebutted the presumption as to the validity to the signatures and notary signatures and their authenticity. See in re: *Bonzer v. City of Huntington Park*, 20 Cal. App. 4th 1474, 1481 (1993) and *Rancho Santa Fe Pharmacy, Inc. v. Syfert* (1990) 219 Cal. App. 3d 875, 882 (Ct. App. 1990)

The case of *Wutzke v. Bill Reid Painting Service, Inc,* (1984) 151 Cal.App.3d 36, 42-43, also explains that:

"In *Firato,* the court held that Civil Code section 2243 protected innocent purchasers for value who take without notice as against the original grantor. (See also *Huckell v. Matranga* (1979) 99 Cal.App.3d 471, 478 [160 Cal. Rptr. 177].) As Reid correctly notes, an innocent encumbrancer is entitled to the same protection under section 2243 as an innocent purchaser (*Schut v. Doyle* (1959) 168 Cal.App.2d 698, 701 [336 P.2d 567]; *Ruth v. Lytton Sav. & Loan Assn.* (1968) 266 Cal. App. 2d 831, 836 [72 Cal. Rptr. 521], mod. at 272 Cal.App.2d 24 [76 Cal. Rptr. 926].) The protection provided by Civil Code section 2243 is based on the equitable principle that innocent encumbrancers and purchasers have a right to rely on the record title of the grantor (*Firato v. Tuttle, supra,* 48 Cal.2d at p. 140); however, that protection extends only to those who obtained good legal title. (*Id.,* at p. 139; *Trout v. Taylor* (1934) 220 Cal. 652, 656 [32 P.2d 968].) It has been uniformly established that a forged document is void ab initio and constitutes a nullity; as such it cannot provide the basis for a superior title as against the original grantor. (*Firato v. Tuttle, supra,* 48 Cal.2d at p. 139; *Trout v. Taylor, supra,* 220 Cal. at p. 656; *Burns v. Ross* (1923) 190 Cal. 269, 275 [212 P. 17]; *Cutler v. Fitzgibbons* (1906) 148 Cal. 562, 563-564 [83 P. 1075]; *Blaisdell v. Leach* (1894) 101 Cal. 405, 409 [35 P. 1019]; *Forte v. Nolfi* (1972) 25 Cal.App.3d 656, 674 [102 Cal. Rptr. 455];

-105-

*Kessler v. Bridge* (1958) 161 Cal. App. 2d Supp. 837, 841 [327 P.2d 241]; *Shurger v. Demmel* (1957) 148 Cal. App. 2d 307, 309 [306 P.2d 497]; *Crittenden v. McCloud* (1951) 106 Cal. App. 2d 42, 50 [234 P.2d 642]; *Montgomery v. Bank of America* (1948) 85 Cal. App. 2d 559, 564 [193 P.2d 475]; *Gioscio v. Lautenschlager* (1937) 23 Cal. App. 2d 616, 619-620 [73 P.2d 1230]; 1 Miller & Starr, Current Law of Cal. Real Estate (rev. 1975) § 3:76, p. 465; see also 23 Am.Jur.2d (1965) Deeds, § 139, p. 169; Annot. (1954) 35 A.L.R.2d 944-959, and Later Case Service, and the out-of-state cases cited within.)"

439 Since a trust deed obtained by means of forgery is void, it follows that any claim of title flowing from such a deed is void. This elementary legal principle makes clear the validity of the title of a subsequent purchaser or encumbrancer depends upon the validity of his grantor's title."

440  Thus a void deed due to forgeries passes no title. *Wutzke* was no less a victim in that case than the BFP, as neither had caused the loss. But the BFP lost to *Wutzke* as fraud does not pass title.

441 Here the alleged Trustee Sale was fraudulent, based on fraud, and thus it extinguished the Trustee's Deed. However the other documents transferring rights and making trustees are forged, and were used to sell the property.

In *La Jolla Group II v. Bruce* (2012) 211 Cal.App.4th 46 held:

"Although the law protects innocent purchasers and encumbrancers, that protection extends only to those who obtained good {Page 211 Cal.App.4th 478] legal title. [Citations.] ... [A] forged document is void ab initio and constitutes a nullity; as such it cannot provide the basis for a superior title as against the original grantor.' [Citations.]" (Id. at pp. 379-380.) A forgery includes "a false making of a writing" that" falsely purports to be the writing of another. (*Wutzke v. Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36, 41-42, italics omitted.)

442 *Erickson v. Bohne* (1955) 130 Cal.App.2d 553 [279 P.2d 619] And as stated in 26 Corpus Juris Secundum, supra, "A void deed passes no title and cannot be made the foundation of a good title even under the equitable doctrine of bona fide purchase."

443 Here the proof at Trial will show the other documents consist of false, forge and fraudulent documents with different persons signing the notary's name so the property can be fraudulently sold.

445 On March 19, 2014 our Supreme Court Ordered the Appellate Case of *The Bank of New York Mellon v Preciado* [which was combined with the case of the *Bank of New York Mellon v Lucas*], and citing *Kessler v Bridge,* that the Plaintiff has the duly to prove that it had the right to foreclose, or it predecessor had the right to foreclose beyond all reasonable doubt. That meant proving the "chain of title" had to be shown, or the title could to be perfected. This is the same in this case.

*Kessler v. Bridge* (1958) 161 Cal.App.2d Supp. 837, 841, states that:

///

> "Title is duly perfected when all steps have been taken to make it perfect, i.e., to convey to the purchaser that which he has purchased, valid and good beyond all reasonable doubt.(*Hocking v. Title Ins. & Trust Co.* (1951), 37 Cal. 2d 644, 649 [234 P.2d 625, 40 A.L.R.2d 1238]), which includes good record title (*Gwin v. Calegaris* (1903), 139 Cal. 384 [73 P. 851]), but is not limited to good record title, as between the parties to the transaction. The term 'duly' implies that all of those elements necessary to a valid sale exist, else there would not be a sale at all. If there is want of performance or want of true consent the title cannot be said to be perfected. (Civ. Code, §§ 1567-1589.) The court in an unlawful detainer under Code of Civil Procedure, section 1161a, subdivision (4), has jurisdiction to determine the validity of such defenses."

To duly perfect title you must first duly perfect the sale. See in *U.S. Financial, L.P. v. McLitus,* 6 Cal. App. 5th Supp. 1;

> "Code of Civil Procedure section 1161a requires a plaintiff to have both perfected the sale and the title in order to bring a summary unlawful detainer action for possession. (Code Civ. Proc.. § 1161a. subd. (b)(3) ["Where the property has been sold in accordance with Section 2924 of the Civil Code, under a power of sale contained in a deed of trust executed by such person, or a person under whom such person claims, and the title under the sale has been duly perfected. Absent a sale in accordance with Section 2924 of the Civil Code and a duly perfected title prior to the issuance of the notice, a post-foreclosure purchaser cannot avail itself of a summary unlawful detainer eviction proceeding."

Therefore, it is necessary that the Defendant  prove each of the statutory procedures has been complied with as a condition for seeking possession of the property.

447 Here, the documents as described above are void *ab initio*. Those documents and the sale that followed cannot be necessitated like a stiff, deceased body. Because the sale is void, Defendant's .

## 448. PLAINTIFF'S CLAIM OF BONA FIDE PURCHASE IS AN INTENTIONAL MISREPRESENTATION OF MATERIAL FACTS AND FRAUD UPON THE COURT

449 *Defendant claims to be a Bona Fide Purchaser for Value without Notice of any Defects in Title. However, Defendant was put on actual notice of title defects on June 14, 2021 (date of alleged Trustee Sale) by Plaintiff representative at the Trustee Sale. Defendant was given a copy of the lawsuit, lis pendens and a cease-and-desist letter at the alleged sale.

///

450 In addition, Plaintiff also had previously filed a lis pendens on his property putting the "World on Notice" of pending litigation. Defendant had plenty of Notice of the title defects and yet still moved forward and purchased a void lien and not the property itself, as stated in the Notice of Trustee Sale. There were four other people at the Trustee Sale to bid on foreclosures but none of them wanted anything to do with Plaintiff property because they were all put on actual notice of the title defects and wanted nothing to do with Plaintiff property and the legal mess it created based on forged documents.

451 A BFP, is charged with public notice in the recording statutes. See Gates Rubber Co. v. Ulman, (1989) 214 Cal. App. 3d 356, 364 where the court held that "the elements of bona fide purchase are payment of value, in good faith, and without actual or constructive notice of another's rights." "The act of recording creates a conclusive presumption that a subsequent purchaser has constructive notice of the contents of the previously recorded document." See Melendrez v. D & Investment, Inc., (2005) 127 Cal.1711 App. 4th 1238.

452 Defendant has made misrepresentation of material facts concerning their participation in this matter. Defendant is trying to side step the laws and statutory requirements governing non-judicial foreclosures. In addition to its alleged Bonafide Purchaser status, Plaintiff is using this untrue fact to its benefit and not disclosing that they were put on actual and constructive notice making them a non BFP. Plaintiff is a 20 plus year veteran of purchasing auction properties and

-108-

is not naïve to fatal title defects. At the Auction on June 14th, 2021 Plaintiff stated he didn't care about litigation or being sued for his part in conspiring to steal Plaintiff real estate after multiple warnings.

**453.  Plaintiff s PAID HIS TAXES, AND LIES MADE BY FLAGSTAR'S AND Defendant ATTORNEYS SHOULD BE DISCREDITED.**

454 From April 3, 2008, to August 2010, Plaintiff paid his property taxes contrary to the lies of Flagstar Bank (Exhibit "___"). Plaintiff also pursued an appeal with the County Tax Collector to prove that he have paid his taxes in respect to his property (Exhibit "___"). On September 10, 2010, Plaintiff did win this Appeal (Exhibit "___").

455 On September 24, 2010, attorneys for Flagstar lied about alleged non-payment of property taxes (Exhibit "___"). On July 20, 2023, the County Tax Assessor ruled in favor of Plaintiff stating that all the taxes were paid, and that Flagstar knew about this (Exhibit "___").

556 Flagstar Bank had the fiduciary responsibility and duty to examine and check to see if all the taxes were paid. Instead, they lied and committed fraud on the Court by lying about Plaintiff taxes were not paid when Plaintiff Exhibits show that they were.

457 The Court should take Judicial Notice of County records that ***TAXES WERE PAID BY THE PLAINTIFF.*** Judgment should not be entered and perpetuated on the lies of lying lawyers.

458 . **THE COURT SHOULD ALSO TAKE JUDICIAL NOTICE OF DEFENDANT'S ESCROW OFFICER, RITA ELLISON, WHO SABOTAGED DEFENDANT'S PROPERTY RIGHTS BEFORE THE FORECLOSURE AND EVICTION.**

459 On August 12, 2008, Plaintiff paid Rita Ellison, his escrow officer, $20,000 for the purposes of paying his property taxes (Exhibit "___"). However, instead of paying the taxes, Ellison had to be sued by Defendant for converting those funds for her own use. Plaintiff had to obtain an Order to Show Case on June 17, 2011 (Exhibit "___"). On December 30, 3013, Plaintiff obtained an Order stating that Rita Ellison owes Plaintiff $100,000,00, plus costs (Exhibit "___").On September 14, 2015, and December 18, 2018, Plaintiff obtained favorable Orders against Ellison in the Bankruptcy Court (Exhibits. "___" and "___"). On September 22, 2022,

the Bankruptcy Court gave a Judgment in favor of Plaintiff and against Ellison on the Adversary Proceeding (Exhibit "____"). On February 16, 2023, Plaintiff obtained over $180,000 Judgment against Ellison (Exhibit "____").

460 On October 21, 2008, escrow closed on Plaintiff property. (Exhibit "____").

The Court should also take Judicial Notice of the Bankruptcy's Court's Orders disallowing this Court's Judgment against Ellison and that her Breach of Fiduciary Duty helped cause Plaintiff to be in foreclosure. Flagstar and Defendant s should ***NEVER*** be allowed to take advantage of other's wrongful acts.

461 The Court should also take Judicial Notice of the Bankruptcy's Court's Orders disallowing this Court's Judgment against Ellison and that her Breach of Fiduciary Duty helped cause Plaintiff to be in foreclosure. Flagstar and Defendant should ***NEVER*** be allowed to take advantage of the other's wrongful acts.

462 Plaintiff filed his Adversary Proceeding against Ellison for Breach of Duty, Malice, and Fraud. Judge Quan of the Bankruptcy Court made his rulings as follows:

For Breach of Duty:

463 "Alternatively, Farris-Ellison's debt to Clark is nondischargeable as a defalcation in a fiduciary capacity. 'Defalcation' is generally defined as the misappropriation of trust funds or money held in any fiduciary capacity. March, Ahart and Shapiro, Rutter Group California Practice Guide: Bankruptcy, ¶ 26:632 (online edition, December 2021 update), citing, In re Lewis, 97 F.3d 1182, 1186-1187 (9th Cir. 1996). The Ninth Circuit Bankruptcy Appellate Panel has stated that there are three bases for determining that a fiduciary's defalcation supports an exception to discharge: (1) acts of bad faith, moral turpitude or other immoral conduct; (2) intentional improper conduct and criminally reckless conduct; and (3) conscious disregard of—or willful blindness to—a substantial and unjustifiable risk (a heightened 'recklessness' standard). Id., ¶632.1, citing, In re Heers, 529 B.R. 734, 742-743 (9th Cir. BAP 2015). Here, Farris-Ellison's misappropriation of Clark's funds that he gave her to be deposited into the escrow for his refinancing loan transaction were to be held in a separate trust account as required by California law, and are thus considered trust funds, and she spent these funds for her personal purposes or other purposes not authorized by Clark, knowing that she was having financial difficulties and without the ability to repay Clark the funds she spent. This misconduct amounts to defalcation for purposes of 11 U.S.C. § 523(a)(4). Accordingly, the court finds that Clark has established his claim against Farris-Ellison under 11 U.S.C. § 523(a)(4) by a preponderance of the evidence. As indicated above, the debt owed by Farris-Ellison to Clark which is

nondischargeable is $89,213.07, plus statutory interest from the date of entry of judgment by the state court." (Pages 54-55 of Exhibit "____".)
For Malice:

464"The willful injury requirement of 11 U.S.C. § 523(a)(6) is met here because the circumstances indicate that Farris-Ellison had a subjective motive to inflict injury or when she believed that injury is substantially certain to result from her own conduct. The evidence shows this in that Farris-Ellison knew that she was using Clark's funds for her personal purposes or other purposes not authorized by him rather than for the purposes that he entrusted her with the funds and that she was having financial difficulties indicating that she lacked ability to repay Clark the funds she used.

465 "The malicious injury requirement of 11 U.S.C. § 523(a)(6) is met here because Farris-Ellison's conversion of Clark's funds was a wrongful act, which she did intentionally as she knew she was dissipating his funds without his knowledge or consent, which necessarily caused Clark injury as she was having financial difficulties and did not have the ability to repay Clark and she converted Clark's funds without just cause or excuse because Clark did not lend her the funds or otherwise authorize her to use his funds in a way other than he instructed her, that is, to facilitate his refinancing loan transaction." (Pages 57-58 of Exhibit "____".)

For Fraud:

466 "Clark's fraud allegations against Farris-Ellison appear to fall under the category of promissory fraud, which is a recognized tort under California law." Engalla v. Permanente Medical Group, 15 Cal.4th 951, 973-974 (1997). The California Supreme Court has stated:

467 ""Promissory fraud" is a subspecies of fraud and deceit. A promise to do something implies the intention to perform; hence, where a promise implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud. An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract. "(Lazar v. Superior Court (1996) 12 Cal.4th 631, 638 [49 Cal.Rptr.2d 377, 909 P.2d 981].). The elements of fraud that will give rise to a tort action for deceit are: "'(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'"

468 "Engalla v. Permanente Medical Group, 15 Cal.4th at 973-974. This definition fits the evidence in this case as Clark gave his money in the two $20,000 checks to FarrisEllison for the specific purpose of addressing his property tax issues related to the refinancing transaction that she was assisting him on as mortgage

-111-

broker and escrow agent, and as escrow agent, she was holding the surplus refinancing loan proceeds of $49,213.07 due him as borrower. The evidence does not support Farris-Ellison's defense that Clark was lending her these funds; rather, Clark instructed her to use the two $20,000 checks to address his property tax problem, and Clark in taking out the refinancing loan with her assistance as broker and escrow was expected to receive the surplus refinancing loan proceeds. The evidence indicates that Clark discussed with Farris-Ellison what he wanted to give her the money for and that she took his funds for herself, never disclosing that she was not going to use them for the purposes, which indicates an implied misrepresentation of fact in her failure to disclose her actual intent to use his funds for her purposes because she was in financial difficulty and needed money to pay her bills. Clark justifiably relied on Farris-Ellison's implied misrepresentations of fact as she was given or holding onto his money as a licensed mortgage broker and real estate agent to his detriment in her dissipating his funds totaling $89,213.07. Accordingly, the court determines that Clark is also entitled to relief on his claim under 11 U.S.C. § 523(a)(2)(A) because Farris-Ellison obtained money from Clark by false misrepresentation." (Pages 58-60 of Exhibit "____".)

**469** . **THE MOTION TO VACATE JUDGMENT SHOULD BE GRANTED BECAUSE THE Plsintiff HAS BEEN PREVENTED FROM HAVING A FAIR TRIAL AND HIS SUBSTANTIAL RIGHTS HAVE BEEN MATERIALLY AFFECTED BY EACH OF THE FOLLOWING UNDISPUTABLE FACTS:**

A.    Plaintiff could not attend the trial on Day because of a medical emergency.

B.    Plaintiff notified opposing party and the Court that she had a medical emergency the day before the trial and asked for a continuance.

C.    Defects in Plaintiff Chain of Title...ie DOT, Assignments, Notice of Default, Notice of Trustee's Sale, Substitution of Trustee and the Trustee's Deed Upon Sale.

D.    Material Fact Documentation Examiner(s)/witness who were and are willing to Testify.

E.    Lack of evidence that Defendant and Defendant attorney is not part of a large organized  crime syndicate using false and forged documents to steal real estate in California, using the summary nature of non-judicial Unlawful detainer courts as their blanket to cover up their crime of grand theft.

F.    COVID-19

G.    County of Los Angeles Office Assessor South District  Tax assessor did not make their decision till July 20 2023 original issued 12/21 2022 Daniel Hannah

Supervising Appraiser South District Region 14 DHannah@assessor. Lacounty.gov

G.    Defendant has brought fraud on the court and has continued to move forward knowingly

using known fabricated and forged documents after continuous notice by Plaintiff , which is a form of Aggravated Identity Theft.

H.   Evidence of Warning "NOTICE TO POTENTIAL BIDDERS", used on the Notice of Trustee Sale, stating "bidders are bidding on a LIEN and NOT THE PROPERTY ITSELF".

///

500    THE TRUSTEES DEED UPON SALE, is Stamped "Accommodation Only. This instrument filed for record by Corinthian Title Company AS AN ACCOMMODATION ONLY. IT HAS NOT YET BEEN EXAMINED AS TO ITS EXECUTION, OR AS TO ITS EFFECTS UPON TITLE.

501 The action was tried as a landlord/tenant issue pursuant to CCP 1161 and not CCP 1161a(b)(3) Homeowner/Purchaser.

502 Defendant's Unlawful Detainer complaint filed with this court alleges that Plaintiff is to the previous owner of the Premises and Plaintiff's interest in the Premises is as Owner.

503 There is no landlord/Tenant relationship and no contract for rent payments.

504 The court errored in trial when it granted rents and damages and as to who has a right to possession when the real issue was about title. Kessler v. Bridge (1958) 161 Cal App 2d Supp 837, 838; Where the landlord-tenant relationship is shown to exist, title is not litigated; but if it is shown that the real issue is not possession, but title, "THEN UNLAWFUL DETAINER IS HELD NOT TO LIE". **It is erroneous to say that title is never in issue, for it is permissible to litigate it in connection with the existence of the landlord-tenant relationship** (Steinback v. Krone (1868), 36 Cal. 303; Reay v. Cotter, supra, 29 Cal. 168, 171). If the circumstances involve such fraud as the tenant could assert against the lease itself to invalidate it, this may be urged in an u+nlawful detainer proceeding (Johnson v. Chely, supra, 43 Cal. 299, 305.)

505 The court errored when it moved forward with trial knowing that Plaintiffs was experiencing a medical emergency and asked for a continuance of the trial. In addition, Plaintiff's

counsel, HG Long  was given notice of Plaintiff emergency and request for a continuance of trial

and yet did not inform the court that she was notified by Defendant via his  ADA advocate.

### 506 . **Defendant  EVIDENCE IS INSUFFICIENT TO JUSTIFY THE DECISION.**

A.     Vacating Judgment on Ground of Insufficiency of Evidence. On application of the party aggrieved, the verdict or decision may be vacated, in whole or in part, and a new trial may be granted, on all or some of the issues, on the ground of insufficiency of the evidence to justify the verdict or decision if substantial rights of the aggrieved party are materially affected thereby (Code Civ. Proc. § 657(6) [Deering's]).

B.     Judge or Jury Clearly Should Have Reached Different Decision or Verdict. A motion for new trial on the ground of insufficiency of the evidence is properly granted if, after weighing the evidence and reasonable conferences, the court is convinced that it or the jury clearly should have reached a different verdict or decision (Code Civ. Proc. § 657[Deering's]; Russell v. Nelson (1969) 1 Cal. App. 3d 919, 922, 82 Cal. Rptr. 221). Based on newly found evidence that was just discovered and or not presented by Defendant's attorney, a different verdict is likely.

C.     Judge is Required to Weigh Evidence. In passing on a motion to vacate judgment, on the ground of insufficiency of the evidence, the trial judge is required to weigh the evidence and in so doing he or she may disbelieve witnesses and draw inferences contrary to those supporting the verdict (see Mercer v. Perez (1968) 68 Cal. 2d 104, 112, 436 P.2d 315; Dietrich v. Litton Industries, Inc. (1970) 12 Cal. App. 3d 704, 707, 717, 90 Cal. Rptr. 856).

D.     Duty to Grant New Trial If Verdict or Decision Against Weight of Evidence. On a motion for a new trial on the ground of insufficiency of the evidence, the judge must weigh and consider the evidence of both parties; if he or she is convinced that the verdict is clearly against the weight of the evidence, it is the judge's duty to grant a new trial even though there are conflicts in the evidence (Lucas v. Hesperia Golf & Country Club (1967) 255 Cal. App. 2d 241, 253, 63 Cal. Rptr. 189).

E.     Court Not Bound by Prior Rulings on Questions of Law or Prior View of Evidence. In granting a new trial on the ground of insufficiency of the evidence, the court is not bound by its prior rulings on questions of law or its prior view of the evidence (Yarrow v. State of California (1960) 53 Cal. 2d 427, 437, 2 Cal. Rptr. 137, 348 P.2d 687).

F.     Judge Not Bound by Conflicts in Evidence. A judge is not bound by a conflict in the evidence when ruling on a motion for a new trial; rather, he or she must reweigh the evidence, the inferences therefrom, and the credibility of witnesses in determining whether the jury clearly should have reached a different verdict (Lippold v. Hart (1969) 274 Cal. App. 2d 24, 25, 78 Cal. Rptr. 833).

G.     Unreliable but Substantial Evidence Supports Verdict. If, in the opinion of the court, the evidence is unreliable, it is the court's duty to grant a new trial and it

may grant a new trial even when there is substantial evidence to sustain the verdict if it believes that the evidence preponderates against the verdict (see Moore v. City & County of San Francisco (1970) 5 Cal. App. 3d 728, 738, 85 Cal. Rptr. 281).

## XIX. **THE DECISION IS AGAINST LAW**

507    On application of the party aggrieved, the verdict or decision may be vacated, in whole or in part, and a new trial may be granted, on all or some of the issues, on the ground that the
verdict or other decision is against law, if substantial rights of the aggrieved party are materially affected thereby (Code Civ. Proc. § 657(6) [Deering's]).

508 **. DECISION IS AGAINST LAW IN THAT NEWLY DISCOVERED EVIDENCE IS BEFORE THE COURT ON A MATERIAL ISSUE AND/OR THE DECISION IS IRRECONCILABLE**

A.    Decision Against Law Based on Newly discovered evidence that was not known in March 2022. A decision is against law only (1) when there is a failure to find on a material issue; (2) when the findings are irreconcilable; or (3) when the evidence is insufficient in law and without conflict on any material point (see Kralyevich v. Magrini (1959) 172 Cal. App. 2d 784, 789, 342 P.2d 903; see also Renfer v. Skaggs (1950) 96 Cal. App. 2d 380, 383, 215 P.2d 487).

B. Moving Party May Raise New Legal Theory. Section 657(6)[Deering's] of the Code of Civil Procedure empowers a trial court to consider new legal challenges not previously raised before the verdict or judgment when the court is ruling on a motion for new trial (Hoffman-Haag v. Transamerica Ins. Co. (1991) 1 Cal. App. 4th 10, 15-16, 1 Cal. Rptr. 2d 805).

**509THE TRIAL COURT HAD NO RIGHT TO EXCLUDE Plaintiff , BECAUSE OF HIS COVID VIRUS ON THE DAY OF TRIAL AND WAS REQUIRED TO CONTINUE THE TRIAL, NOT GIVE A JUDGMENT AGAINST HIM.**

510 A court has inherent power to grant a continuance. (Rules of Court, Rule 3.1332; See also, 7 Witkin, California Procedure (3rd ed.) Trial, § 7 at p. 28.) California Rules of Court, Rule 3.1332, subdivision (c) provides that "[a]lthough continuances of trials are disfavored, each request for a continuance must be considered on its own merits." The trial court may grant a continuance upon a showing of good cause.

511 Rule 3.1332, subdivision (d) further provides that "in ruling on a motion or application for continuance, the court *must consider all the facts and circumstances that are relevant to the determination."* (Emphasis added.) Other facts and circumstances may include the following:

"(1) the proximity of the trial date; (2) whether there was any previous continuance, extension of time, or delay of trial due to any party; (3) The length of the continuance requested; (4) The availability of alternative means to address the problem that gave rise to the motion or application for a continuance; (5) the prejudice the parties or witnesses will suffer as a result of the continuance; (7) the court's calendar and the impact of granting a continuance on another pending trial; (8) whether trial counsel is engaged in another trial; and (11) any other fact or circumstance relevant to the fair determination of the motion or application." (Cal. Rules of Court, Rule 3.1223(d)(l)-(l 1).)

The case of *Lerma v. County of Orange* (Cal. App. 4 Dist. 2004) 120 Cal.App.4th 709, 717-718, -- Cal.Rptr.3d --. explains that:

"The plaintiff filed a petition for a writ of mandate, which was granted. The appellate court held that the trial court had abused its discretion in failing to grant a longer continuance and to reopen discovery. (*Hernandez v. Superior Court, supra,* 115 Cal.App.4th at pp. 1245-1246.) As the court stated, '"While it is true that a trial judge must have control of the courtroom and its calendar and must have discretion to deny a request for a continuance when there is no good cause for granting one, it is equally true that, absent [a lack of diligence or other abusive] circumstances which are not present in this case, a request for a continuance supported by a showing of good cause usually ought to be granted.". [Citation.]' (*Hernandez v. Superior Court, supra,* 115 Cal.App.4th at pp. 1246-1247.) The court also stated, 'If plaintiff's counsel's serious physical illness and its debilitating effects culminating in death during the final stages of litigation are not good cause for continuing a trial and reopening of discovery, there is no such thing as good cause. A plaintiff in a personal injury action is not chargeable with the continued good health of his or her attorney. Forcing such a plaintiff to trial without counsel or adequately prepared counsel is not likely to ensure fairness, the overall policy of the law. [Citation.]' (*Id.* at p. 1244.)

"While in the case before us plaintiffs did not seek the continuance of a trial date, they did seek the continuance of the summary judgment motion. The reason for the continuance request was the same as in *Hernandez v. Superior Court, supra,* 115 Cal.App.4th 1242--to permit plaintiffs to be represented by physically able counsel. As stated in *Hernandez,* 'The death or serious illness of a trial attorney or a party "should, under normal circumstances, be considered good cause for granting the continuance of a trial date[.]" [Citation.]' (*Id.* at pp. 1247-1248 .) Likewise, it is good cause for granting the continuance of a summary judgment motion.

"As we emphasized in *Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 398-399 [107 Cal.Rptr.2d 270], 'Judges are faced with opposing responsibilities when continuances for the hearing of summary judgment motions are sought. On the one hand, they are mandated by the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.) to actively assume and maintain control over the pace of litigation. On the other hand, they must abide by the guiding principle of deciding cases on their merits rather than on procedural deficiencies. [Citation.] Such decisions must be made in an atmosphere of substantial justice. When the two

policies collide head-on, the strong public policy favoring disposition on the merits outweighs the competing policy favoring judicial efficiency. [Citation.]' This is not a case where a party has been dilatory in its efforts and the court needs to seize control of the situation and force the party to engage in diligent pursuit of litigation objectives. It is simply a case in which the frailties of mankind's physical housing created a brief interference with the efficient resolution of a motion."

512 The trial judge must necessarily exercise broad discretion in determining a motion for continuance. Such discretion must be exercised with due regard for all interests involved, and a refusal to grant a continuance which has the practical effect of denying the applicant a fair hearing has been held to be reversible error. *(Cohen v. Herbert (1960)* 186 Cal.App.2d 488.) Courts are liberal in granting continuances when the facts justify such action. *(Ross v. Thirwall* (1929) 101 Cal.App. 411.)

513 Here, Plaintiff was sick with COVID and could not attend Trial.

514 For the reasons set forth below, Plaintiff respectfully requests that the trial date should have been continued to allow this matter to be brought to trial in an orderly and efficient manner.

515 The Court also violated Plaintiff's substantive due process rights for failing to continue the Trial Date, since Plaintiff could not put on an adequate case in this action. The right to due process of law is embedded in the California and United States Constitutions, including the Fourteenth Amendment. The California State Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." (Cal. Const.) Similarly, the United States Constitution prohibits a state from "depriving] any person of life, liberty, or property, without due process of law." (U.S. Const. 14th Amend.) In California, due process requires that parties whose rights are affected by a governmental proceeding have a meaningful opportunity to be heard, and notice calculated to advise the parties of the proceeding to allow them the opportunity to present defenses. If any "significant property interest" is at stake, the safeguards afforded by due process are applicable.

516 In this case, the complexity of legal and factual issues. Plaintiff would not be able to adequately contest the issues raised by Defendant . Failure to continue the Trial and other dates would not only circumvent the procedural safeguards established by the statutory scheme, but 0olalso constitute a violation of both parties' substantive due process rights.

517 There are important factors at issue at the Trial, which seeks to deal with issues related to Defendant 's alleged acts and issues.

518 As the Court is aware, it caused prejudice to Plaintiff in the absence of the continuance being requested, otherwise, Plaintiff was placed in a very difficult predicament without counsel. Without this continuance, Plaintiff was denied the opportunity to place before the Court evidence of the issues related to this case. Plaintiff was not given the opportunity to present this Court with proper evidence in this case, and he suffered substantial hardship and irreparable injury and harm. **THE COURT SHOULD QUIET TITLE TO JAMES CLARK**.

**518.**    **Applicable Legal Principles**

Plaintiffs Second Cause of Action in the Complaint is for Quiet Title. (Code Civ. Proc., 760.010 et seq.) The purpose of a quiet title action is to resolve adverse claims to

---

8

It is unclear exactly why defendants Rita Gail Farris-Ellison, Just That EZ Financial, Lenders Escrow Inc, Flagstar Bank and Yi Ming LLC tried to "fix" the problem with the illegal transfer of 625 Laconia from Rita Gail Farris-Ellison, Just That EZ Financial, Lenders Escrow Inc, and Flagstar Bank to Yi Ming LLC Plaintiff seeks to void Grant Deed and Trustee's Deed upon Sale that transferred 625 Laconia to Yi Ming LLC and the Rescission of that Deed in order to ensure there is *clear title* to 625 Laconia Blvd Los Angeles California 90044.

(*Castro v. Barry* (1889) 79 Cal. 443.) A judgment quieting title in favor of the victim of fraud or constructive fraud is appropriate, especially when the fraud involves the breach of a fiduciary duty. (*Warren v. Merrill* (2006) 143 Cal.App.4th 96.) Where there is fraud by a fiduciary, a wide variety of equitable remedies are available. (*Id.* at pp. 112-114.)

**B.**    **Application of Facts to Legal Principles**

For all of the reasons stated in support of the argument to cancel Grant Deed #1 and # 2 and the "Rescission of Deed," plaintiff is entitled to a judgment that James Clark is the owner of 625 Laconia Blvd Los Angeles California 90044 and is entitled to possession of the property, and that defendants RITA GAIL FARRIS-ELLISON, LENDERS ESCROW, INC, JUST THAT EZ FINANCIAL, FLAGSTAR BANK, YI MING LLC, AND DOES 1 to 100, INCLUSIVE and All Persons Unknown have no interest in the property adverse to 625 Laconia. Likewise, plaintiff is entitled to a judgment prohibiting defendants from ever making any claim to the property.

(*Wolf v. Gall* (1916) 174 Cal. 140,145.)

519    Furthermore, in the opinion of plaintiff's title expert Mr. Tait based upon all of his work

in this matter, fee title to 625 Laconia is still currently vested in James Clark. (Tait Decl., Ex. 1 to Tait Decl.)

520 With regard to the Quiet Title cause of action, Code of Civil Procedure §764.010 provides that the court shall inquire into and determine plaintiffs title against the claims of all of the defendants. "The court shall not enter judgment by default, but shall in all cases require evidence of plaintiff's title and hear such evidence as may be offered respecting the claims of any of the defendants" except those admitted in the Complaint. One author has noted that the statute requires live testimony and complete authentication of the real property records establishing plaintiff's title. (Cal. Real Property Remedies and Damages (Cont. Ed. Bar 2d ed. 2002), § 7.50, p. 523.)

521`    As discussed in the Case Summary, the real property at issue is commonly referred to as 625 Laconia Blvd Los Angeles California 90044 The legal description is *"The land referred to in this description situated in the State of California, County of Los Angeles, City of Los Angeles, and is described as follows:*

*LOT 29, IN BLOCK 12 OF ATHENS, AS PER MAP RECORDED IN BOOK 8 PAGES 146 AND 147 OF MAPS, IN THE OFFICE OF THE RECORDER OF SAID COUNTY."*
(See Exhibit "A") In support of this Application, plaintiff James Clark has included a declaration and other real property issues, and Exhibits thereto establishing that James Clark has lawful title to 625 Laconia Blvd Los Angeles California 90044 The legal description is *"The land referred to in this description situated in the State of California, County of Los Angeles, City of Los Angeles, and is described as follows:*

PLAINTIFF'S VERIFIED COMPLAINT

*LOT 29, IN BLOCK 12 OF ATHENS, AS PER MAP RECORDED IN BOOK 8 PAGES 146 AND 147 OF MAPS, IN THE OFFICE OF THE RECORDER OF SAID COUNTY."* (See Exhibit "A").

522 With notice, Mr. Tait can also be present in Court to testify at the hearing on this Application

to the extent the Court deems live testimony from him to be necessary.

523 Plaintiff's Application is based on the following: (1) this Notice, the attached Case Summary, the declarations and Exhibits lodged concurrently herewith, the request for judicial notice, the proposed judgment, the application for attorney's fees, and the memorandum of costs all filed concurrently herewith; (2) any testimony to be presented at the hearing; and (3) all other pleadings, papers and records in the Court's file. **The Fiduciary Duty of Good Faith**

524.     A fiduciary duty exists between DELs and the Plaintiff James Clark FHA and HUD.

525.     The Plaintiff James Clark, FHA and HUD rely on the expertise and knowledge of DELs in endorsing loans for FHA insurance. The Plaintiff James Clark, FHA and HUD place confidence in the DELs' decisions, and trust that they will comply with all applicable HUD underwriting rules. The confidence that the Plaintiff James Clark, FHA and HUD place in DELs invests the DELs with a significant advantage in the parties' relationship.

526.     As a result of the fiduciary relationship between DELs and the Plaintiff James Clark  FHA and HUD; DELs have a duty to act with good faith, candor, honesty, integrity, fairness, undivided loyalty, and fidelity (collectively, the "duty to act with good faith") in their dealings with the Plaintiff James Clark, FHA and HUD.

527.     This duty to act with good faith also requires DELs to: (1) refrain from making misrepresentations to the FHA and HUD; (2) make full and fair disclosures to the Plaintiff James Clark, FHA and HUD of all material facts; and (3) use reasonable care to avoid misleading the Plaintiff James Clark, FHA and HUD in all circumstances.

528.     In addition, this duty to act with good faith requires DELs to exercise sound judgment, prudence and due diligence on behalf of the Plaintiff James Clark, FHA and HUD in endorsing loans for FHA insurance.

**D.     Direct Endorsement Lender and Underwriter Certifications**

529.     Each DEL must submit a certification to the Plaintiff James Clark, FHA and HUD for each loan that it approves for FHA insurance. These loan-level certifications are to be signed by one of the DEL's DE underwriters.

530.     The loan-level certifications are important as the Plaintiff James Clark, FHA and HUD will rely on them for purposes of endorsing mortgage loans for Plaintiff James Clark, FHA insurance, thereby eliminating the need for the Plaintiff James Clark, FHA or HUD to review the loans prior to endorsement. See 48 Fed. Reg. at 11932.

531.     A DE underwriter may underwrite an FHA loan one of two ways: (1) manually; or (2) by using an FHA-approved automated underwriting system. The language of the required loan-level certification differs depending on whether the loan is underwritten manually or using an FHA-approved AUS.

532.     If a DE underwriter uses an FHA-approved AUS, the DE underwriter must enter certain information regarding the loan into the AUS. The AUS will then process the information and rate the loan as either "accept"/"approve" or "refer"/"caution."

533.     If a DE underwriter uses an FHA-approved AUS and the AUS rates the loan as either "accept" or "approve," the DE underwriter must make the following certification, in sum and substance:

534 This mortgage was rated as an "accept" or "approve" by a FHA-approved automated underwriting system. As such, the undersigned representative of the mortgagee certifies to the integrity of the data supplied by the lender used to determine the quality of the loan, that Direct Endorsement Underwriter reviewed the appraisal (if applicable) and further certifies that this mortgage is eligible for HUD mortgage insurance under the Direct Endorsement program. I hereby make all certifications required by this mortgage as set forth in HUD Handbook 4000.4.

535.     The certifications set forth in HUD Handbook 4000.4 which are incorporated by reference in the above loan-level certification include the certification that "the mortgage complies with HUD underwriting requirements as contained in all outstanding HUD handbooks and Mortgagee Letters." The above loan-level certification, therefore, represents that the loan was underwritten with the level of due diligence required by all outstanding HUD Handbooks and Mortgagee Letters, and in accordance with the applicable HUD underwriting rules.

536.     If a DE underwriter uses an FHA-approved AUS and the AUS rates the loan as either "refer" or "caution," or if a DE underwriter does not use an FHA-approved AUS, the DE underwriter must manually underwrite the loan and make the following certification, in sum and substance:

537     This mortgage was rated as a "refer" or "caution" by a FHA-approved automated underwriting system, and/or was manually underwritten by a Direct Endorsement underwriter. As such, the undersigned Direct Endorsement Underwriter certifies that I have personally reviewed the appraisal report (if applicable), creditapplication, and all associated documents and have used due diligence inunderwriting this mortgage. I find that this mortgage is eligible for HUDmortgage insurance under the Direct Endorsement program and I hereby make all certifications required for this mortgage as set forth in HUD Handbook 4000.4.

538.     In addition to representing that the loan was underwritten with the requisite due diligence and that the DE underwriter reviewed the property appraisal (if one was required), this loan-level certification for manually-underwritten loans also represents that the DE underwriter "personally reviewed the credit application and all associated documents."

539.     The additional certification that the DE underwriter "personally reviewed the credit application and all associated documents" is critical, as manually-underwritten loans frequently have one or more characteristics that suggest heightened risk.

540.     The above-described loan-level certifications ensure that a certain baseline level of care is applied to all loans before they are endorsed for FHA insurance. These certifications make it possible for the FHA/HUD to delegate the authority to endorse loans for FHA insurance to DELs.

541.      Absent a truthful loan-level certification, a DEL is not entitled to endorse a particular loan for FHA insurance. The Plaintiff James Clark, FHA and HUD will not accept a loan for FHA insurance absent the required loan-level certification. **The Plaintiff James Clark, FHA and HUD relied on Flagstar's false loan-level certifications involving the use of underwriting assistants**

542. The submission of a truthful loan-level certification is a prerequisite to endorsing a loan for FHA insurance. Flagstar did not request for the correct amount coverage for the Plaintiff James Clark's loan so Flagstar could then comeback and fleece, extort, and embezzle the borrower for more money and tax payments for future gains. Flagstar was complicit with First American Title, Just that EZ Financial, Yi Ming LLC, and Lenders Escrow, Inc,.

543. The Plaintiff James Clark, FHA, and HUD relied on Flagstar's loan-level certifications in allowing Flagstar to endorse loans for FHA insurance.

544. If the Plaintiff James Clark, FHA, and HUD had known that Flagstar's loan-level certifications were false and that Flagstar was using underwriting assistants to clear conditions they would not have permitted Flagstar to endorse the loan for FHA insurance.

**545.    Flagstar's underwriting assistants have been recklessly clearing conditions**

546.    As demonstrated by the six examples below, on many occasions since January 1, 2002, Flagstar's underwriting assistants have cleared conditions on Flagstar's FHA loans in obvious violation of HUD's underwriting rules. The actions of the underwriting assistants in these six examples are not isolated events. Rather, these examples represent a small fraction, but a representative sample, of the many instances since January 1, 2002, in which underwriting assistants have erroneously and recklessly cleared conditions.

**The Nebraska Avenue Property**

546 . FHA case number 292-4348443 relates to a property on Nebraska Avenue in St. Louis, Missouri (the "Nebraska Avenue Property"). Flagstar manually underwrote the loan for the Nebraska Avenue Property, reviewed and approved it for FHA insurance, and certified that a DE underwriter had "personally reviewed the  credit application and all associated documents." This loan closed in 2003.

547. Contrary to Flagstar's certification, a DE underwriter did not review the credit application and all associated documents. A DE underwriter initially reviewed the loan and approved it with a number of conditions, including that the borrower must "Provide W2's for Years 2002 and 2001 to Support $2,805.83 Monthly Income." An underwriting assistant then cleared this condition, and did so in obvious violation of HUD Handbook 4.000.4, Ch. 2, § 2-4(C)(5).

548 . Section 2-4(C)(5) states that "[t]he underwriter must assume [various] responsibilities," including "awareness of the warning signs that may indicate irregularities, and an ability to detect fraud."

549 . Here, there was an obvious irregularity with respect to the required W-2s they reflected different employee identification numbers ("EIN") for the borrower. Both W-2s identified the borrower as an employee of the same employer, but each contains a different EIN for the borrower. These different EINs were a clear indicator of fraud. Moreover, the 2002 W-2 was faxed to Flagstar from an unidentified third party a further indicator of fraud. The underwriting assistant nonetheless cleared the above condition. This due diligence violation was material. The DE underwriter conditionally approved the loan based on the assumption that the borrower had made at least $2,805.83 per month in 2002, which appears not to have been the case. Accordingly, this loan should not have been approved for FHA insurance.

550. Within three months after closing, the Nebraska Avenue loan went into default.

551. As a result, HUD has paid an FHA insurance claim of $88,781, including costs.

**b.    The Crownover Street Property**

552. FHA case number 495-7414251 relates to a property on Crownover Street in Austin, Texas (the "Crownover Street Property"). Flagstar manually underwrote the loan for the Crownover Street Property, reviewed and approved it for FHA insurance, and certified that a DE underwriter had "personally reviewed the . . . credit application and all associated documents." This loan closed in 2006.

553. Contrary to Flagstar's certification, a DE underwriter did not review the credit application and all associated documents. A DE underwriter initially reviewed the loan and

approved it with a number of conditions, including that Flagstar obtain a "VOR [Verification of Rent] with 12 months history of no late payments from the property management company or 12 months cancelled checks." An underwriting assistant then cleared this condition, and did so in obvious violation of HUD Handbook 4155.1, Ch. 2, § 2-3(A).

554. Section 2-3(A) states: "The lender must determine the borrower's payment history of housing obligations through either the credit report, verification of rent directly from the landlord (with no identity-of-interest with the borrower) or verification of mortgage directly from the mortgage servicer, or through cancelled checks covering the most recent 12-month period."

555. Here, the loan file does not contain a Verification of Rent or 12 months of cancelled rent checks. Nevertheless, the underwriting assistant cleared the above condition. This due diligence violation was material, as "the payment history of the borrower's housing obligations" which was not obtained "holds significant importance in evaluating credit." HUD Handbook 4155.1, Ch. 2, § 2-3(A). Accordingly, this loan should not have been approved for FHA insurance.

556. Within three months after closing, the Crownover Street loan went into default.

557. As a result, HUD has paid an FHA insurance claim of $120,783, including costs.

**The Plaintiff James Clark, FHA and HUD relied on Flagstar's false loan-level due diligence certifications**

558. As discussed above, the submission of a truthful loan-level certification is a prerequisite to endorsing a loan for FHA insurance.

559. The Plaintiff James Clark, FHA and HUD relied on Flagstar's loan-level due diligence certifications in allowing Flagstar to endorse loans for FHA insurance.

560. If the Plaintiff James Clark, FHA and HUD had known that Flagstar's loan-level due diligence certifications were false and that Flagstar's DE underwriters were not conducting the required due diligence on the loans they were endorsing for FHA insurance the Plaintiff James Clark, FHA and HUD would not have permitted Flagstar to endorse the loans for FHA insurance.

**IV.    FLAGSTAR'S FALSE CERTIFICATIONS HAVE CAUSED SUBSTANTIAL LOSSES TO PLAINTIFF JAMES CLARK, FHA, AND HUD**

561. To date, HUD has paid hundreds of millions of dollars in insurance claims on loans that Flagstar has endorsed for FHA insurance since January 1, 2009. This includes loans that were underwritten both manually and using an FHA-approved AUS.

562. The vast majority of the manually-underwritten loans had conditions that were cleared by underwriting assistants. Accordingly, for the vast majority of these loans, Flagstar submitted a false loan-level certification. Flagstar certified that a DE underwriter had "personally reviewed the . . . credit application and all associated documents" when in fact Flagstar had allowed underwriting assistants to review and sign off on many of these documents.

563. Moreover, many of these manually-underwritten loans as well as the loans that were underwritten using an FHA-approved AUS — contain obvious and material due diligence violations. Accordingly, for many of these loans, Flagstar submitted a false loan-level due diligence certification. Flagstar certified that the required due diligence had been conducted on the loans when in fact it had not.

564. Absent the above-referenced false certifications, Flagstar would not have been able to endorse the loans for FHA insurance, and HUD would not have suffered hundreds of millions of dollars in losses on the loans. HUD's net loss taking into account mitigation efforts is a substantial percentage of this amount.

## FIRST CLAIM

### Violations of the False Claims Act

### (31 U.S.C. § 3729(a)(1) (2006), and as amended, 31 U.S.C. § 3729(a)(1)(A))

### Causing False Claims

565 . The Plaintiff James Clark incorporates by reference all paragraphs as if fully set forth in this complaint.

566. The Plaintiff James Clark seeks relief against Flagstar under Section 3729(a)(1) of the FCA, 31 U.S.C. § 3729(a)(1) (2006), and as amended, Section 3729(a)(1)(A) of the FCA, 31 U.S.C. § 3729(a)(1)(A).

567. As set forth above, Flagstar knowingly, or acting with deliberate ignorance and/or with reckless disregard for the truth, presented and/or caused to be presented, to Plaintiff James Clark

and an officer or employee of the Government, false and fraudulent claims for payment or approval in connection with its endorsement of FHA-insured loans, by submitting false loan-level certifications to the Plaintiff James Clark, FHA and HUD stating that its DE underwriters had complied with HUD's DE underwriter review and due diligence requirements.

568. The plaintiff James Clark and HUD has paid insurance claims, and incurred losses, relating to thousands of FHA-insured loans wrongfully endorsed by Flagstar because of Flagstar's false claims.

569. By reason of Flagstar's false claims, the Plaintiff James Clark and the Government  has been damaged in a substantial amount to be determined at trial, and is entitled to a civil penalty as required by law for each violation.

**SECOND CLAIM**

**Violations of the False Claims Act**

**(31 U.S.C. § 3729(a)(1)(B))**

**Use of False Statements**

570. The Plaintiff James Clark incorporates by reference each all paragraphs as if fully set forth in this complaint.

571. The Plaintiff James Clark seeks relief against Flagstar under Section 3729(a)(1)(B) of the FCA, 31 U.S.C. § 3729(a)(1)(B), or in the alternative, under Section 3729(a)(2) of the FCA, 31 U.S.C. § 3729(a)(2) (2006).

571. As set forth above, Flagstar knowingly, or acting in deliberate ignorance and/or with reckless disregard of the truth, made, used or caused to be made or used, false records and/or statements material to false or fraudulent claims in connection with its endorsement of FHA-insured loans. Specifically, Flagstar submitted false loan-level certifications stating that its DE underwriters had complied with HUD's DE underwriter review and due diligence requirements. These false statements were material, because, without them, Flagstar would not have been able to endorse the loans for FHA insurance.

572. HUD has paid insurance claims, and incurred losses, relating to thousands of FHA-insured loans wrongfully endorsed by Flagstar because of Flagstar's false records and/or statements.

573. By reason of Flagstar's false records and/or statements, the Plaintiff James Clark has been damaged in a substantial amount to be determined at trial, and is entitled to a civil penalty as required by law for each violation.

### THIRD CLAIM

#### Breach of Fiduciary Duty

574 . The Plaintiff James Clark incorporates by reference all paragraphs as if fully set forth in this complaint.

575. Flagstar is a fiduciary of the Plaintiff James Clark, FHA, and HUD, and owes the Plaintiff James Clark, Plaintiff James Clark, FHA and HUD fiduciary duties.

576. As a fiduciary of the Plaintiff James Clark, FHA and HUD, Flagstar has a duty to act for, and give advice to, the Plaintiff , Plaintiff James Clark, FHA and HUD for the benefit of the Plaintiff James Clark, Plaintiff James Clark, FHA and HUD as to whether particular loans should be endorsed for FHA insurance under the DEL program.

577. As a fiduciary of the Plaintiff James Clark, FHA and HUD, Flagstar has a duty to act with good faith in its dealings with the Plaintiff James Clark, FHA, and HUD.

578. As a fiduciary of the Plaintiff James Clark,  FHA, and HUD, Flagstar has a duty to: refrain from making misrepresentations to the Plaintiff, FHA, and HUD; make full and fair disclosures to the Plaintiff James Clark, FHA, and HUD of all material facts; and use reasonable care to avoid misleading the Plaintiff, James Clark, FHA, and HUD in all circumstances.

579. As a fiduciary of the Plaintiff James Clark, FHA, and HUD, Flagstar has a duty to exercise sound judgment, prudence and due diligence on behalf of the Plaintiff , FHA, and HUD in endorsing loans for FHA insurance.

580. As set forth above, Flagstar breached its fiduciary duties to the Plaintiff James Clark, FHA, and HUD.

581 . As a result of these breaches, Plaintiff James Clark and HUD has paid insurance claims, and incurred losses, relating to thousands of FHA-insured loans wrongfully endorsed by Flagstar.

582. By reason of these breaches, the Plaintiff James Clark is entitled to compensatory and punitive damages, in an amount to be determined at trial.

## FOURTH CLAIM

### Gross Negligence

583. James Clark incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

584. Flagstar owes the Plaintiff James Clark, FHA, and HUD a duty of reasonable care and a duty to conduct due diligence.

585. As set forth above, Flagstar breached its duties to the Plaintiff James Clark, FHA, and HUD.

586. As set forth above, Flagstar recklessly disregarded its duties to the Plaintiff James Clark FHA, and HUD.

587. As a result of the gross negligence of Flagstar, the Plaintiff and HUD has paid insurance claims, and incurred losses, relating to thousands of FHA-insured loans wrongfully endorsed by Flagstar.

588. By reason of this gross negligence, the Plaintiff James Clark is entitled to compensatory and punitive damages, in an amount to be determined at trial.

## FIFTH CLAIM

### Negligence

589. James Clark incorporates by reference all paragraphs as if fully set forth in this paragraph.

600. Flagstar owes the Plaintiff James Clark, FHA, and HUD a duty of reasonable care anytd a duty to conduct due diligence.

601. As set forth above, Flagstar breached its duties to the Plaintiff James Clark, FHA, and HUD.

602. As a result of the negligence of Flagstar, Plaintiff James Clark and HUD has paid insurance claims, and incurred losses, relating to thousands of FHA-insured loans wrongfully endorsed by Flagstar.

603. By reason of this negligence, the James Clark is entitled to compensatory damages, in an amount to be determined at trial.

### CONCLUSION.

**Plaintiff** requests that the Judgment be vacated, and that the case be dismissed.

### **DISCLAIMER**

604. "To All Persons, Entities, Corporations etc. Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint Adverse To Plaintiffs' Title, Or Any Cloud On Plaintiffs' RITA GAIL FARRIS-ELLISON, JUST THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC, CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI MING LLC there to ARE INFORM THAT IF YOU DESIRE TO FILE A CLAIM TO DO SO IN A TIMELY MANNER "

PLAINTIFF'S VERIFIED COMPLAINT

## VII. Jury Trial Demand

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and hereby demands, a trial by jury. **PRAYER FOR RELIEF**

**WHEREFORE,** PLAINTIFF prays for JUDGMENT against each and every member, agent, employee, manager, or director, and DOES of the above-listed Plaintiff as follows:

## VIII Prayer for Relief

WHEREFORE, as a result of the violations of TILA, Rrg. Z, pursuant to 15 U.S.C. §§ 1635(a), 1640(a), and the California UCL Plaintiff prays for judgment against Defendants as follows:

1. Rescission of this transaction

2. Termination of any security interest in Plaintiff's property created under the transaction

3. Return of any money or property given by the Plaintiff to anyone, including the Defendant, in connection with this transaction,

4. Statutory damages of no less than $2,000 for the disclosure violations,

5. Statutory damages of no less than $2,000 for Defendants' failure to respond properly to Plaintiff's rescission notice

6. Forfeiture of return of loan proceeds,

costs and reasonable attorney fees.                7.    Actual damages in an amount to be determined at trial

8. Reasonable attorney fee and costs of suit

9. For such other and further relief as the Court may deem just and Proper.

10.    Pursuant to Code of Civil Procedure 761.010, Plaintiff asks this Court to declare that each and every one of these defendants should be disqualified from enforcing Plaintiff's note and mortgage or deed of trust, and to order defendants to summon the true current owners consisting of holders of mortgage backed securities owning at least a majority interest in Plaintiff's Note and security instrument.

11.    This Court's declaratory judgment should further address each and every one of the clouds upon Plaintiff's Property and order such legal and equitable relief as is necessary for removing these clouds and forged assignments as reference in the California Supreme Court in Flagstar Bank,  YI MING,LLC, et al.,.

order such legal and equitable relief as is necessary                **EXHIBIT F**

12.    Plaintiff further request reimbursement of all expenses paid in connection with this legal proceeding, including court costs and reasonable attorney fees.

13.    Plaintiff further request any other relief in the form Of specific performance and compensation warranted by evidence in the Record.

PLAINTIFF'S VERIFIED COMPLAINT

:

14. That this court shall issue a judgment declaring that Plaintiff is the owner in fee simple and that the court issue a judgment that Plaintiff is the fee simple owner of all rights, title, and interest in and to the described real property, and to prevent Plaintiff from suffering and continuing to suffer great and irreparable injury; That this Court issue a judgment declaring that Plaintiff is the owners in fee simple of the Property, and that the Defendants and Does have no interest in the Property adverse to Plaintiffs;

15. For a preliminary injunction and a permanent injunction against the Defendants and Does, and each of them, preventing the Defendant's from asserting, orally and/or in writing, to Plaintiffs, third parties and/or the social media, that the Defendants and Does are the owners of the Property, that the Farris/Clark escrow was a fraudulent escrow,

16. For judgment that the Defendants do not have any right, Flagstar Bank YI MING LLCFirst American Title RITA GAIL FARRIS-ELLISON, JUST THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC, CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI MING LL or interest in or any lien in the described real property, That the Court issue a judgment that Plaintiffs are the owners in fee simple to the Property, and that, and the doctrine of judicial estoppel applies against any and all Defendant's and Does, from asserting in any legal proceeding against Plaintiffs that they are the owners of the Property;

17. That this court declare and enter an order and judgment that the Deed of Trust is null and void *ab initio* and never transferred and does not transfer Plaintiff's rights and an order of *cancellation of the deed of trust (DOT) and note*, and that the Defendant's record a grant deed granting the premises to **PLAINTIFF, JAMES LEE CLARK, within five (5) days of the entry of this judgment and that said Grant deed shall forthwith be executed in accordance with the judgment and that Defendants be ordered to deliver the purported Grant Deed,**

**and Deeds of Trust immediately to the Clerk of the Court for cancellation and for general damages in the sum of $1,000,000 dollars**

18. For an injunction and all injunctive relief against all Defendants from foreclosing or attempting to foreclose on my property, including consequential and compensatory damages in the sum of $2,000,000 and for special damages in the sum of $2,000,000 to be proven at trial and judgment entered and for punitive damages in the sum of $2,000,000 suffered or incurred by Plaintiff and for any and all fees, motions, pleadings, telecommunications, emails, correspondence and faxes and other costs of prosecuting this case and for cost of this suit herein incurred and for emotional harm and physical threats they caused me.

19. For declaratory relief against all defendants, declaring that Plaintiff is the sole and legal owner of said property against any and all claims asserted against Plaintiff's property, because Flagstar Bank First American Title gave up its claim years ago,

20. plaintiff refers to re-alleges and incorporated herein paragraphs 1 through 375 of this complaint as though fully set forth hereat.

21. On information and belief, DEFENDANT RITA GAIL FARRIS-ELLISON,  JUST THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC, , and YI MING LLC engaged in the business of investor or hard money lending secured by real property.

22. RITA GAIL FARRIS-ELLISON,  JUST THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC, CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI MING LL ERVICES, LLC failed to take responsible steps to confirm the identity of the borrower for the purported loan and or engaged in due diligence to determine the nature of the Real Property whether investment or personal residence. An appraisal would have easily revealed the nature of WILLIAMS' ownership interest.

23. As such RITA GAIL FARRIS-ELLISON,  JUST THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC, CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC, DOE

BANK, FANGLU MO, and YI MING LL Comissions contributed to the fraud of DEFENDANT resulting in harm and detriment.

WHEREFORE, Plaintiff prays for Judgment against defendants and each of them as follows:

24. For and Order requiring defendants and each of them to show cause if any they have whey they should not be enjoined as set forth below during the pendency of these proceedings;

25. That the court issue a temporary restraining order, preliminary injunction and permanent injunction enjoining the sale and restraining defendants TRUSTEE ENTRA DEFAULT SOLUTIONS, LLCRITA GAIL FARRIS-ELLISON, JUST THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC, CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI MING LLCAND FAY SERVICING, LLC, Loan Servicer and their agents, attorneys, successors and representatives and all persons acting in concert of participating with them from selling attempting to sell recording the trustee's deed or otherwise completing the foreclosure sale of the subject property either under the power of sale in the deed of trust or by judicial foreclosure

26. for an order declaring the rights duties and responsibilities of the parties; specifically, that the trustee has no right to conduct the sale due to the deed of trust procured by fraud.

THIRD CAUSE OF ACTION

27. For an order cancelling that certain deed of trust recorded on or about August 31, 2018.

28. Money damages against RITA GAIL FARRIS-ELLISON, JUST THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC, CIVIC FINANCIAL SERVICES, LLC, TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI MING LL in a sum to be proven at trial in excess of $100,000,000, according to proof;

29. For punitive damages in an appropriate amount to punish defendant RITA GAIL FARRIS-ELLISON, JUST THAT EZ FINANCIAL, FLAGSTAR BANK FIRST AMERICAN TITLE COMPANY, LENDERS ESCROW INC, CIVIC FINANCIAL SERVICES, LLC,

TRUSTEE ENTRA DEFAULT SOLUTIONS, LLC, DOE BANK, FANGLU MO, and YI MING LL for his blatantly wrongful misconduct and to discourage him and others from engaging in this similar type of conduct.

FOR ALL CAUSES OF ACTION

30. That Plaintiff recover reasonable attorneys fees and costs of suit incurred in this action as authorized by stature of contract or both.

31. For such further relief as the court considers proper and just.

32. For any and all relief as the court deems proper and just.

291.

WHEREFORE, Plaintiff prays for:

1. A declaration that any judgment or order relating to Defendant Flagstar Bank against Plaintiff James Clark before the Superior Court of the State of California in and for the County of Los Angles is not valid and not enforceable against Plaintiff James Clark as being *void ab initio* as being lacking subject matter jurisdiction of the Bankruptcy Court's powers;

2. For general damages in an amount according to proof;

3. For special damages in an amount according to proof;

4. For treble damages in an amount according to proof;

5. For statutory damages in an amount according to proof;

6. For punitive damages in an amount appropriate to punish Defendants for their wrongful conduct and set an example for others in an amount according to proof;

7. For restitution, and more specifically the restitution of Plaintiff's real and personal properties;

8. For injunctive relief;

9. For reasonable attorney's fees, including and pursuant to Title 15 of the United States Code §1640, Title 42 of the United States Code §1988(b), Civil Code §52(b), and Code of Civil Procedure §1021.5;

-136-

292. That Plaintiffs be awarded his costs of suit herein; and WHEREFORE, Plaintiff prays judgment against defendants and each of them, as follows:

293. For restitution of possession of the premises;

294. For damages of $150.00 per day for each day YI MING, LLC, have deprived Plaintiff of the use and possession of the premises;

295. For statutory damages of $600.00;

296. For costs of suit herein incurred; and

10. For such other and further relief as the court may deem proper

11. For such other and further relief as the court may deem just and proper.

Dated this 3rd day of September, 2024

By:
JAMES CLARK
625 La Conia Bl.
Los Angeles, CA., 90044
Plaintiff in Pro Se.

## DEMAND FOR JURY TRIAL.

Plaintiff hereby demands a Jury Trial pursuant to the Seventh Amendment of the United States Constitution and Federal Rule of Civil Procedure 38.

Dated this 3rd day of September, 2024

By:
JAMES CLARK
625 La Conia Bl.
Los Angeles, CA., 90044
Plaintiff in Pro Se.

///
///
///
///
///

PLAINTIFF'S VERIFIED COMPLAINT

1  ///

2  ///

3  ///

4  ///

5  **VERIFICATION**

6  I, the undersigned James Clark, declare:

7  1. I am the Plaintiff in the within action:

8  2. I have read the foregoing Verified Complaint and know the contents thereof.

9  The statements made within this complaint are true of my own personal

10  knowledge. If called upon, I could competently so testify.

11  **EXCUTED UNDER PENALTY OF PERJURY** under the laws of the State

12  of California, at Los Angeles County, California, upon this 26th day of August,

13  2024.

14  

15  James Clark.

16  

17  

18  

19  

20  

21  

22  

23  

24  

25  

26  

27  

28  

PLAINTIFF'S VERIFIED COMPLAINT

# EXHIBIT A

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF/PETITIONER:
YI MING LLC

DEFENDANT/RESPONDENT:
JAMES CLARK

### CERTIFICATE OF MAILING

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

09/01/2021

Sherri R. Carter, Executive Officer / Clerk of Court

By _____ S. Temblador _____ Deputy

CASE NUMBER:
19STUD11926

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Jury Trial; Mandatory Settlement Conference (MSC); Order to S...) of 09/01/2021, upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

JAMES CLARK
525 Laconia Blvd
Los Angeles, CA 90044

Micheel C Earle
474 W ORANGE SHOW RD
SAN BERNARDINO, CA 92408

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 09/1/2021

By: ___ S. Temblador ___
Deputy Clerk

### CERTIFICATE OF MAILING

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles
09/01/2021
Sherri R. Carter, Executive Officer / Clerk of Court
By _____ S. Temblador _____ Deputy

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF(S):
YI MING LLC

DEFENDANT(S):
JAMES CLARK

| JUDGMENT - UNLAWFUL DETAINER | CASE NUMBER: 19STUD11926 |

It is hereby ordered that judgment be entered as follows by:   [ X ] The court   [　] The clerk

Date: 09/01/2021   [　] By Default   [　] By Stipulation   [ X ] After Court Trial   [　] After Jury Trial

Judgment is for: YI MING LLC
and against JAMES CLARK

[　] Joint and several

| Past Due Rent | $0.00 | + Holdover Damages | $0.00 | = Principal | $0.00 |

| Attorney Fees: | $0.00 | Costs: | $340.00 |
| Recovery Costs: | $0.00 | Other: | $0.00 |
| Total Judgment amount: | $340.00 | | |

[ X ] Restitution and possession of the premises located at     625 LACONIA BLVD
LOS ANGELES, CA 90044

[　] Judgment of possession applies to any and all unnamed occupants of the premises pursuant to C.C.P. 415.46

[　] The lease or agreement under which the aforesaid property is held be, and the same is hereby declared, forfeited.

[　] The rental agreement under which the aforesaid property is held be, and the same is hereby declared, cancelled.

[　] Execution is stayed as follows:
　　[　] No lock out prior to

Sherri R. Carter, Executive Officer / Clerk of Court

S. Temblador

Deputy Clerk

i4

2

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

**COURTHOUSE ADDRESS:**
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

**PLAINTIFF/PETITIONER:**
YI MING LLC

**DEFENDANT/RESPONDENT:**
JAMES CLARK

**CERTIFICATE OF MAILING**

**FILED**
Superior Court of California
County of Los Angeles

09/01/2021

Sherri R. Carter, Executive Officer/Clerk of Court

By: S. Temblador, Deputy

**CASE NUMBER:**
19STUD11926

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Entry of Judgment / Dismissal / Other Order upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

H.G. LONG
H.G. LONG
474 W ORANGE SHOW RD
SAN BERNARDINO, CA 92408

JAMES CLARK
625 Laconia Blvd
Los Angeles, CA 90044

Michael C Earle
474 W ORANGE SHOW RD
SAN BERNARDINO, CA 92408

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 09/1/2021

By: S. Temblador
Deputy Clerk

CERTIFICATE OF MAILING 

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 91

19STUO11926                                             September 1, 2021
YI MING LLC vs JAMES CLARK                                       8:30 AM

Judge: Honorable George F. Bird                CSR: None
Judicial Assistant: Steve Temblador            ERM: Electronically Recorded
Courtroom Assistant: None                      Deputy Sheriff: Alfred Garcia

**APPEARANCES:**

For Plaintiff(s): Michael C Earle

For Defendant(s): No Appearances

**NATURE OF PROCEEDINGS:** Jury Trial; Mandatory Settlement Conference (MSC); Order to Show Cause Re: Sanctions against Defendant for Failure to Appear on June 29, 2021

The matter is called for trial at 8:54 a.m.

Defendant(s) having failed to appear, proof having been made to the satisfaction of the Court that each of said Defendant(s) has had statutory notice of such trial, and a jury trial having been waived, Plaintiff(s) applies to the court for judgment.

Plaintiffs witness, Hei Jaing, is sworn and testifies.

Plaintiff's exhibits: 1 (Notice of Trial dated 2/9/21) and 2 (Three Day Notice dated 11/22/19) are admitted by reference.

The plaintiff rests.

Court orders judgment entered for Plaintiff YI MING LLC against Defendant **JAMES CLARK** on the Complaint filed by YI MING LLC on 12/09/2019 for costs of $340.00 for a total of $340.00.

Restitution and possession of the premises located at 625 LACONIA BLVD, LOS ANGELES, CA 90044 is granted for plaintiff(s)

Clerk to notice.

Certificate of Mailing is attached.

8

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

COURTHOUSE ADDRESS:

Stanley Mosk Courthouse

111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF(S):

YI MING LLC

DEFENDANT(S):

JAMES CLARK

**FILED**
Superior Court of California
County of Los Angeles

**09/01/2021**

Sherri R. Carter, Executive Officer / Clerk of Court

By _____ S. Temblador _____ Deputy

| NOTICE OF ENTRY OF: ✔ JUDGMENT __ DISMISSAL __ OTHER ORDER __ AMENDED | CASE NUMBER: 19STUD11926 |
|---|---|

TO THE PARTIES AND TO THEIR ATTORNEYS OF RECORD, you are hereby given notice of entry of:

✔ Judgment in the above-entitled matter, entered on 09/01/2021 _____

__ Order of Dismissal in the above-entitled matter, filed on _____

__ Order _____ filed on _____

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 09/01/2021 _____     By S. Temblador _____

Deputy Clerk

**NOTICE OF ENTRY OF JUDGMENT / DISMISSAL / ORDER**

LACIV 123 (Rev 01/07)
LASC Approved 01-05

Code Civ. Proc. § 664.5, 1013a
Cal. Rules of Court, rules 104 & 8.751

2

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

## Civil Division

Central District, Stanley Mosk Courthouse, Department 91

| | |
|---|---|
| 19STUD13926 | September 1, 2021 |
| YI MING LLC vs JAMES CLARK | 8:30 AM |

| | |
|---|---|
| Judge: Honorable George F. Bird | CSR: None |
| Judicial Assistant: Steve Temblador | ERM: Electronically Recorded |
| Courtroom Assistant: None | Deputy Sheriff: Alfed Garcia |

APPEARANCES:

For Plaintiff(s): Michael C Earle

For Defendant(s): No Appearances

NATURE OF PROCEEDINGS: Jury Trial; Mandatory Settlement Conference (MSC); Order to Show Cause Re: Sanctions against Defendant for Failure to Appear on June 29, 2021

The matter is called for trial at 8:54 a.m.

Defendant(s) having failed to appear, proof having been made to the satisfaction of the Court that each of said Defendant(s) has had statutory notice of such trial, and a jury trial having been waived, Plaintiff(s) applies to the court for judgment.

Plaintiffs witness, Hei Jaing, is sworn and testifies.

Plaintiff's exhibits: 1(Notice of Trial dated 2/9/21) and 2(Three Day Notice dated 11/22/19) are admitted by reference.

The plaintiff rests.

Court orders judgment entered for Plaintiff YI MING LLC against Defendant JAMES CLARK on the Complaint filed by YI MING LLC on 12/09/2019 for costs of $340.00 for a total of $340.00.

Restitution and possession of the premises located at 625 LACONIA BLVD, LOS ANGELES, CA 90044 is granted for plaintiff(s)

Clerk to notice.

Certificate of Mailing is attached.

---

Minute Order                                                          Page 1 of 1

# EXHIBIT A1

lectronically FILED by Superior Court of California, County of Los Angeles on 09/22/2021 05:12 PM Sherri R. Carter, Executive Officer/Clerk of Court, by D. Diaz, Deputy Clerk

Michael C. Earle, Esq, SBN: 188290
Law Offices of Michael C. Earle
474 W Orange Show Rd
San Bernardino, CA 92408
Tel: (909) 889-5151
Fax: (909) 889-3900

Email: intake@fastevict.com

Attorneys for Movant

## SUPERIOR COURT, STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

## CENTRAL DISTRICT-STANLEY MOSK COURTHOUSE

| | |
|---|---|
| YI MING LLC | ) **Case Number:** 19STUD11926 |
| | ) |
| | ) OPPOSITION TO EX-PARTE APPLICATION TO |
| | ) VACATE AND SET ASIDE THE JUDGMENT |
| Plaintiff(s), | ) THAT WAS ENTERED AFTER A COURT TRIAL, |
| | ) DECLARATION: AND STAY ENFORCEMENT |
| vs | ) OF JUDGMENT AND WRIT OF POSSESSION OF |
| | ) M. C. EARLE AND MEMORANDUM OF |
| JAMES CLARK | ) POINTS AND AUTHORITIES |
| | ) |
| | ) Date:  09/23/0021 |
| | ) Time:  8:30 AM |
| | ) Dept:  91 |
| | ) |
| | ) |
| Defendant(s). | |

TO ALL INTERESTED PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on 09/23/2021 at 8:30am in Department 91 of the above-entitled court, Plaintiff will oppose Defendant's Motion to Vacate and Set Aside the Judgment that was entered on 09/01/2021.

This opposition will be made on the grounds that (1) A Motion to Vacate and Set Aside a Judgment must be by a Noticed Motion, and (2) Defendants will be unable to show that the Judgment was due to Defendants' mistake, inadvertence, excusable neglect, and/or extrinsic fraud.

This opposition will be based on this Notice, the attached Memorandum of Points and Authorities, the attached Declaration of Michael C. Earle, the papers and documents on file and on such oral and documentary evidence that may be presented at the hearing on the Motion.

Mr. Clark, also spends a considerable amount of time lambasting the court's decision in his Civil Case granting Yi Ming's Motion to Expunge. That issue is neither relevant nor material to the issues presented by the Ex-parte Application.

Dated: 9/22/2024                  Law Offices of Michael C. Earle

                                  By: Michael C. Earle

2

## DECLARATION OF MICHAEL C. EARLE

I, Michael C. Earle, declare:

1.     I am an attorney duly licensed to practice law in the State of California and I am the attorney of record for Plaintiff. I make this Declaration from my own personal knowledge. If I am called to testify I could and would competently so, testify.

2.     I have reviewed Defendant's Motion to Vacate and Set Aside the Judgment, after court trial, that was entered on 09/01/2021, where Defendant failed to appear. (A true and correct copy of the Court's Minute Order dated 09/01/2021 is attached hereto, marked as Exhibit "1" and is incorporated herein by reference0.

3.     This court's minute order dated 09/01/2021 reflects that this court took extraordinary care to review the file before allowing Plaintiff to prove up its case.

4.     The minute order dated 09/01/2021 found that Defendant was lawfully served a Notice of Trial dated 2/09/2021 and a 3-Day Notice dated 11/22/2019.

5.     This court signed the Judgment on 09/01/2021. (A true and correct copy of the entered Judgment dated 09/01/2021 is attached hereto and marked as Exhibit "2" and is incorporated herein by reference).

6.     A Writ of Possession was issued on 09/13/2021 and a notice to vacate has apparently been posted on the subject property which has triggered the instant Ex-parte Application. (A true and correct copy of the Writ of Possession is attached hereto, marked as Exhibit "3" and is incorporated herein by reference).

7.     Mr. Clark also wants this court to consider the Civil Action he filed regarding the subject property in this Ex-parte Application.

8.     Suffice it to say the court in the matter of Clark vs. Gail, etc. et al., Superior Court Case No: 18 STCV 09495 granted Yi Ming LLC Motion to Intervene, Motion to Expunge Notice of Pending Action and Demurrer without leave to Amend. Therefore, Yi Ming LLC's owner of the subject property in this case had been determine and that issue can no longer be litigated in this case.

9.     After reviewing Mr. Clark's Ex-parte Application, it is not entirely clear what remedy he is seeking and what the legal basis to stay the judgment and execution of Writ of Possession.

10.    Mr. Clark offers no legitimate reason for not appearing at the trial date. Nor has he offered any clear evidence of the nature of the extreme hardship he would suffer if the court denied his Ex-parte Application.

11.     Mr. Clark no longer owns the real property that is the subject matter of this action. He lost that property at a Non-judicial Foreclosure Sale.

12.     By expunging the Notice of Pending Action filed in Superior Court Case No. 18STCV09495 on 09/24/2020, almost one year ago, the court effectively ruled that Yi Ming LLC is the legitimate owner of the subject property. (A true and correct copy of the Notice of Ruling dated 10/01/2020 and the Courts Order on the Expunged Lis Pendens is attached hereto, marked as Exhibit "4 & 5" and is referred to by reference).

13.     I am requesting that this court take Judicial Notice of the Notice of Ruling that is attached hereto as Exhibit "4" pursuant to Evidence Code Section 452 and 453.

14.     Defendant, James Clark, has also been labeled as a vexatious litigant and is required to request a pre-filing order before filing any documents with the court. (A true and correct copy of the California Vexatious Litigation, dated 8/1/2021 is attached hereto, marked as Exhibit "6" and is referred to by reference).

I declare under the penalty of perjury that the foregoing is true and correct. I executed this Declaration on 09/22/2021, in San Bernardino, CA.

Michael C. Earle

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff refers to and incorporates herein by reference Paragraph 1-13 of the Declaration of Michael C. Earle as if those Paragraphs were set forth herein in full.

### III

### THE EX-PARTE APPLICATION TO SET ASIDE THE DEFAULT JUDGMENT PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 473 (b) SHOULD BE DENIED

(A) Generally, Substantive Relief, Including Relief Based on Code of Civil Procedure Section 473 (b) May Not be Granted by Ex-parte Application

It is well settled that only limited and narrow forms of relief are available by Ex-parte Application. (See Weil & Brown, California Practice Guide; Civil Procedure Before Trial, (2012 ed, TRG, Section 9.347)

Thus, the general rule states that a noticed motion must be given whenever the order sought may affect the rights of an adverse party. (See (McDonald v. Severy (1936) 6 Cal 629, 631).

Thus, a statute silent on the question of notice will not be interpreted to permit ex-parte relief. Rather, use of the term motion rather than ex-parte application requires the notice and hearing requirements are generally applicable to motions. (See St. Paul Fire & Marine Ins. Co. v. Superior Court (1984) 156 Cal. App. 3rd 86).

Here, Plaintiff submits that Code of Civil Procedure Section 473 (b) which does not specifically state that an application under this section may be made Ex-parte requires that the moving party follow the Notice of Motion procedure outlined in Code of Civil Procedure Section 1010 and CRC 3.1100.

(B) Defendant has failed to show, by competent evidence relief pursuant to Code of Civil Procedure Section 473(b)

Code of Civil Procedure Section 473 (b) is a remedial statute that allows parties to seek relief from orders, dismissals, and/or judgment entered against that party due to surprise, inadvertence, extrinsic fraud, or excusable neglect. However, such relief will be limited to the grounds specified in the motion. Therefore, unless Defendants can show some legitimate reason why he failed to appear at trial the 473(b) Motion must be denied. .

(1) There is no legal basis to vacate and set aside entry of default/default judgment

In order to seek relief under Code of Civil Procedure Section 473 (b) Defendant must, by competent evidence, show that the judgment that was taken against them resulted from surprise, inadvertence, fraud, and/or excusable neglect.

5

Code of Civil Procedure § 473(b) states in pertinent part:

"The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken."

In California, the term surprise under Code of Civil Procedure § 473 (b) refers to "some condition or situation in which a party ... is unexpectedly placed to his injury, *without* any default or *negligence* of his own, which ordinary prudence could not have guarded against." [*Credit Managers Ass'n of So. Calif. v. National Independent Business Alliance* (1984) 162 CA3d 1166, 1173, 209 CR 119, 123; *Hearn v. Howard* (2009) 177 CA4th 1193, 1206, 99 CR3d 642, 654].

In order to qualify for relief, under this portion of Code of Civil Procedure Section 473 (b) Defendant must produce, by competent evidence, that the Default/Default Judgment was taken against Defendants by surprise, though no fault of their own.

Here, on 09/01/2021 this court found that Defendant had been properly noticed of the Trial Date on 02/09/2021. (See Minute Order Dated 09/01/2021).

Additionally, Defendant has not filed a Declaration setting forth any facts that would justify this court granting the instant motion under Code of Civil Procedure Section 473(b).

**It is well settled that the burden is on the moving party to show that the neglect was** *excusable*: **i.e., that the default could not have been avoided through the exercise of ordinary care.** [*Jackson v. Bank of America* (1983) 141 CA3d 55, 58, 190 CR 78, 80—**"the acts which brought about the default must have been the acts of a reasonably prudent person under the same circumstances"**].

**Thus, Defendant has the burden of proving that his failure to appear at trial was excusable, not merely based on a mistake.**

However, not every claimed mistake will be reasonable and not every act of negligence will be excusable.

The discretionary relief provision of Code of Civil Procedure **Section 473(b)** provides, "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. **Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case exceeding six months, after the judgment,**

dismissal, order, or proceeding was taken."

However, under California Law, such relief will not be granted in a vacuum. The moving party must be able to show, by a competent declaration, some legitimate reason for not filing a responsive pleading.

Section 473(b) permits the court to grant relief from a party based on his or her "inadvertence," but the trial court will not grant such relief due to mere carelessness. (*Benjamin v. Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 527.) The term "surprise" in the context of section 473(b) refers to " 'some condition or situation in which a party ... is unexpectedly placed to his injury, without any default or negligence of his own, which ordinary prudence could not have guarded against.' " ( *Baratti v. Baratti* (1952) 109 Cal.App.2d 917, 921.) Finally. " '[s]ection 473 ... permits relief for "excusable" neglect. The word "excusable" means just that: inexcusable neglect prevents relief.' [Citation.] [¶] The burden of establishing excusable neglect is upon the party seeking relief who must prove it by a preponderance of the evidence." ( *Iott v. Franklin* (1988) 206 Cal.App.3d 521, 528, fn. omitted; see *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1423 (*Huh* ).)

The burden of proving a legitimate reason for failing to appear at trial shifts to the Defendants. Defendants failed to serve the moving papers on Plaintiff's counsel so it is impossible for Plaintiff to determine the basis for the instant motion.

## II

## DEFENDANT'S EX-PARTE APPLICATION TO STAY THE UNLAWFUL DETAINER ACTION MUST BE DENIED

The next issue presented in Defendant's Ex-parte Application is whether a Stay on the enforcement of the Judgment and Writ of Possession should be granted.

Defendant claims that she is entitled to a discretionary stay pursuant to Code of Civil Procedure §918-919 which may be granted by this court without an undertaking or bond.

However, Plaintiff contends that in the context of an unlawful detainer action Code of Civil Procedure Section 1176 applies and does require that if a stay is granted it must be granted upon the condition of payment of rent.

Code of Civil Procedure § 1176 which authorizes a tenant to file a motion for petition for a stay the enforcement of a Writ of Possession, is the only vehicle a tenant can use to stay and lockout after judgment.

Thus, a judgment in an unlawful detainer action may be stayed **only upon a proper showing** pursuant to Code of Civil Procedure § 1176(a).

7

"The propriety and terms of a stay in an unlawful detainer action is governed exclusively by Code of Civil Procedure § 1176(a). . . ." (Eisenberg, Horvitz * Wiener, (California Practice Guide: Civil Appeals and Writs, 2009 Ed. (TRHG) 7:246; Seima Auto Mall II v. Appellate Department of Superior Court (Kazarian) (1996) 44 Cal. App. 4th 1681)".

Under California law, a motion to stay a judgment in an unlawful detainer action may be granted, only when the court finds that the moving party would suffer extreme hardship in absence of a stay and that the respondent would not be irreparable injured by its issuance. (Code of Civil Procedure § 1176(a); Seima Auto Mall II v. Appellate Department of the Superior Court, supra, 44 Cal. App. 4th 1681-1682). An Unlawful Detainer action is not automatically stayed pending appeal. (Code of Civil Procedure Section 1176).

Our courts have held that the threat of immediate eviction alone is not a sufficient showing of extreme hardship. (See Eisenberg, Horvitz, & Wiener, California Practice Guide: Civil Appeals and Writs, 2009 Ed. (TRG), § 7:246). Code of Civil Procedures § 1176 now requires that a stay be granted when the tenant (moving party) shows that immediate eviction will work an "extreme hardship" that outweighs any prejudice to the landlord. (Rutter Group, Landlord/Tenant Practice, 9:461).

The Extreme hardship contemplated by § 1176 requires "the tenant to demonstrate something more than imminent eviction and inconvenience; otherwise, virtually all motions for stay would have to be granted. But the magnitude of the requisite tenant showing may turn on the extent to which the landlord demonstrates "irreparable harm" (prejudice) in rebuttal. For instance, the court is likely to hold the tenant to a stricter hardship standard if the landlord has already committed, in reliance on the UD judgment, to relisting its a new tenant." (Rutter Group, Landlord/Tenant Practice, 9:463).

In the instant case, the moving party will be unable to show the type of extreme hardship required by statute.

Plaintiff is mindful that any eviction will cause some type of hardship. But that type of hardship is not the "extreme hardship" envisioned by the California Legislature when it promulgated Code of Civil Procedure Section 1176.

The burden rests with the Defendant to show extreme hardship and Defendant will be unable to do so.

It is also well settled that any stay issued pursuant to C&P § 1176 must be conditioned upon the Defendant(s) paying the fair market rent for the period of the stay.

Next, Code of Civil Procedure Section 918(a), does not support Mr. Clark's Request to Stay the Judgment.

8

1    Code of Civil Procedure Section 918(a) is also predicated on grounds of a hardship and equity.

2  Defendant claims that the loss of his home is sufficient hardship for this court to consider and grant his

3  request to Stay enforcement of the Writ of Execution in this case.

4    However, what Mr. Clark did not inform this court is that he already lost his home a non-judicial

5  foreclosure sale at which Plaintiff Y. Ming LLC, pursuant to Civil Code Section 2924 acquired ownership

6  of the subject property. By granting Ming's Motion to Expunge the Notice of Pending Action the court in

7  Superior Court Case No: 18STCV09495 literally foreclosed this argument finding that Y. Ming LLC was a

8  bona purchaser for value and the Notice of Pending Action was improperly served.

      The issue of ownership of the subject property has been decided in Superior Court Case No:

9  18STCV09405 and is barred by the doctrine of res judicata and collateral estoppel from being reargued

   here.

10                                   **CONCLUSION**

11    For all the foregoing reasons Defendant's Ex-Parte Application should be denied.

12

    Dated:
13
                                 Law Offices of Michael C. Earle
14
         9/22/1
15                               By: Michael C. Earle

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT B

JUL. 15. 2015 1:32PM    S___e Finance LP                      No. 8300   P. 1/6



**HELPING YOU STAY IN YOUR HOME**                    MAKING HOME AFFORDABLE

**Flagstar Bank**            *You may be able to make your payments more affordable.*
                            *Act now to get the help you need!*

06/03/2015

JAMES CLARK
5151 Corporate Dr
Mailstop 3C-142
Troy, MI 48098

Loan #: 502197213

Dear Flagstar Customer(s):

Thank you for contacting us about your mortgage. Based on a careful review of the information you provided, you are approved to enter into a conditional Trial Period Plan under the federal Home Affordable Modification Program (HAMP). This is the first step toward qualifying for more affordable mortgage payments or more manageable terms. It is important that you read this information in its entirety so that you completely understand the actions you need to take to successfully complete the Trial Period Plan and permanently modify your mortgage.

**To Suspend Foreclosure**
You must contact us at 1-800-393-4867 or in writing at the address provided below, or alternatively submit your first payment by no later than 7/1/2015 to indicate your intent to accept this offer. If you contact us or make payment by 7/1/2015 to indicate your intent to accept this offer, we will not refer your loan to foreclosure or if your loan has been referred to foreclosure, we will suspend foreclosure. However, if you do not make your first trial period payment by the date referenced below, foreclosure proceedings may continue.

**To Accept This Offer**
You must make your first trial period payment by no later than 7/1/2015.

**Make Trial Period Payments**

To successfully complete the trial period, you must make the trial period payments below.

- First payment: $1,622.44 by 7/1/2015
- Second payment: $1,622.44 by 8/1/2015
- Third payment: $1,622.44 by 9/1/2015

Please send your trial period payments to:

    FLAGSTAR BANK, FSB
    ATTN: LOSS MITIGATION
    5151 CORPORATE DRIVE
    TROY, MI 48098
    MS W-110-2

If you have questions about our trial period or permanent modification requirements, please contact us at 1-800-393-4867.

This letter is part of Flagstar's debt collection process. All information obtained relating to this letter will be used for that purpose. However, if you are under the protection of the bankruptcy court or have been discharged as a result of a bankruptcy proceeding, this notice is given to you under a statutory or contractual requirement and for informational purposes and is not intended as an attempt to collect a debt or as an act to collect, assess, or recover all or any portion of the debt from you personally except as allowed by law.

LN500 FNMA HAMP TRIAL 091713

FNMA 0169 11/12

Flagstar
Bank

**To Submit a Notice of Error or Request for Information:**
5151 Corporate Drive, Mail Stop 2B-116
Troy, MI 48098-2639
Toll-Free Phone: (800) 393-4887
Toll-Free Fax: (866) 234-9845
Hours: Monday–Friday, 8:30 a.m. to 7 p.m. ET
flagstar.com

06/08/2016

James Clark
625 Laconia Blvd
Los Angeles CA 90044

Flagstar Loan #: 502197213
Property:
625 Laconia Blvd
Los Angeles CA 90044

Dear Flagstar Customer(s):

You were recently notified by Flagstar Bank ("Flagstar") that you were approved for a loss mitigation foreclosure prevention alternative or loss mitigation option. In order to continue with the modification terms offered, an executed modification agreement was required with notary and witness signatures. Flagstar has not received the needed documentation.

In conjunction with this modification agreement, you entered in to a trial payment plan. Please note the history of the payments received, and how they will be applied if you do not respond to this offer.

07/16/2015 Amount received $1622.44
07/27/2015 Amount received $1622.44
07/27/2015 Contractual Payment applied $2958.09
08/24/2015 Amount received $1622.44
09/28/2015 Amount received $1622.44
11/03/2015 Amount received $1622.44
12/22/2015 Amount received $1622.44
01/21/2016 Amount received $1622.44
02/19/2016 Amount received $1622.44
03/21/2016 Amount received $1622.44
05/04/2016 Amount received $1622.44

Total Amount held in suspense $13,266.31

Funds to be applied to Contractual Payments in the amount of $2958.09 for the due dates below:

This letter is part of Flagstar Bank's debt collection process. All information obtained relating to this letter will be used for that purpose. To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this statement is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, the Creditor retains rights under its security instrument, including the right to foreclose its lien, as permitted by governing law.

Attention Military Servicemembers and Dependents: The Servicemembers Civil Relief Act and certain state laws provide important protections or benefits for eligible Servicemembers and their dependents, including protection from foreclosure during and after active duty, pursuant to governing law. Flagstar Bank will comply with the Servicemembers Civil Relief Act for eligible Servicemembers and dependents, unless it receives a court order or a written waiver from the Servicemember.

LM025 A/L 0815 Page 1




Investor Loan # 0537347755

After Recording Return To:

This document was prepared by _____

_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"):[1] JAMES CLARK, AN UNMARRIED MAN
Lender or Servicer ("Lender"): FLAGSTAR BANK, 9990 RICHMOND AVE., SUITE 400, SOUTH HUSTON, TX 77042
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): OCTOBER 13, 2008
Loan Number: 0502197213
Property Address [and Legal Description if recordation is necessary] ("Property"): 625 LACONIA BLVD, LOS ANGELES, CA 90044

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.   My Representations and Covenants. I certify, represent to Lender, covenant and agree:

   A.   I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B.   One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;
   C.   There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
   D.   I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

_____

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as 'I.' For purposes of this document words signifying the singular (such as 'I') shall include the plural (such as 'we') and vice versa where appropriate.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                                        Form 3157    3/09   (rev. 10/10) (page 1 of 6 pages)




E.    Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

F.    if Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G.    I have made or will make all payments required under a trial period plan.

2.    **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.    If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B.    I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.    **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 09/01/2015 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 10/01/2015.

A.    The Maturity Date will be: 09/01/2055.

B.    The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $426,667.24 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

The unpaid principal balance of the Mortgage includes U.S. $49,300.00 of deferred principal ("Deferred Principal Balance") for which Borrower does not pay interest or make monthly payments, and U.S. $377,367.24 of interest-bearing principal ("Interest Bearing Principal Balance") for which Borrower is making monthly payments on such amount in accordance with the Mortgage

C.    Interest at the rate of 2.000% will begin to accrue on the New Principal Balance as of $377,367.24 and the first new monthly payment on the New Principal Balance will be due on 10/01/2015. My payment schedule for the modified Loan is as follows:





| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 5 | 2.000% | 09/01/2015 | $1,142.76 | $479.58, may adjust periodically | $1,622.34, may adjust periodically | 10/01/2015 | 60 |
| 1 | 3.000% | 09/01/2020 | $1,327.63 | May adjust periodically | May adjust periodically | 10/01/2020 | 12 |
| 34 | 3.875% | 09/01/2021 | $1,497.62 | May adjust periodically | May adjust periodically | 10/01/2021 | 408 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.   Additional Agreements. I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.





L.   Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.  In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.   That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.  In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.   That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.   That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement.

Lender

By: _____

Date _____

JAMES CLARK _____ (Seal)
                        Borrower

Date _____

· Borrower Acknowledgment ·

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On _____, 20___, before me, _____, a Notary Public
personally appeared
JAMES CLARK
who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

[Seal]

My commission expires: _____

_____
(Printed Name)

Loan No: 0502197213
Borrower: JAMES CLARK
Property Address: 625 LACONIA BLVD, LOAS ANGELES, CA 90044

## LEGAL DESCRIPTION

THE LAND REFERRED TO IN THIS DESCRIPTION SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, CITY OF LOS ANGELES AND IS DESCRIBED AS FOLLOWS:

LOT 29, IN BLOCK 12 OF ATHENS, AS PER MAP RECORDED IN BOOK 8 PAGES 146 AND 147 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

## TRUSTEE INFORMATION:

The Trustee is: JOAN H. ANDERSON



Loan No: 0502197213 — — — — — — — — — — — — — — Data ID: 993

Date: _____

Lender:    FLAGSTAR BANK

By: _____

Its: _____
(Printed Name and Title)

- Lender Acknowledgment -

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF TEXAS                    §
COUNTY OF HARRIS                  §

On this _____ day of _____, 20_____, before me, _____,
a Notary Public, personally appeared _____
who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in her/his authorized capacity, and that by her/his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

My commission expires:_____

_____
(Printed Name)

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Revised by Middleberg Riddle Group                    Form 3157  3/08 (rev. 10/10)    (Page D of 10 Pages)



Loan No: 0502197213
Borrower: JAMES CLARK

Data ID: 993

Form W-9
(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer
Identification Number and Certification**

Give Form to the
requester. Do not
send to the IRS.

1 Name (as shown on your income tax return). Name is required on this line; do not leave this line blank. (See Specific Instructions on page 2).
JAMES CLARK

2 Business name/disregarded entity name, if different from above (See Specific Instructions on page 2).

3 Check appropriate box for federal tax classification; check only one of the following seven boxes:
☐ Individual/sole proprietor or   ☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate
single-member LLC
☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ►
Note. For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for
the tax classification of the single-member owner.
☐ Other (see instructions) ►

4 Exemptions (codes apply only to certain entities, not individuals; see Instructions on page 3):
Exempt payee code (if any)
Exemption from FATCA reporting code (if any)
(Applies to accounts maintained outside the U.S.)

5 Address (number, street, and apt. or suite no.)
825 LACONIA BLVD

Requester's name and address (optional)

6 City, state, and ZIP code
LOS ANGELES, CALIFORNIA 90044

7 List account number(s) here (optional)
0502197213

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 4.

Note. If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

Social security number

Employer identification number

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 4.

Sign
Here

Signature of
U.S. person ►

Date ►

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

Future developments. Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at www.irs.gov/fw9

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)
• Form 1099-DIV (dividends, including those from stocks or mutual funds)
• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)
• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
• Form 1099-C (canceled debt)
• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding? on page 2.

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),
2. Certify that you are not subject to backup withholding, or
3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and
4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See What is FATCA reporting? on page 2 for further information.

Cat. No. 10231X

Form W-9 (Rev. 12-2014)



Loan No: 0502197213

Data ID: 993

Form W-9 (Rev. 12-2014)

Page 2

Note: If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien;

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;

• An estate (other than a foreign estate); or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States:

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of a disregarded entity and not the entity;

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

Example. Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 4 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See *Exempt payee code* on page 3 and the separate Instructions for the Requester of Form W-9 for more information.

Also see *Special rules for partnerships* above.

## What is FATCA reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See *Exemption from FATCA reporting code* on page 3 and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account, for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Line 1

You must enter one of the following on this line; do not leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account, list first, and then circle, the name of the person or entity whose number you entered in Part I of Form W-9.

a. Individual. Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

Note. ITIN applicant: Enter your individual name as it was entered on your Form W-7 application, line 1a. This should also be the same as the name you entered on the Form 1040/1040A/1040EZ you filed with your application.

Loan No: 0502197213

Data ID: 993

Form W-9 (Rev. 12-2014)

Page 3

b. Sole proprietor or single-member LLC. Enter your individual name as shown on your 1040/1040A/1040EZ on line 1. You may enter your business, trade, or "doing business as" (DBA) name on line 2.

c. Partnership, LLC that is not a single-member LLC, C Corporation, or S Corporation. Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

d. Other entities. Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on line 2.

e. Disregarded entity. For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulations section 301.7701-2(c)(2)(iii). Enter the owner's name on line 1. The name of the entity entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2, "Business name/disregarded entity name." If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

### Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, you may enter it on line 2.

### Line 3

Check the appropriate box in line 3 for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box in line 3.

Limited Liability Company (LLC). If the name on line 1 is an LLC treated as a partnership for U.S. federal tax purposes, check the "Limited Liability Company" box and enter "P" in the space provided. If the LLC has filed Form 8832 or 2553 to be taxed as a corporation, check the "Limited Liability Company" box and in the space provided enter "C" for C corporation or "S" for S corporation. If it is a single-member LLC that is a disregarded entity, do not check the "Limited Liability Company" box; instead check the first box in line 3 "Individual/sole proprietor or single-member LLC."

### Line 4, Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space in line 4 any code(s) that may apply to you.

Exempt payee code.
• Generally, individuals (including sole proprietors) are not exempt from backup withholding.
• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.
• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.
• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space in line 4.

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)
2. The United States or any of its agencies or instrumentalities
3. A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities
4. A foreign government or any of its political subdivisions, agencies, or instrumentalities
5. A corporation
6. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or possession
7. A futures commission merchant registered with the Commodity Futures Trading Commission
8. A real estate investment trust
9. An entity registered at all times during the tax year under the Investment Company Act of 1940

10. A common trust fund operated by a bank under section 584(a)
11. A financial institution
12. A middleman known in the investment community as a nominee or custodian
13. A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000 [1] | Generally, exempt payees 1 through 5 [2] |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

[1] See Form 1099-MISC, Miscellaneous Income, and its Instructions.
[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

Exemption from FATCA reporting code. The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) written or printed on the line for a FATCA exemption code.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)
B—The United States or any of its agencies or instrumentalities
C—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities
D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i)
E—A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i)
F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state
G—A real estate investment trust
H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940
I—A common trust fund as defined in section 584(a)
J—A bank as defined in section 581
K—A broker
L—A trust exempt from tax under section 664 or described in section 4947(a)(1)
M—A tax exempt trust under a section 403(b) plan or section 457(g) plan

Note. You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.



Loan No: 0502197213

Data ID: 993

Form W-9 (Rev. 12-2014)

Page 4

## Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns.

## Line 6

Enter your city, state, and ZIP code.

## Part I. Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS Individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see *Limited Liability Company (LLC)* on page 3), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on this page for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at *www.ssa.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.*

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, or 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see *Exempt payee code* earlier.

**Signature requirements.** Complete the certification as indicated in items 1 through 5 below.

1. **Interest, dividend, and barter exchange accounts** opened before 1984 and broker accounts considered active during 1983. You must give your correct TIN, but you do not have to sign the certification.

2. **Interest, dividend, broker, and barter exchange accounts** opened after 1983 and broker accounts considered inactive during 1983. You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. **Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

4. **Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

5. **Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account, or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner [3] |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulations section 1.671-4(b)(2)(i)(A)) | The grantor [*] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity [4] |
| 9. Corporate or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulation section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or "DBA" name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 2.

[*] Note: Grantor also must provide a Form W-9 to trustee of trust.



Loan No: 0502197213

Data ID: 993

Form W-9 (Rev. 12-2014)

Page 5

Note. If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, SSN, or other identifying information without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

* Protect your SSN,
* Ensure your employer is protecting your SSN, and
* Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

Protect yourself from suspicious emails or phishing schemes. Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to phishing@irs.gov. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: spam@uce.gov or contact them at www.ftc.gov/idtheft or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information



Loan No. 0502197213
Borrower: JAMES CLARK

Data ID: 993

## LOAN MODIFICATION AGREEMENT RIDER

THIS LOAN MODIFICATION AGREEMENT RIDER is made this _____ day of _____, 20_____, by and between the undersigned borrower (the "Borrower") and FLAGSTAR BANK, (the "Lender") and is incorporated into and shall be deemed to amend and supplement that certain LOAN MODIFICATION AGREEMENT (the "Agreement") of the same date executed by the Borrower and Lender as of the date above.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Agreement, Borrower and Lender further covenant and agree as follows:

### 1. Costs and Expenses

All costs and expenses incurred by Lender in connection with this Agreement shall be borne by Lender and not paid by Borrower.

### 2. Escrow Items

Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked. Borrower is hereby advised that beginning on the monthly payment due date set forth above, the amount of Escrow Items will be included with Borrower's monthly payment of principal and interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and conditions contained in this LOAN MODIFICATION AGREEMENT RIDER.

..................................................................................(Seal)
JAMES CLARK —Borrower



Loan No.  0502197213
Borrower:  JAMES CLARK

Data ID:  993

## NOTICE OF NO ORAL AGREEMENTS

Loan Number: 0502197213                                    Date: September 3, 2015

Borrower(s):  JAMES CLARK

Property Address:  625 LACONIA BLVD, LOS ANGELES, CALIFORNIA  90044

Lender:     FLAGSTAR BANK

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Receipt of Notice
The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

Date: _____

_____
JAMES CLARK —Borrower



Loan No. 0502197213
Borrower: JAMES CLARK

Data ID: 993

## BORROWER INCOME CERTIFICATION

I/We certify that my household financial circumstances have not changed within the last ninety days.

I/We understand that if my household financial circumstances have changed that could impact our ability to repay the mortgage debt; it is the borrower(s) responsibility to immediately notify Flagstar Bank prior to executing the enclosed agreement.

Date: _____

_____
JAMES CLARK —Borrower



Loan No: 0502197213
Borrower: JAMES CLARK

Data ID: 993

## COMPLIANCE AGREEMENT

In consideration of FLAGSTAR BANK ("Lender") modifying the first lien mortgage loan (the "Loan"), in connection with the property located at 625 LACONIA BLVD, LOS ANGELES, CALIFORNIA 90044 (the "Modification"), the undersigned ("Borrower") agrees, upon request of Lender, its successors or assigns ("Note Holder"), or upon request of any person acting on behalf of Note Holder, to fully cooperate with Note Holder or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Modification. Borrower further agrees to execute such documents or take such action as Note Holder or such person acting on behalf of Note Holder reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Note Holder to sell, convey, seek guaranty of, or market the Modification to any entity, including without limitation an investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any bonding authority.

Borrower further agrees to comply with any such request within a reasonable period of time as specified by Note Holder or by such person acting on behalf of Note Holder. Failure to comply shall constitute default under the Note and Security Instrument underlying the Modification, and Note Holder may pursue its available remedies.

BY SIGNING BELOW BORROWER ACKNOWLEDGES THAT BORROWER FULLY UNDERSTANDS THIS COMPLIANCE AGREEMENT OR OTHERWISE HAS SOUGHT THE ADVICE OF COUNSEL.

Date: _____

_____
JAMES CLARK —Borrower

Property Address:                                               July 30, 2015
625 Laconia Blvd.
Los Angeles, CA 90044

Mortgage Loan # 502197213

James Clark

Dear Flagstar Loss Mitigation Department,

As confirmed and acknowledged over the phone when I spoke with someone in the loss mitigation department and the customer support department, the letter dated June 3rd regarding the loan modification trial period was mailed to the wrong address to 5151 Corporate Dr., Troy MI.

Also, on several different occasions it has been confirmed that the first two payments for the 3 month trial period have been received and that the mistake regarding the mailing address has been corrected.

Please FAX in writing to 818-753-1577 confirming receipt of the first two payments and that the mailing address mistake has been corrected.

I was told last Friday this would be FAXED to me within 24-48hrs and I still have not received it.  PLEASE FAX this info no later than August 5th.

Thank you,
Tait Buchen

310.528.0766
Tait@Buchen RE.com
BRE lic# 01502326

 

PALMER, LOMBARDI & DONOHUE LLP
515 SOUTH FLOWER STREET · SUITE 2100
LOS ANGELES, CALIFORNIA 90071
P: (213) 688-0430 · F: (213) 688-0440
WWW.PLDLAWYERS.COM

December 21, 2015

**Via U.S. Mail and E-Mail**

James Clark
625 Laconia Boulevard
Los Angeles, CA 90044
jcbobcat@sbcglobal.net

Re:   *Clark v. Flagstar FSB, et al., Case No. BC534086*

Dear Mr. Clark:

Enclosed is a loan modification agreement from Flagstar and a stipulation in the state court action, case number BC534086. Please carefully review the documents and feel free to contact your adviser. Please make all appropriate payments under the loan modification agreement. Once you have performed your review, please feel free to execute all of the documents and send original signatures to my office. My office will handle sending the documents to Flagstar and filing and recording any documents. Thank you.

Very truly yours,

PALMER, LOMBARDI & DONOHUE LLP

FREDERICK A. HAIST

FAH/nm
Enclosure

Cc: Roland Reynolds

3093785_2.doc

1  PALMER, LOMBARDI & DONOHUE LLP
   Roland P. Reynolds, SBN 150864
2  Frederick A. Haist, SBN #211322
   515 South Flower Street, Suite 2100
3  Los Angeles, California 90071
   Phone: (213) 688-0430
4  Fax:  (213) 688-0440

5

   Attorneys for Defendant FLAGSTAR BANK, FSB
6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LOS ANGELES

10

11  JAMES LEE CLARK,                    )    Case No.  BC534086
                                        )
12          Plaintiff,                  )    [Assigned to the Honorable Teresa Sanchez-
                                        )    Gordon]
13   vs.                                )
                                        )    **STIPULATION AND ORDER FOR**
14  FLAGSTAR BANK, F.S.B.; MTC          )    **DISMISSAL**
    FINANCIAL INC. DBA ; and DOES 1     )
15  through 30, Inclusive,              )
                                        )
16          Defendants.                 )    Complaint filed: January 24, 2014
                                        )
17                                      )
                                        )
18                                      )
                                        )
19                                      )
                                        )
20                                      )
                                        )
21  ────────────────────────────

22  TO ALL PARTIES AND/OR THEIR ATTORNEYS OF RECORD:

23          Defendant Flagstar Bank, FSB ("Flagstar") and Plaintiff James Lee Clark ("Clark")

24  stipulate as follows:

25  **I.      BACKGROUND**

26          Clark owns the real property commonly known as 625 Laconia Boulevard, Los Angeles,

27  CA 90044 (the "Property").  On or about October 13, 2008, Clark agreed to borrow money from

28  Flagstar pursuant to a promissory note ("Note") secured by a deed of trust ("Deed of Trust")

─────────────────────────────
                    STIPULATION AND ORDER FOR DISMISSAL

# EXHIBIT C

1578014

D0572407 FILED
In the office of the Secretary of State
of the State of California

4

# CERTIFICATE OF SURRENDER OF RIGHT
# TO TRANSACT INTRASTATE BUSINESS

: JUN 2 6 1998

*Bill Jones*

BILL JONES, Secretary of State

On behalf and by authority of __Flagstar Corporation_____
                              (Name of Corporation)

_____ , a corporation organized

and existing under the laws of __Delaware_____ , the undersigned,
                               (State or Place of Incorporation)

_____Rhonda J. Parish_____ , _____Vice President_____ ,
        (Corporate Officer)                (Title)

of said corporation does hereby certify and declare:

1.  Said corporation hereby surrenders its right and authority to transact intrastate business in the State of California.

2.  Said corporation hereby revokes its designation of agent for the service of process in California.

3.  Said corporation consents that process against it in any action upon any liability or obligation incurred within the State of California prior to the filing of this Certificate of Surrender of Right to Transact Intrastate Business may be served upon the Secretary of State of the State of California.

4.  The post office address to which the Secretary of State may mail copies of any process against the corporation that is served upon the Secretary of State is

    203 E. MAIN STREET, SPARTANBURG, South Carolina 29319

_____

_____
              (Signature of Corporate Officer)

        Rhonda J. Parish, Vice President
        (Typed Name and Title of Officer Signing)

Page 1 of 1

Secretary of State Form
SURC

(CALIF. - 935 - 4/27/95)CT&assoc

D0830795

**FILED**
In the office of the Secretary of State
of the State of California

OCT 23 2006

## CERTIFICATE OF SURRENDER OF RIGHT TO TRANSACT INTRASTATE BUSINESS

On behalf and by authority of:                    C 2727219

FLAGSTAR MORTGAGE CORP.
_____
(Name of Corporation)

_____, a corporation

organized under the laws of _____ MARYLAND _____,
(State or Place of Incorporation)

the undersigned officer of said corporation does hereby certify and declare:

1. Said corporation hereby surrenders its right and authority to transact intrastate business in the State of California.

2. Said corporation hereby revokes its designation of agent for service of process in California.

3. Said corporation consents that process against it in any action upon any liability or obligation incurred within the State of California prior to the filing of this Certificate of Surrender of Right to Transact Intrastate Business may be served upon the California Secretary of State.

4. The post office address to which the California Secretary of State may mail copies of any process against the corporation that is served upon the Secretary of State is

   5151 CORPORATE DR. MS-119-1
   _____

   TROY, MI 48098
   _____

5. A final franchise tax return, as described by Section 23332 of the Revenue and Taxation Code, has been or will be filed with the Franchise Tax Board, as required under Part 10.2 (commencing with Section 18401) of Division 2 of the Revenue and Taxation Code.

                              _____
                              (Signature of Corporate Officer)

                              MATTHEW I. ROSLIN, SECRETARY
                              _____
                              (Typed Name and Title of Officer Signing)



STATE OF CALIFORNIA
FRANCHISE TAX BOARD
PO BOX 1468
SACRAMENTO CA 95812-1468

# TAX CLEARANCE CERTIFICATE

**EXPIRATION DATE:** September 15, 1998

June 22, 1998

CT CORPORATION SYSTEM
ANDREA VINES
915  L  STREET  STE 1440
SACRAMENTO CA 95814

ISSUED TO:  FLAGSTAR CORPORATION
            Entity ID  1578014

This is to certify that all taxes imposed under the Bank and Corporation Tax Law on this corporation have been paid, assumed, or are secured by other means.

If a final return has not been filed, one should be filed within two months and 15 days after the close of the month in which the dissolution or withdrawal takes place.  If the corporation was inactive, a statement to that effect should be attached to the tax forms.  All returns remain subject to audit until the expiration of the normal statutory period. Failure to file required returns may result in additional assessments.

A copy of this Tax Clearance Certificate has been sent to the Office of the the Secretary of State.  This original Tax Clearance Certificate may be retained in the files of the corporation.

By the Expiration Date noted above, this corporation must have filed the documents required by the Secretary of State to dissolve, withdraw or merge.  Requests for the appropriate documents must be directed to: Office of the Secretary of State at 1500 11th Street, 3rd Floor, Sacramento CA. 95814, or by telephone.(916) 657-5448.

NOTE:  If the required documents are not filed with
       the Secretary of State prior to the Expiration
       Date noted above, the corporation will remain
       subject to the filing requirements of the Bank
       and Corporation Tax Law.

By H. Hermansen
Special Audit Unit
Corporation Audit Section
Telephone (916) 845-4124

COPY

# EXHIBIT D



# COUNTY OF LOS ANGELES
## DEPARTMENT OF AUDITOR-CONTROLLER

KENNETH HAHN HALL OF ADMINISTRATION
500 WEST TEMPLE STREET, ROOM 525
LOS ANGELES, CALIFORNIA 90012-3873
PHONE: (213) 974-8361   FAX: (213) 617-0592

**WENDY L. WATANABE**
AUDITOR-CONTROLLER

MARIA M. OMS
CHIEF DEPUTY

ADDRESS ALL CORRESPONDENCE TO:
PROPERTY TAX DIVISION
500 W. TEMPLE ST., ROOM 153
LOS ANGELES, CA 90012-2713

August 26, 2010

JAMES CLARK
625 LACONIA BLVD
LOS ANGELES, CA 90044-3639

Dear MR CLARK:

SUBJECT: ASSESSOR IDENTIFICATION NUMBER: 6117-014-014 YR/SEQ 2008-010

You may be entitled to a tax refund for the above referenced secured bill(s). In order to receive a refund, you must provide proof that you made the payment(s) for the bills referenced above for the amount of $8,591.14. **Please mail or fax front and back copies of cancelled checks, money orders, etc. to:**

Los Angeles County Auditor-Controller
Property Tax Division
**Attn: Diana Parhms**
500 West Temple Street, Room 153
Los Angeles, CA 90012
**Fax (213) 617-0592**

Should you have any questions, please call **Diana Parhms** of my staff at **(213) 974-0359** or email to **dparhms@auditor.lacounty.gov** or **Paul Bernal (213) 893-2887** or email to **pbernal@auditor.lacounty.gov**

Very truly yours,

Daniel Rodriguez, Manager
Property Tax Roll Change/Public Service Section
Tax Division

By: Paul Bernal
Tax Services Supervisor II
DR: PB: cb
H: \Property Tax Roll Change Group\Calculation Unit\Letter for proof of payment.doc.

*Help Conserve Paper – Print Double-Sided*

*"To Enrich Lives Through Effective and Caring Service"*



**RICK AUERBACH • ASSESSOR**
500 WEST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012-2770
lacountyassessor.com
888.802.2111



To: JAMES CLARK
625 LACONIA BLVD
LOS ANGELES CA 90044

RE: _____ Claim for Proposition 58 _____

Assessor's I.D. No.: 6117-014-014

Document No.: _____ 0759365 _____

Recording date.: _____ April 30, 2008 _____

X   **Your claim has been approved as indicated.**

_____ The trended base year values will not be changed.

X   The reappraisal previously processed will be reversed. The 2007-2008
Supplemental tax bill(s) will be cancelled. Corrected bills and/or refunds will be
issued as appropriate.

_____ A partial reassessment exclusion benefit of _____ % has been granted. A change
in assessed value will be processed to reflect a _____ % partial reappraisal.
This partially reappraised portion was denied an exclusion benefit for the following
reason(s):

_____

_____

_____

_____ Claim was not submitted within the statutory time limits, therefore the assessed
value correction will <u>only</u> commence with the _____ fiscal year tax bill.

_____ **Your claim has been denied   for the following reasons.**

_____ Claim was not filed prior to a subsequent transfer of the property to a third party.

_____ Transferee was neither the parent nor the child of the transferor, as **defined by
Revenue and Taxation Code** §63.1.

_____ The transfer exceeds the $1,000,000 collective limit for all property other than the
principal residence.

_____ Our previous request for additional information was not returned.

_____ Other _____

_____

If you have questions, you may contact _____ RAMON JAVATE _____ at _____ 213-893-1145 _____

**OWNERSHIP DIVISION**
Proposition Unit, Room 205

**NOTICE:** This is your record of our action. It is your responsibility to pay all billed tax installments until the
entire correction process has been completed.

OWN-120 (10/04)

COUNTY OF LOS ANGELES CALIFORNIA
THE TREASURER OF THE COUNTY OF LOS ANGELES    September 10, 2010
TEMPLE ST. ROOM 602, LOS ANGELES, CA 90012

TO THE ORDER OF:

MISC-TRA    CLARK, JAMES
625 LACONIA BLVD
LOS ANGELES, CA 90044-3839

087

70-2328
D719

| Amount |
| --- |
| $********6,665.28 |

PAY    Six Thousand Six Hundred Sixty Five And 28/100 Dollars

APPROVED
WENDY L. WATANABE, AUDITOR-CONTROLLER
BY

⑆001262220⑆ ⑈071923284⑈ 87659⑆15848⑆

---

## COUNTY OF LOS ANGELES REMITTANCE ADVICE

| PAYEE NAME | | PAYEE NUMBER | HANDLING CODE |
| --- | --- | --- | --- |
| CLARK, JAMES | | MISC-TRA | |

| PAYMENT REFERENCE NUMBER | DISB CAT | ISSUE DATE | AMOUNT | WARRANT NUMBER |
| --- | --- | --- | --- | --- |
| TWR-AC-PT100903485 | 067 | 09/10/2010 | $6,665.28 | 0012622207 |

```
ASSESSORS ID NO.                                  YEAR   SEQ
NO.   MAP BOOK  PAGE   PARCEL                      2008
010   6117      014    014
CLAIM NO.
PROPERTY TAX REFUND:
PROPERTY LOCATION:
625 LACONIA BLVD, LOS ANGELES CA 90044-3839
REFUND DUE TO AUDITOR CORRECTION
VALUE CHANGE TIMES TAX RATE TIMES PRORATION FACTOR = REFUND
```

For more information about this payment, please contact
**THE PUBLIC SERVICE UNIT AT (213) 974-8368**

NOT NEGOTIABLE    NOT NEGOTIABLE    NOT NEGOTIABLE    NOT NEGOTIABLE    NOT NEGOTIABLE    NOT NEGOTIABLE    NOT NEGOTIABLE

## OPTIONAL PAYMENT PLAN

(This option does not apply to premiums paid by mortgagees.)

Would you prefer to pay one-half of this premium now and the balance in 60 days after the effective date?

If yes, submit **at least 50%** of the amount due for your premium.

Later on, you will receive a statement for the remaining unpaid portion of your premium which will be due 60 days from the effective date.

Thank you for your business.

## PLAN DE PAGOS OPCIONAL

(No es aplicable a las primas pagadas por los acreedores hipotecarios.)

¿Prefiere usted pagar la mitad de esta prima ahora y el saldo en 60 días despu s de la fecha de vigencia?

Si su respuesta es afirmativa, envíe **como mínimo un 50%** de la cantidad adeudada en concepto de prima.

En fecha posterior recibirá un estado de cuenta para el saldo pendiente de pago de su prima, el cual tendrá vencimiento 60 días despu s de la fecha de vigencia.

Gracias por darnos la oportunidad de servirle.

---

### DETACH AND RETURN LOWER INVOICE PORTION WITH YOUR PAYMENT

25-2870  12-06                                                            A28706F1

To pay with credit/debit card, please contact your agent.

MAKE CHECK PAYABLE TO: NEIGHBORHOOD SPIRIT PROPERTY AND CASUALTY, LOS ANGELES, CA
PLEASE WRITE YOUR POLICY NUMBER ON YOUR CHECK. YOUR CANCELLED CHECK IS YOUR RECEIPT.

| POLICY NUMBER | TOTAL DUE | AMOUNT ENCLOSED | DUE DATE |
|---|---|---|---|
| 91708-10-71 | 606.59 | | 01-20-2008 |

NAMED INSURED:
JAMES CLARK

You can now pay your bill and view your policy online, see details at www.farmers.com

0283029170810710606590308290

FARMERS INS GRP OF COS
PO BOX 894729
L.A, CA 90189-4729

25-2870  12-06        A28706F1

SPECIAL FORM DWELLING FIRE

NEIGHBORHOOD SPIRIT PROPERTY AND CASUALTY, LOS ANGELES, CA
A Stock Company
Replaces all prior Declarations, if any

**DECLARATIONS**
STANDARD FORM FIRE
INSURANCE POLICY

TRANSACTION TYPE: OFFER OF RENEWAL
The Policy Period is effective (not prior to time applied for) at described property location.

ISSUING OFFICE:
P.O. BOX 9036
PLEASANTON, CA 94566

| POLICY NUMBER | POLICY PERIOD | | STANDARD TIME | ILLUSTRATION |
| --- | --- | --- | --- | --- |
| | FROM: | TO: | | |
| 91708-10-71 | 01-20-2008 | 01-20-2009 | 12:01 A.M. | 9-83 |

This policy will continue for successive policy periods, if: (1) we elect to continue this insurance, and (2) if you pay the renewal premium for each successive policy period as required by our premiums, rules and forms then in effect.

INSURED NAME and Mailing Address
JAMES CLARK

625 LACONIA BLVD
LOS ANGELES CA 90044-3839

LOCATION OR DESCRIPTION OF INSURED PROPERTY (IF DIFFERENT FROM MAILING ADDRESS)

**DESCRIPTION OF PROPERTY**

| YEAR BUILT | CONSTRUCTION | TYPE |
| --- | --- | --- |
| 1933 | FRAME | 1 OR 2 FAMILY DWELLING OWNER OCCUPIED |

| COVERAGE DESCRIPTION | LIMITS OF LIABILITY |
| --- | --- |
| DWELLING AT THE ABOVE LOCATION | $163,000 |
| CONTENTS/HOUSEHOLD OR PERSONAL PROPERTY | $50,000 |
| SEPARATE STRUCTURES | $16,300 |
| RENTAL VALUE | $16,300 |
| THIS POLICY INCLUDES BUILDING ORDINANCE COVERAGE. | |

| TYPES OF INSURANCE AND/OR COVERAGE PROVIDED | PREMIUM |
| --- | --- |
| FIRE AND LIGHTNING | $ 284.81 |
| EXTENDED COVERAGE | $ 190.96 |
| SPECIAL FORM BUILDING AND BROAD FORM CONTENTS | |
| PERSONAL LIABILITY | INCLUDED |
| ADDITIONAL COVERAGES | $ 42.00 |
| | $ 88.82 |

| | TOTAL PREMIUM | $ 606.59 |
| --- | --- | --- |

| FORM NUMBER | EDITION DATE | FORM DESCRIPTION |
| --- | --- | --- |
| DP3 | 9-83 | DWELLING FIRE - SPECIAL FORM |
| CA033A | 1ED | ENDORSEMENT AMENDING CONDITIONS |
| CA035A | 1ED | AMENDED LOSS SETTLEMENT CONDITIONS |
| DP300 | 1292 | DWELLING FIRE - SPECIAL STATE PROVISIONS |
| E4049A | 1ED | ENDORSEMENT AMENDING GENERAL LIABILITY EXCLUSIONS |
| E6217A | 1ED | AMENDING DEBRIS REMOVAL COVERAGE & POLLUTION EXCLUSION |
| | | IMPORTANT NOTICE - ADDITIONAL ENDORSEMENTS SHOWN ON BACK |

**DISCOUNTS**
NO DISCOUNTS APPLY.

**DEDUCTIBLES**

$500    Deductible is applicable to covered losses.

POLICY ACTIVITY    (SUBMIT AMOUNT DUE WITH ENCLOSED INVOICE)

| | |
| --- | --- |
| $ NONE | Previous Balance |
| 606.59 | Premium |
| | CA Surcharge |
| | Payments or Credits |
| $ 606.59 | Total DUE |
| | INSURED PAYS |

ANY "TOTAL" BALANCE OR CREDIT $7.00 OR LESS WILL BE APPLIED TO YOUR NEXT BILLING. BALANCES OVER $7.00 ARE DUE UPON RECEIPT.

This Declarations page is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

AGENT: MORRIS DAVIS JR INS SV INC
AGENT PHONE: (323) 753-1161    AGENT NUMBER: 02-01-302

56-5103  4TH EDITION 1-05    91708-10-71    *(Continued on Reverse Side)*

Countersignature

Authorized Representative

11-30-2007

CSA03411

## MESSAGES

THE LIMIT OF LIABILITY FOR THIS STRUCTURE (COVERAGE A) IS BASED ON AN ESTIMATE OF THE COST TO REBUILD YOUR HOME, INCLUDING AN APPROXIMATE COST FOR LABOR AND MATERIALS IN YOUR AREA, AND SPECIFIC INFORMATION THAT YOU HAVE PROVIDED ABOUT YOUR HOME.

TO REPORT A CLAIM DURING BUSINESS HOURS, CALL YOUR AGENT
MORRIS DAVIS JR INS SV INC AT 323-753-1161

INSURED PAYS PREMIUM.

IN THE EVENT OF A LOSS, AT ANY TIME, CALL US AT 1-800-HELPPOINT (1-800-435-7764)

## MORTGAGEE OR OTHER INTEREST:

LOAN NUMBER   1792878

CHASE BANK USA NA ISAOA ATIMA
C/O CHASE HOME FINANCE LLC
PO BOX 81507
ATLANTA, GA
30366-1507

## MORTGAGEE'S BILLING ADDRESS:

CHASE HOME FINANCE

PO BOX 81507
ATLANTA, GA
30366-1507

## ADDITIONAL MORTGAGEE OR OTHER INTEREST(S):

## ADDITIONAL ENDORSEMENTS

| | | |
|---|---|---|
| HO277 | 484 | BUILDING ORDINANCE OR LAW COVERAGE |
| H4128A | 1ED | AMENDING OTHER COVERAGES, PERILS INSURE AGAINST, GEN EXCL |
| H6146 | 1ED | COMPREHENSIVE PERSONAL LIABILITY |
| PL2412 | 1ED | SPECIAL PROVISIONS |
| PL2415 | 1ED | WORKERS COMPENSATION |
| PL2416 | 1ED | NO COVERAGE FOR HOME DAY CARE BUSINESS |
| H6155 | 1ED | VALUE PROTECTION ENDORSEMENT |
| U6197A | 1ED | EXTENDED REPLACEMENT COST ENDORSEMENT |
| 258531 | 1104 | CALIFORNIA NOTICE OF INFORMATION PRACTICES |
| 565350 | 9ED | COMPREHENSIVE PERSONAL LIABILITY |

C5A03472



☐ ACTUAL CASH VALUE COVERAGE PAYS THE FAIR MARKET VALUE OF THE DWELLING AT THE TIME OF THE LOSS, OR THE COST TO REPAIR, REBUILD, OR REPLACE THE DAMAGED OR DESTROYED DWELLING WITH LIKE KIND AND QUALITY CONSTRUCTION, UP TO THE POLICY LIMIT.

In the event of any covered loss to your home, the insurance company will pay either the fair market value of the damaged or destroyed dwelling (excluding the value of land) at the time of the loss or the cost to repair, rebuild, or replace the damaged or destroyed dwelling with like kind and quality construction **up to the policy limit with possible consideration of physical depreciation.** The amount of recovery will be reduced by any deductible you have agreed to pay. Read your declaration page to determine whether your policy includes coverage for building code upgrades.

☒ **BUILDING CODE UPGRADE** – ORDINANCE AND LAW COVERAGE PAYS UP TO LIMITS SPECIFIED IN YOUR POLICY. ADDITIONAL COSTS REQUIRED TO BRING THE DWELLING "UP TO CODE."

In the event of any covered loss, the insurance company will pay any additional costs, up to the stated limits, of repairing or replacing a damaged or destroyed dwelling to conform with any building standards such as building codes or zoning laws required by government agencies and in effect at the time of the loss or rebuilding (see your policy).

This disclosure form does not explain the types of contents coverage (Furniture, Clothing, etc.) provided by your policy. Some policies do not replace contents with new items, but instead, only pay for the current market value of an item. If you have any questions, contact your insurer or agent.

25-2531 10-04

A2531213

THIS PAGE LEFT
INTENTIONALLY BLANK.

# California Residential Property Insurance Disclosure

Insured's Name:
JAMES CLARK

Policy Number
91708-10-71

Agent Number
02 01 302.

This disclosure is required by California Law (Section 10102 of the Insurance Code). It describes the principal forms of insurance coverage in California for residential dwellings. It also identifies the form of dwelling coverage you have purchased or selected.

This disclosure form contains only a general description of coverages and is not part of your residential property insurance policy. Only the specific provisions of your policy will determine whether a particular loss is covered and, if so, the amount payable. Regardless of which type of coverage you purchase, your policy may exclude or limit certain risks.

READ YOUR POLICY CAREFULLY. If you do not understand any part of it or have questions about what it covers, contact your insurance agent or company. You may also call the California Department of Insurance consumer information line at (1-800-927-HELP or 1-800-927-4357).

The cost to rebuild your home may be very different from the market value of your home since reconstruction is based primarily on the cost of labor and materials. Many factors can affect the cost to rebuild your home, including the size of your home, the type of construction, and any unique features. Please review the following coverages carefully. If you have questions regarding the level of coverage in your policy, please contact your insurance agent or company. Additional coverage may be available for an additional premium.

## FORMS OF COVERAGE FOR DWELLINGS
### (Dwelling Coverage selected or purchased)

☐ **GUARANTEED REPLACEMENT COST COVERAGE WITH FULL BUILDING CODE UPGRADE** PAYS REPLACEMENT COSTS WITHOUT REGARD TO POLICY LIMITS, AND INCLUDES COSTS RESULTING FROM CODE CHANGES.

In the event of any covered loss to your home, the insurance company will pay the full amount needed to repair or replace the damaged or destroyed dwelling with like or equivalent construction **regardless of policy limits. Your policy will specify whether you must actually repair or replace the damaged or destroyed dwelling in order to recover guaranteed replacement cost.** The amount of recovery will be reduced by any deductible you have agreed to pay.

This coverage includes all additional costs of repairing or replacing your damaged or destroyed dwelling to comply with any new building standards (such as building codes or zoning laws) required by government agencies and in effect at the time of rebuilding.

To be eligible to recover full guaranteed replacement costs with building code upgrade, you must insure the dwelling to its full replacement cost at the time the policy is issued, with possible periodic increases in the amount of coverage to adjust for inflation and increases in building costs; you must permit inspections of the dwelling by the insurance company; and you must notify the insurance company about any alterations that increase the value of the insured dwelling by a certain amount (see your policy for that amount).




☐ GUARANTEED REPLACEMENT COST COVERAGE WITH LIMITED OR NO BUILDING CODE UPGRADE PAYS REPLACEMENT COSTS WITHOUT REGARD TO POLICY LIMITS BUT LIMITS OR EXCLUDES COSTS RESULTING FROM CODE CHANGES.

In the event of any covered loss to your home, the insurance company will pay the full amount needed to repair or replace the damaged or destroyed dwelling with like or equivalent construction regardless of policy limits. **Your policy will specify whether you must actually repair or replace the damaged or destroyed dwelling in order to recover guaranteed replacement cost.** The amount of recovery will be reduced by any deductible you have agreed to pay.

This coverage does **not** include all additional costs of repairing or replacing your damaged or destroyed dwelling to comply with any new building standards (such as building codes or zoning laws) required by government agencies and in effect at the time of rebuilding. Consult your policy for the applicable exclusions or limits with respect to these costs.

To be eligible to recover full guaranteed replacement cost with limited or no building code upgrade, you must insure the dwelling to its full replacement cost at the time the policy is issued, with possible periodic increases in the amount of coverage to adjust for inflation and increases in building costs; you must permit an inspection of the dwelling by the insurance company; and you must notify the insurance company about any alterations that increase the value of the insured dwelling by a certain amount (see your policy for that amount).

☒ LIMITED REPLACEMENT COST COVERAGE WITH AN ADDITIONAL PERCENTAGE PAYS REPLACEMENT COSTS UP TO A SPECIFIED AMOUNT ABOVE THE POLICY LIMIT.

In the event of any covered loss to your home, the insurance company will pay to repair or replace the damaged or destroyed dwelling with like or equivalent construction **up to a specified percentage over the policy's limits.** See the declarations page of your policy for the limit that applies to your dwelling. **Your policy will specify whether you must actually repair or replace the damaged or destroyed dwelling in order to recover this benefit.** The amount of recovery will be reduced by any deductible you have agreed to pay.

To be eligible for this coverage, you must insure the dwelling to its full replacement cost at the time the policy is issued, with possible periodic increases in the amount of coverage to adjust for inflation; you must permit an inspection of the dwelling by the insurance company; and you must notify the insurance company about any alterations that increase the value of the insured dwelling by a certain amount (see your policy for that amount). Read your declaration page to determine whether your policy includes coverage for building code upgrades.

☐ LIMITED REPLACEMENT COST COVERAGE WITH NO ADDITIONAL PERCENTAGE PAYS REPLACEMENT COSTS UP TO POLICY LIMITS ONLY.

In the event of any covered loss to your home, the insurance company will pay to repair or replace the damaged or destroyed dwelling with like or equivalent construction **only up to the policy's limit.** See the declarations page of your policy for the limit that applies to your dwelling. **Your policy will specify whether you must actually repair or replace the damaged or destroyed dwelling in order to recover this benefit.** The amount of recovery will be reduced by any deductible you have agreed to pay. To be eligible to recover this benefit, you must insure the dwelling to 80 percent of its replacement cost at the time of loss. Read you declaration page to determine whether your policy includes coverage for building code upgrades.



POLICY NUMBER: 91708-10-71

**Construction Techniques and Materials**

| Modern | X |
|---|---|
| Vintage, Typical of Era of Home Design | |

**Special Conditions**

| | | Description | % of Total |
|---|---|---|---|
| Wall Height | | 8 foot | 100% |
| | | 9 foot | 0% |
| | | 10 foot | 0% |
| Wall Framing | | Wood | 100% |
| | | Steel | 0% |
| | | Other | 0% |

**Alarm or Sprinkler System**

| Local Fire/Smoke Alarm | NO |
|---|---|
| Local Electronic Burglar Alarm | NO |
| Central Station Burglar/Fire Alarm | NO |
| Full Sprinkler Sytem | NO |
| Partial Sprinkler System | NO |

**Kitchen Grade for this Dwelling: ECONOMY**

There are four possible kitchen grade categories: Economy, Standard, Custom, and Luxury. Your grade is based on the following general description:

| ECONOMY | – A kitchen that typically includes the following: |
|---|---|

| Functional, economy kitchen that includes the following; 16' base cabinets with Laminate finish and Formica countertops; 16' wall cabinets with laminate; 1 range with oven; 1 basic refrigerator, 1 dishwasher, 1 sink stainless steel with double bowl. |
|---|

**Number and Grade of Full Baths and Number of Half Baths in this Dwelling:**

There are four possible bath grades (shown in the table at right), but we apply only the two predominant grades for any one home. The grade(s) applied to your home are based on the following general descriptions.

For more information about kitchen and bath grades, please contact your Farmers Agent.

| Luxury | 0 |
|---|---|
| Custom | 0 |
| Standard | 0 |
| Economy | 1 |
| Half Baths | 1 |

| ECONOMY | – A bath that typically includes the following: | – A bath that typically includes the following: |
|---|---|---|
| Bathroom with three or more of the following fixtures: 1 toilet basic color or white and 1 sink, 1 plastic laminate vanity cabinet, and tub/shower. | | |

**Additional Building Features**

Additional building features that may affect estimated reconstruction cost are listed below. Items included in your dwelling are indicated by an 'X' in the first section of the table and by a number in the second section (on the following page).

| Additional Furnace | | Intercom System | |
|---|---|---|---|
| Air Conditioning | | Jacuzzi | |
| Attached Carport | | Metal Spiral Stairs | |
| Open Breezeway | | Patio Cover | |
| Screened Breezeway | | Porch, Open | |
| Composite Deck | | Porch, Screened | |
| Central Stereo System | | Redwood Deck | |
| Central Vacuum | | Solar Room | |
| Greenhouse | | Wood Deck | |
| Hot Tub | | Wood Spiral Staircase | |

25-4250 6-95

*1250103

POLICY NUMBER: 91708-10-71

| Item Description | Number | Item Description | Number |
|---|---|---|---|
| Atrium Windows | 0 | Picture Window | 0 |
| Bay Windows | 0 | Skylights | 0 |
| Exterior Shutters | 0 | Sliding Glass Doors | 0 |
| Fireplaces | 1 | Solar Panels | 0 |
| Evaporative Coolers | 0 | Stained Glass Windows | 0 |
| French Doors | 0 | Wet Bar | 0 |

Thank you for reviewing the information this notice provides about your home. It is important because the amount of insurance coverage you choose should closely match the actual cost of rebuilding your home. Our underwriting rules for most states require that your policy have a Coverage A limit at least equal to the reconstruction cost estimate. You may choose a Coverage A limit higher than the estimate, or you have the option to reduce the limit to an amount equal to the estimate.

# Reconstruction costs change over time.

Here are some things to keep in mind as you choose your Coverage A limit:

* Contact your Farmers® agent. Your agent will be glad to work with you to make sure we have all the information we need for the reconstruction cost estimate. Make sure the information we have is current and complete and tell your agent about any improvements, upgrades, or additions you've made to your home.

* Understand that reconstruction cost is not the same as market value, or what you paid for your home, or the cost of a similar new tract home. And . . . reconstruction cost changes over time, typically increasing year by year.



**TIME**

## Additional coverages may be right for you.



You may want to ask your agent if your policy has "extended replacement cost" coverage. Under this coverage and subject to its provisions, we pay to repair or replace a loss covered under Coverage A up to 125% of the Coverage A limit. If your policy does not have this coverage, you may be able to add it for an additional premium.

Many policies have limited Building Ordinance or Law coverage to pay for additional costs that result from having to rebuild in compliance with updated building codes. You may be able to increase the amount of this coverage for additional premium. Please contact your agent to discuss availability.

If you have questions about anything in this notice or would like to discuss your coverage, please call your Farmers® agent. Thank you for choosing Farmers. We appreciate your business.

POLICY NUMBER: 91708-10-71

# Make sure you're not *under*-insured.



After: Under-Insured

The Fire!

Before

After: Properly Insured

Dear JAMES CLARK

We want to help you choose the amount of coverage that is right for you. That's why we're making the extra effort to provide you with specific information about *your* house. Using the information in this notice, you can make sure the limit of insurance you choose for your home takes into account the construction, characteristics, and special features of your home.

The information we have on record about your home is important because with each renewal offer, we use it to calculate a reconstruction cost estimate.

You can use the estimate as a guide to help you choose the amount of coverage you want for your home. If you don't have enough coverage, you could be under-insured. And if your house were totally destroyed, that could mean being unable to pay for complete reconstruction.

We can get you back where you belong . . . *if* you're properly insured.

## And keep in mind: with Farmers, you have a personal agent to help you with your insurance program.

## Do we have current information about your home?

Current and complete information is the key to getting a good reconstruction cost estimate. Even if you haven't changed a thing about your home for years, it's still a good idea to check your information and make sure it's current and complete. And if you *have* made any changes . . .

## According to one recent study, 60% of homeowners who completed major changes to their homes did not update their Homeowners insurance policies.

Here's how it could have happened:

- Lemont added an upstairs bathroom.
- Luisa upgraded her 1930s kitchen with granite counters and new appliances.
- Bob and Judi turned their unfinished basement into an exercise room.
- Kim put a second floor on his ranch style home and gained 800 square feet.

*And because they didn't report those changes to their agents, they were under-insured!*

# Turn the page to start reviewing information about your house.



25-4250 6-05

A425D101




# Farmers® Privacy Notice

In the course of our business relationship with you, we collect information about you that is necessary to provide you with our products and services. We treat this information as confidential and recognize the importance of protecting it. We value your confidence in us.

You trust us with an important part of your financial life. We are proud of our privacy policies and procedures and encourage you to review them carefully.

This notice from the member companies of the Farmers Insurance Group of Companies® listed on the back of this notice* describes our privacy practices regarding information about our customers and former customers that obtain financial products or services from us for personal, family or household purposes. **When state law is more protective of individuals than federal privacy law, we will protect information in accordance with state law consistent with the requirements of federal preemption.**

## Information we collect

We collect and maintain information about you to provide you with the coverage, product or service you request and to service your account.

We collect certain information ("nonpublic personal information") about you and the members of your household ("you") from the following sources:

- Information we receive from you on applications or other forms, such as your social security number, assets, income and property information;

- Information about your transactions with us, our affiliates or others, such as your policy coverage, premiums and payment history;

- Information we receive from a consumer reporting agency or insurance support organization, such as motor vehicle records, credit report information and claims history; and

- If you obtain a life, long-term care or disability product, information we receive from you, medical professionals who have provided care to you and insurance support organizations regarding your health.

## How we protect your information

At Farmers, our customers are our most valued assets. Protecting your privacy is important to us. We restrict access to personal information about you to those individuals, such as our employees and agents, who provide you with our products and services. We require those individuals to whom we permit access to your customer information to protect it and keep it confidential. We maintain physical, electronic, and procedural safeguards that comply with applicable regulatory standards to guard your nonpublic personal information.

We do not disclose any nonpublic personal information about you, as our customer or former customer, except as described in this notice.

## Information we disclose

We may disclose the nonpublic personal information we collect about you, as described above, to companies that perform marketing services on our behalf or to other financial institutions with which we have joint marketing agreements and to other third parties, all as permitted by law.

Many employers, benefit plans or plan sponsors restrict the information that can be shared about their employees or members by companies that provide them with products or services. If you have a relationship with Farmers or one of its affiliates as a result of products or services provided through an employer, benefit plan or plan sponsor, we will abide by the privacy restrictions imposed by that organization.

We are permitted to disclose personal health information (1) to process your transaction with us, for instance, to determine eligibility for coverage, to process claims or to prevent fraud; (2) with your written authorization, and (3) otherwise as permitted by law.

## Sharing information with affiliates

The Farmers family encompasses various affiliates that offer a variety of financial products and services in addition to insurance. Sharing information enables our affiliates to offer you a more complete range of products and services.

We may disclose nonpublic personal information, as described under **Information we collect**, to our affiliates, which include:

- Financial service providers such as insurance companies and reciprocals, investment companies, underwriters and brokers/dealers; and
- Non-financial service providers, such as management companies, attorneys-in-fact and billing companies.

We are permitted by law to share with our affiliates our transaction and experience information with you.

In addition, we may share with our affiliates consumer report information, such as information from credit reports and certain application information, that we have received from you and from third parties, such as consumer reporting agencies and insurance support organizations.

## Your choice

If it is your decision not to opt-out and to allow sharing of your information with our affiliates, you do not need to request an Opt-Out Form or respond to us in any way.

If you have previously submitted a request to opt-out on each of your policies, no further action is required.

If you prefer that we not share consumer report information with our affiliates, except as otherwise permitted by law, you may request an Opt-Out Form by calling tollfree, 1-866-813-7551, (please have all of your policy numbers available when requesting Opt-Out Forms). A form will be mailed to your attention. Please verify that all of your Farmers policy numbers are listed. If not, please add the policy numbers on the form and mail to the return address printed on the form. We will implement your request within a reasonable time after we receive the form.

## Modifications to our privacy policy

We reserve the right to change our privacy practices in the future, which may include sharing nonpublic personal information about you with nonaffiliated third parties. Before we do that, we will provide you with a revised privacy notice and give you the opportunity to opt-out of that type of information sharing.

## Website

Our website privacy notices, such as the one located at farmers.com, contain additional information particular to website use. Please pay careful attention to those notices if you transmit personal information to Farmers over the Internet.

## Recipients of this notice

We are providing this notice to the named policyholder residing at the mailing address to which we send your policy information. If there is more than one policyholder on a policy, only the named policyholder on that policy will receive this notice, though any policyholder may request a copy of this notice. You may receive more than one copy of this notice if you have more than one policy with Farmers. You also may receive notices from affiliates, other than those listed below. Please read those notices carefully to determine your rights with respect to those affiliates' privacy practices.

## More information about the federal laws

This notice is required by federal law. If you would like additional information about these federal laws, please visit our website at farmers.com.

## Signed:

Farmers Insurance Exchange, Fire Insurance Exchange, Truck Insurance Exchange, Mid-Century Insurance Company, Farmers Insurance Company, Inc. (A Kansas Corp.); Farmers Insurance Company of Arizona, Farmers Insurance Company of Idaho, Farmers Insurance Company of Oregon, Farmers Insurance Company of Washington, Farmers Insurance of Columbus, Inc.; Farmers New Century Insurance Company, Farmers Group, Inc.; Farmers Reinsurance Company, Farmers Services Insurance Agency, Farmers Services Corporation, Farmers Texas County Mutual Insurance Company, Farmers Underwriters Association, Farmers Value Added, Inc.; Farmers Financial Solutions, LLC; FFS Holding, LLC; Farmers Services, LLC; ZFUS Services, LLC; Leschi Life Assurance Company, FIG Holding Company, FIG Leasing Co., Inc.; Fire Underwriters Association, Illinois Farmers Insurance Company, Mid-Century Insurance Company of Texas, Prematic Service Corporation (California), Prematic Service Corporation (Nevada), Texas Farmers Insurance Company, Farmers New World Life Insurance Company, Truck Underwriters Association, Civic Property and Casualty Company, Exact Property and Casualty Company and Neighborhood Spirit Property and Casualty Company.

*The above is a list of the affiliates on whose behalf this privacy notice is being provided. It is not a comprehensive list of all affiliates of the Farmers Insurance Group of Companies.



There are some types of information for which these rights do not apply:

• Information we collect to process an actual or anticipated claim
• Information we collect for an actual or anticipated civil or criminal proceeding
• Specific items of privileged information when an applicant or policyholder is suspected of fraud, material misrepresentation, or material nondisclosure

## We'll keep you informed.

As required by law, we will keep you up to date on our information practices. We reserve the right to modify our practices at any time, when permitted by law.

The Fair Credit Reporting Act requires us to let you know we may make an investigation about any of these that apply: character, general reputation, personal characteristics, and mode of living. You can, within a reasonable time after you receive this notice, write to us for more information about such an investigation. We'll send it to you.

If you have questions about this notice, please call your Farmers® agent.

This notice is sent on behalf of the Farmers Insurance Group of Companies, whose members include, but are not limited to:

Farmers Insurance Exchange, Fire Insurance Exchange, Truck Insurance Exchange, Mid-Century Insurance Company, Farmers New Century Insurance Company, Farmers Insurance Company, Inc. (A Kansas Corp.), Farmers Insurance Company of Arizona, Farmers Insurance Company of Idaho, Farmers Insurance Company of Oregon, Farmers Insurance Company of Washington, Farmers Insurance of Columbus, Inc., Farmers Texas County Mutual Insurance Company, Illinois Farmers Insurance Company, Mid-Century Insurance Company of Texas, Texas Farmers Insurance Company, Civic Property and Casualty Company, Exact Property and Casualty Company, and Neighborhood Spirit Property and Casualty Company.

25-8581  11-04

A8531203

THIS PAGE LEFT
INTENTIONALLY BLANK.



## NOTICE OF INFORMATION PRACTICES
## CALIFORNIA

### Why did we send you this notice?

The State of California requires all insurance companies to tell customers about their information practices. Information practices include things companies do to gather and share information about customers. Insurance companies need information to make decisions. They make all sorts of day-to-day decisions: who to insure, how much to charge, how to handle claims, and others.

### What are your rights?

Our information practices extend to applicants and policyholders (past and present). State and federal laws give you certain rights when you take part in transactions having to do with insurance for yourself, your family, or your household.

We send our customers a notice called the "Farmers Privacy Notice." The Farmers Privacy Notice does not limit any rights you may have -- as a consumer, claimant, or beneficiary. Your state gives you additional protections. They are explained in this notice.

### How do we collect the information?

You give us most of the information we need when you apply for insurance. Much of it is made up of common, practical facts: your employment information, your driving record, your age, where you live, and other things like that. Many times, we need more information. Or we may need to verify information you've given us. When that happens, we normally ask for a report from an outside source. That source can be a consumer reporting agency or an insurance support organization. Both provide information in the form of consumer reports. Most insurance companies use these; it's a common industry practice.

Sometimes one of these outside sources needs to gather information before they can prepare an investigative consumer report. This could be done as part of a fraud investigation, for example. They might then contact you, another adult member of your household, or a neighbor by phone or in person. If this happens, you can, as the Named Insured, ask us to interview you or your spouse as well. We will make every effort to honor your request.

### What types of information do we collect?

**Auto** - While taking your application for insurance and to service policies covering your personal vehicles, we may obtain information about

* How you use your vehicle(s), including annual mileage
* Age, personal habits, and characteristics of drivers
* Credit information
* History of accidents, driving violations, arrests or convictions, and claims
* Previous insurance experience

**Property** - While taking your application for insurance and to service policies covering your real and personal property, we may obtain information about

* Type of construction and square footage of dwelling
* Heating system and other physical characteristics of the property
* Care and maintenance of the property
* Credit information
* Claims history
* Previous insurance experience
* Personal habits and characteristics of the property's occupants

25-8531   11-04                              *(Continued Next Page)*                              ABS31201




## What do we do with the information?

We use the information we collect about you to perform insurance functions. This includes

* Underwriting and servicing your policy
* Processing claims (we may obtain information relating to health and employment)
* Investigating potential fraud
* Other activities permitted by state and federal law

Here's an example: If you ask us to set up a payment by electronic funds transfer, we may obtain financial information for a particular bank account.

We may also disclose information to other parties. The law permits us to do this without your prior authorization when the information goes, for example, to these parties:

1. Your Farmers® agent - to service your policy.
2. Persons who need this information to perform normal business functions for us.
3. Persons conducting actuarial or research studies on our behalf.
4. Another insurance company or an insurance support organization - to perform an insurance transaction, or to detect or prevent criminal activity or fraud in connection with an insurance transaction.
5. A medical professional or medical care institution - to verify insurance coverage or benefits, or to inform an individual of a medical problem the individual may not know about.
6. An insurance regulatory authority.
7. Law enforcement or other governmental authority.
8. A group policyholder - to report claims experience or conduct an audit of our operations, but only as needed to conduct the review or audit.
9. Affiliates, as permitted by law. The law allows us to share your financial information with our affiliates to market products or services to you, and does not allow customers to restrict that disclosure.
10. Persons that perform marketing services on our behalf, as permitted by law.
11. Other non-affiliated third parties, as permitted by law.
12. A party to a proposed or consummated sale, transfer, merger, or consolidation of all or part of the company underwriting your policy.

An insurance support organization that prepares a report may keep information it gathers and disclose that information to other persons, but only to the extent permitted by federal and state law.

## How can you see or make corrections to your personal information?

You have these rights:

* To know what personal information about you we have in our records. That includes reports from outside sources.
* To get a copy of your personal information.
* To request that we correct, change, or remove any information you feel is incorrect.

To use these rights, you must send us a written request. Your Farmers® agent can give you the appropriate service center address.

If you request that we correct, change, or remove incorrect information, we'll check our records and make the changes if we can. We'll let you know in writing what we decide.

If we cannot make a change you asked for, you can file a statement. Write down the reasons you disagree with our decision. We'll include the statement in our records. That way, anyone who looks at the disputed personal information will also see your statement. From then on, if we disclose your information to another party, we'll include your statement. We will also send a copy to anyone who has gotten your personal information from us in the past two years. Just tell us who you would like us to send it to.

25-8531  11-04                          *(Continued Next Page)*                          A8531202

# Have you looked at your coverage lately?

Your Market Value policy provides you with affordable coverage for your home. However, as real estate values continue to appreciate nationwide, it's important for you to talk to your agent periodically so you can determine whether the amount of coverage you have selected is sufficient for your needs. Call your agent today!

25-4328 5-06

A4328101




# California Residential Property Insurance Bill of Rights

The largest single investment most consumers make is their home and related property. In order to best protect these assets, it is wise for consumers to understand the homeowner's insurance market. Consumers should consider the following:

Read your policy carefully and understand the coverage and limits provided. Homeowner's insurance policies contain sublimits for various coverages such as personal property, debris removal, additional living expense, detached fences, garages, etc.

Keep accurate records of renovations and improvements to the structure of your home, as it could affect your need to increase your coverage.

Maintaining a list of all personal property, pictures, and video equipment may help in the case of a loss. The list should be stored away from your home.

Comparison shop for insurance, as not all policies are the same and coverage and prices vary.

Take time to determine the cost to rebuild or replace your property in today's market. You can seek an independent evaluation of this cost.

You may select a licensed contractor or vendor to repair, replace, or rebuild damaged property covered by the insurance policy.

An agent or insurance company may help you establish policy limits that are adequate to rebuild your home.

Once the policy is in force, contact your agent or insurance company immediately if you believe your policy limits may be inadequate.

A consumer is entitled to receive information regarding homeowner's insurance. The following is a limited overview of information that your insurance company can provide:

The California Residential Property Insurance Disclosure.

An explanation of how your policy limits were established.

The insurance company's customer service telephone number for underwriting, rating, and claims inquiries.

An explanation for any cancellation or nonrenewal of your policy.

A copy of your policy.

The toll-free telephone number and Internet address for reporting complaints and concerns about homeowner's insurance issues to the department's consumer services unit.

In the event of a claim, an itemized, written scope of loss report prepared by the insurer or its adjuster within a reasonable time period.

In the event of a claim, notification of a consumer's rights with respect to the appraisal process for resolving claims disputes.

In the event of a claim, a copy of the Unfair Practices Act and a copy of the Fair Claims Practices Regulations.

This insurer reports claim information to one or more claims information databases. The claim information is used to furnish loss history reports to insurers. If you are interested in obtaining a report from a claims information database, you may do so by contacting:

- A-PLUS™ a division of ISO Services, Inc.
  1-800-709-8842

- ChoicePoint Consumer Services Center
  1-800-456-6004
  www.consumerdisclosure.com

The information provided herein is not all inclusive and does not negate or preempt existing California law. If you have any concerns or questions, the officers at our Consumer Hotline are there to help you. Please call them at 1-800-927-HELP (4357) or contact us at www.insurance.ca.gov.

25-2563  7-06

A2563201

POLICY NUMBER: 91.708-10-71

# Information We Used to Estimate the Reconstruction Cost Estimate for Your Home



We recommend that you contact MORRIS DAVIS JR INS SV INC your Farmers® agent, at 323-753-1161, to discuss your reconstruction estimate and make sure your home's special features and any improvements you have made are taken into account. Your agent can also explain any unfamiliar terms used in the estimate. The information used to estimate labor and material costs is periodically updated to keep pace with changes in normal market conditions. However, reconstruction cost estimating programs can neither anticipate abnormal market conditions nor keep up with rapidly changing costs. The reconstruction cost estimate can serve as a guide, but it is your responsibility to choose the Coverage A limit that is right for you. The Coverage A limit in your policy is the amount of insurance on your home.

| Coverage A Limit: $ 163,000 | Reconstruction Cost Estimate: $ 163,000 |
|---|---|
| Year Built: 1933 | ZIP Code: 90044 |

Square Footage: 1,200

The total square footage figure includes all floors of a multi-story dwelling and the square footage of a built-in garage. We say a garage is built in when 50% or more of the space above the garage is living area. IMPORTANT: The total square footage does NOT include any of the following: attached garage, attached carport, basement (even if fully-furnished), attached greenhouse or solar room, porch or breezeway, or detached structures.

| | |
|---|---|
| Style of home or number of stories | 2 STORIES |
| Foundation type | CEMENT SLAB (INCL. BASEMENTS) |
| Basement as a % of ground floor | 0% |
| Percent of basement that is finished | 0% |
| Walkout basement | NO |
| Roof type | ASPHALT SHINGLE |
| Is the roof of elaborate construction? | NO |
| Exterior balcony | NO |
| Percent of cathedral ceilings | 0% |
| Garage type | DETACHED |
| Interior wall construction | PLASTER |
| Number of units in this dwelling | 1 |

The next three categories—exterior walls, interior walls, and floor covering—all have four spaces with an assigned percentage. For each category, it's possible that the total of the percentages for all four spaces will not be 100% (That's because only the four predominant materials are listed).

| Exterior Walls | WOOD SIDING | 100% | | |
|---|---|---|---|---|
| Interior Wall Covering | PAINT | 100% | | |
| Floor Covering | CARPET | 95% | VINYL | 5% |

25-4250 6-05

A4250102



| Renewal premium | Balance or credit from prior invoice: | Total due: | Please pay by due date: |
|---|---|---|---|
| $ 568.52 | $ 0.00 | $ 568.52 | 01-20-07 |

*Offer of Renewal*
(This is the only notice prior to due date.)

*Thank you for your business!*

Optional payment (*See below)

$ 289.26

The Company will renew your policy for the term of 01-20-07 to 01-20-08, if payment of the premium is made on or before the due date. If payment is not received by the due date, your policy will not renew.

*To renew your policy, you may pay the premium or the optional payment amount above which includes a $5.00 service charge. The remaining balance is due 120 days from the due date above.

## Policy Information

Insurance provided by: NEIGHBORHOOD SPIRIT PROPERTY & CASUALTY COMPANY
Named insured:
Property location: 625 LACONIA BLVD
                   LOS ANGELES CA 90044

Policy number: 91708-10-71

| Description of coverages (See reverse for deductible) | Amount of insurance | Premium |
|---|---|---|
| Dwelling - Special Form Incl. | $ 148,000 | $ 333.49 |
| Contents | $ 50,000 | $ 121.33 |
| Separate Structures | $ 14,800 | Included |
| Rental Value | $ 14,800 | Included |
| Personal Liability | $ 700,000 | $ 42.00 |
| Other (See Policy) | | $ 5.00 |

Earthquake ---- Not Covered          Not Covered      Not Covered

Renewal premium $ 568.52

Agent: MORRIS DAVIS JR INS SV INC          Phone: (323) 753-1161
Agent's e-mail:  mdavis@farmersfaci.com

25-0952  12-04  Printed at: 11-29-06   Retain for your records - Offer of Renewal continues on reverse side.     A0952301

Morris Davis Jr Ins Sv Inc
2439 W Manchester Blvd
Inglewood CA 90305-2517

Please write your policy number on your check and return this invoice with payment. Your cancelled check is your receipt. Thank you!

*Invoice*

Make check payable to: NEIGHBORHOOD SPIRIT PROPERTY & CASUALTY COMPANY

| Policy number: 91708-10-71 | Please pay by: 01-20-07 | Total due: $ 568.52 | Optional payment: $ 289.26 |
|---|---|---|---|

For more information regarding your policy or bill, visit our web site at www.farmers.com
Agent number: 02-01-302

092302917081071056852028926 1

FARMERS INS GRP OF COS
PO BOX 89-4729
LOS ANGELES CA  90189-4729

JAMES CLARK
625 LACONIA BLVD
LOS ANGELES
CA                    90044

25-0952  12-04                                                    A0952301

Your premium is based on the following:

Policy type:
SPECIAL DWELLING POLICY

Deductible:
$500 DEDUCTIBLE

Discounts/Surcharges:

Construction type and year built:
FRAME CONST - YEAR CONSTRUCTION 33

Other rating factors:
PROTECTION CLASS 02 - PREMIUM GROUP 85

Other important information:
THE LIMIT OF LIABILITY FOR THIS STRUCTURE (COVERAGE A) IS BASED ON AN ESTIMATE OF THE COST TO
REBUILD YOUR HOME, INCLUDING AN APPROXIMATE COST FOR LABOR AND MATERIALS IN YOUR AREA, AND SPECIFIC
INFORMATION YOU HAVE PROVIDED ABOUT YOUR HOME.
THIS POLICY INCLUDES BUILDING ORDINANCE COVERAGE
EARTHQUAKE COVERAGE IS NOT PROVIDED UNDER THIS POLICY

This policy provides for only those coverages described in the policy. Coverages pertain to property
and liability if shown. There is no coverage for the payoff of the mortgage in the event of death of the
insured or spouse. If you do not have this valuable coverage, your Agent can help you in obtaining it.

For more information regarding your policy or bill, please contact your Farmers agent or visit
our web site at www.farmers.com. If you have a claim, call 1-800 HelpPoint® (435-7764).

Important Notice - You should consider the coverage limits we offer with this renewal and decide if you wish to make any
adjustments. We have calculated a reconstruction cost estimate for your home based on the information we have. The actual
cost to reconstruct your home (the Dwelling amount of insurance) may be different from the estimate. We recommend that
you contact your agent to discuss your reconstruction estimate and make sure your home's special features and any
improvements you have made are taken into account. Although we have already calculated the estimate, your agent can
fully explain all the options and give you an opportunity to provide new information that may affect the estimate.

If your policy contains a Value Protection Clause, we may have increased the limits of insurance for the dwelling, separate or
other structures, and/or personal property to keep pace with changes in construction costs. Whether or not your limits have
been increased, we recommend that you discuss the reconstruction estimate with your agent.

25-0952  12-04

A0952302

Page 1 of 4



POLICY NUMBER: 91708-10-71

# Make sure you're not *under*-insured.



NO
NO
NO

**Before**



The Fire!



100

After: Under-Insured

After: Property Insured

**ECONOMY**
FUNCTIONAL, ECONOMY KITCHEN THAT INCLUDES THE FOLLOWING:
16' BASE CABINETS WITH LAMINATE FINISH AND FORMICA COUNTERTOPS,
16' WALL CABINETS WITH LAMINATE; 1 RANGE WITH OVEN; 1 BASIC REFRIGERATOR,
1 DISHWASHER, 1 SINK STAINLESS STEEL WITH DOUBLE BOWL.

Dear

We want to help you choose the amount of coverage that is right for you. That's why we're making the extra effort to provide you with specific information about *your* house. Using the information in this notice, you can make sure the limit of insurance you choose for your home takes into account the construction, characteristics, and special features of your home.

**ECONOMY**

[faded text] ... the record about your house... with each renewal ... calculate a reconstruction cost ...

You can use the estimate as a guide to help you choose the amount of coverage you want for your home. If you don't have enough coverage, you could be under-insured. And if your house were totally destroyed, that could mean being unable to pay for complete reconstruction.

We can get you back where you belong . . . *if* you're properly insured.

And keep in mind: with Farmers, you have a personal agent to help you with your insurance program.

## Do we have current information about your home?

Current and complete information is the key to getting a good reconstruction cost estimate. Even if you haven't changed a thing about your home for years, it's still a good idea to check your information and make sure it's current and complete. And if you *have* made any changes . . .

## According to one recent study, 60% of homeowners who completed major changes to their homes did not update their Homeowners insurance policies.

Here's how it could have happened:

- Lemont added an upstairs bathroom.
- Luisa upgraded her 1930s kitchen with granite counters and new appliances.
- Bob and Judi turned their unfinished basement into an exercise room.
- Kim put a second floor on his ranch style home and gained 800 square feet.

*And because they didn't report those changes to their agents, they were under-insured!*

## Turn the page to start reviewing information about your house. 

7CA9D1 A.DC

Page 2 of 4


FARMERS

POLICY NUMBER: 708-10-71

# Information We Used to Estimate
# the Reconstruction Cost Estimate for Your Home



We recommend that you contact 1
your Farmers® agent, at                    , to discuss your reconstruction estimate and
make sure your home's special features and any improvements you have made are taken
into account. Your agent can also explain any unfamiliar terms used in the estimate. The
information used to estimate labor and material costs is periodically updated to keep pace
with changes in normal market conditions. However, reconstruction cost estimating
programs can neither anticipate abnormal market conditions nor keep up with rapidly
changing costs. The reconstruction cost estimate can serve as a guide, but it is your
responsibility to choose the Coverage A limit that is right for you. The Coverage A limit in
your policy is the amount of insurance on your home.

| Coverage A Limit: | Reconstruction Cost Estimate: |
|---|---|
| Year Built: | ZIP Code: |

Square Footage:

The total square footage figure includes all floors of a multi-story dwelling and the square footage of a built-in garage. We say a garage is built in when 50% or more of the space above the garage is living area. IMPORTANT: The total square footage does NOT include any of the following: attached garage, attached carport, basement (even if fully furnished), attached greenhouse or solar room, porch or breezeway, or detached structures.

| | |
|---|---|
| Style of home or number of stories | |
| Foundation type | |
| Basement as a % of ground floor | % |
| Percent of basement that is finished | % |
| Walkout basement | |
| Roof type | |
| Is the roof of elaborate construction? | |
| Exterior balcony | |
| Percent of cathedral ceilings | % |
| Garage type | |
| Interior wall construction | |
| Number of units in this dwelling | |

The next three categories   exterior walls, interior walls, and floor covering   all have four spaces with an assigned percentage. For each category, it's possible that the total of the percentages for all four spaces will not be 100% (That's because only the four predominant materials are listed).

| Exterior Walls | | | | |
|---|---|---|---|---|
| | | | | |
| Interior Wall Covering | | | | |
| | | | | |
| Floor Covering | | | | |
| | | | | |

25-4250 6-05

Page 3 of 4



**FARMERS**

POLICY NUMBER: 91708-10-71

## Construction Techniques and Materials

| Modern | |
| --- | --- |
| Vintage, Typical of Era of Home Design | |

## Special Conditions

| | Description | % of Total |
| --- | --- | --- |
| Wall Height | 8 foot | % |
| | 9 foot | % |
| | 10 foot | % |
| Wall Framing | Wood | % |
| | Steel | % |
| | Other | % |

## Alarm or Sprinkler System

| Local Fire/Smoke Alarm | |
| --- | --- |
| Local Electronic Burglar Alarm | |
| Central Station Burglar/Fire Alarm | |
| Full Sprinkler System | |
| Partial Sprinkler System | |

## Kitchen Grade for this Dwelling:

There are four possible kitchen grade categories: Economy, Standard, Custom, and Luxury. Your grade is based on the following general description:

– A kitchen that typically includes the following:

## Number and Grade of Full Baths and Number of Half Baths in this Dwelling:

There are four possible bath grades (shown in the table at right), but we apply only the two predominant grades for any one home. The grade(s) applied to your home are based on the following general descriptions.

For more information about kitchen and bath grades, please contact your Farmers Agent.

| Luxury | |
| --- | --- |
| Custom | |
| Standard | |
| Economy | |
| Half Baths | |

-A bath that typically includes the following:

-A bath that typically includes the following:

Additional building features that may affect estimated reconstruction cost are listed below. Items included in your dwelling are indicated by an 'X' in the first section of the table and by a number in the second section (on the following page).

| Additional Furnace | | Intercom System | |
| --- | --- | --- | --- |
| Air Conditioning | | Jacuzzi | |
| Attached Carport | | Metal Spiral Stairs | |
| Open Breezeway | | Patio Cover | |
| Screened Breezeway | | Porch, Open | |
| Composite Deck | | Porch, Screened | |
| Central Stereo System | | Redwood Deck | |
| Central Vacuum | | Solar Room | |
| Greenhouse | | Wood Deck | |
| Hot Tub | | Wood Spiral Staircase | |

154250 6-05

Page 4 of 4





FARMERS

POLICY NUMBER:    91708-10-71

| Item Description | Number | Item Description | Number |
|---|---|---|---|
| Atrium Windows | | Picture Window | |
| Bay Windows | | Skylights | |
| Exterior Shutters | | Sliding Glass Doors | |
| Fireplaces | | MORRIS & MARTENSON INS SV INC | |
| Evaporative Coolers | (323) 753-1161 | Stained Glass Windows | |
| French Doors | | Wet Bar | |

Thank you for reviewing the information this notice provides about your home. It is important because the amount of insurance coverage you choose should closely match the actual cost of rebuilding your home. Our underwriting rules for most states require that your policy have a Coverage A limit at least equal to the reconstruction cost estimate. You may choose a Coverage A limit higher than the estimate, or you have the option to reduce the limit to an amount equal to the estimate.

## Reconstruction costs change over time.    148,000

Here are some things to keep in mind as you choose your Coverage A limit:

* Contact your Farmers® agent. Your agent will be glad to work with you to make sure we have all the information we need for the reconstruction cost estimate. Make sure the information we have is current and complete and tell your agent about any improvements, upgrades, or additions you've made to your home.

* Understand that reconstruction cost is not the same as market value, or what you paid for your home, or the cost of a similar new tract home. And . . . reconstruction cost changes over time, typically increasing year by year.

1933
90044
$231,000
CEMENT SLAB (INCL. BASEMENTS)

NO
ASPHALT SHINGLE

NO

TIME

## Additional coverages may be right for you.
DETACHED

You may want to ask your agent if your policy has "extended replacement cost" coverage. Under this coverage and subject to its provisions, we pay to repair or replace a loss covered under Coverage A up to 125% of the Coverage A limit. If your policy does not have this coverage, you may be able to add it for an additional premium.

WOOD SIDING
100%

Many policies have limited Building Ordinance or Law coverage to pay for additional costs that result from having to rebuild in compliance with updated building codes. You may be able to increase the amount of this coverage for additional premium. Please contact your agent to discuss availability.

PAINT    100%

If you have questions about anything in this notice or would like to discuss your coverage, please call your Farmers® agent. Thank you for choosing Farmers. We appreciate your business.

CARPET    95%    VINYL    5%

25-4250 6-05

There are some types of information for which these rights do not apply:

° Information we collect to process an actual or anticipated claim

° Information we collect for an actual or anticipated civil or criminal proceeding

° Specific items of privileged information when an applicant or policyholder is suspected of fraud, material misrepresentation, or material nondisclosure

## We'll keep you informed.

As required by law, we will keep you up to date on our information practices. We reserve the right to modify our practices at any time, when permitted by law.

The Fair Credit Reporting Act requires us to let you know we may make an investigation about any of these that apply: character, general reputation, personal characteristics, and mode of living. You can, within a reasonable time after you receive this notice, write to us for more information about such an investigation. We'll send it to you.

If you have questions about this notice, please call your Farmers® agent.

This notice is sent on behalf of the Farmers Insurance Group of Companies, whose members include, but are not limited to:

Farmers Insurance Exchange, Fire Insurance Exchange, Truck Insurance Exchange, Mid-Century Insurance Company, Farmers New Century Insurance Company, Farmers Insurance Company, Inc. (A Kansas Corp.), Farmers Insurance Company of Arizona, Farmers Insurance Company of Idaho, Farmers Insurance Company of Oregon, Farmers Insurance Company of Washington, Farmers Insurance of Columbus, Inc., Farmers Texas County Mutual Insurance Company, Illinois Farmers Insurance Company, Mid-Century Insurance Company of Texas, Texas Farmers Insurance Company, Civic Property and Casualty Company, Exact Property and Casualty Company, and Neighborhood Spirit Property and Casualty Company.

THIS PAGE LEFT
INTENTIONALLY BLANK.

## NOTICE OF INFORMATION PRACTICES
### CALIFORNIA

### Why did we send you this notice?

The State of California requires all insurance companies to tell customers about their information practices. Information practices include things companies do to gather and share information about customers. Insurance companies need information to make decisions. They make all sorts of day-to-day decisions: who to insure, how much to charge, how to handle claims, and others.

### What are your rights?

Our information practices extend to applicants and policyholders (past and present). State and federal laws give you certain rights when you take part in transactions having to do with insurance for yourself, your family, or your household.

We send our customers a notice called the "Farmers Privacy Notice." The Farmers Privacy Notice does not limit any rights you may have - as a consumer, claimant, or beneficiary. Your state gives you additional protections. They are explained in this notice.

### How do we collect the information?

You give us most of the information we need when you apply for insurance. Much of it is made up of common, practical facts: your employment information, your driving record, your age, where you live, and other things like that. Many times, we need more information. Or we may need to verify information you've given us. When that happens, we normally ask for a report from an outside source. That source can be a consumer reporting agency or an insurance support organization. Both provide information in the form of consumer reports. Most insurance companies use these; it's a common industry practice.

Sometimes one of these outside sources needs to gather information before they can prepare an investigative consumer report. This could be done as part of a fraud investigation, for example. They might then contact you, another adult member of your household, or a neighbor by phone or in person. If this happens, you can, as the Named Insured, ask us to interview you or your spouse as well. We will make every effort to honor your request.

### What types of information do we collect?

**Auto** - While taking your application for insurance and to service policies covering your personal vehicles, we may obtain information about

° How you use your vehicle(s), including annual mileage
° Age, personal habits, and characteristics of drivers
° Credit information
° History of accidents, driving violations, arrests or convictions, and claims
° Previous insurance experience

**Property** - While taking your application for insurance and to service policies covering your real and personal property, we may obtain information about

° Type of construction and square footage of dwelling
° Heating system and other physical characteristics of the property
° Care and maintenance of the property
° Credit information
° Claims history
° Previous insurance experience
° Personal habits and characteristics of the property's occupants

25-8531   11-04                    *(Continued Next Page)*                    A8531201

### What do we do with the information?

We use the information we collect about you to perform insurance functions. This includes

- Underwriting and servicing your policy
- Processing claims (we may obtain information relating to health and employment)
- Investigating potential fraud
- Other activities permitted by state and federal law

Here's an example: If you ask us to set up a payment by electronic funds transfer, we may obtain financial information for a particular bank account.

We may also disclose information to other parties. The law permits us to do this without your prior authorization when the information goes, for example, to these parties:

1. Your Farmers® agent – to service your policy.
2. Persons who need this information to perform normal business functions for us.
3. Persons conducting actuarial or research studies on our behalf.
4. Another insurance company or an insurance support organization – to perform an insurance transaction, or to detect or prevent criminal activity or fraud in connection with an insurance transaction.
5. A medical professional or medical care institution – to verify insurance coverage or benefits or to inform an individual of a medical problem the individual may not know about.
6. An insurance regulatory authority.
7. Law enforcement or other governmental authority.
8. A group policyholder – to report claims experience or conduct an audit of our operations, but only as needed to conduct the review or audit.
9. Affiliates, as permitted by law. The law allows us to share your financial information with our affiliates to market products or services to you, and does not allow customers to restrict that disclosure.
10. Persons that perform marketing services on our behalf, as permitted by law.
11. Other non-affiliated third parties, as permitted by law.
12. A party to a proposed or consummated sale, transfer, merger, or consolidation of all or part of the company underwriting your policy.

An insurance support organization that prepares a report may keep information it gathers and disclose that information to other persons, but only to the extent permitted by federal and state law.

### How can you see or make corrections to your personal information?

You have these rights:

- To know what personal information about you we have in our records. That includes reports from outside sources.
- To get a copy of your personal information.
- To request that we correct, change, or remove any information you feel is incorrect.

To use these rights, you must send us a written request. Your Farmers® agent can give you the appropriate service center address.

If you request that we correct, change, or remove incorrect information, we'll check our records and make the changes if we can. We'll let you know in writing what we decide.

If we cannot make a change you asked for, you can file a statement. Write down the reasons you disagree with our decision. We'll include the statement in our records. That way, anyone who looks at the disputed personal information will also see your statement. From then on, if we disclose your information to another party, we'll include your statement. We will also send a copy to anyone who has gotten your personal information from us in the past two years. Just tell us who you would like us to send it to.

| | Renewal premium: | Balance or credit from prior invoice: | Total due: | Please pay by due date: |
|---|---|---|---|---|
| | $ 1,218.34 | $ 199.43 | $1,417.77 | 06-18-09 |

*Offer of Renewal*
(This is the only notice prior to due date.) — *Thank you for your business!*

Optional payment
(*See below)
$ 713.88

The Company will renew your policy for the term of 06-18-09 to 06-18-10, if payment of the premium is made on or before the due date. If payment is not received by the due date, your policy will not renew.

*To renew your policy, you may pay the premium or the optional payment amount above which includes a $5.00 service charge. The remaining balance is due 120 days from the due date above.

## Policy Information

Insurance provided by: NEIGHBORHOOD SPIRIT PROPERTY & CASUALTY COMPANY
Named insured: JAMES CLARK                   Policy number: 91708-10-71
Property location: 625 LACONIA BLVD                   Loan number:
LOS ANGELES CA 90044-3839                   502197213

| Description of coverages (See reverse for deductible) | Amount of insurance | Premium |
|---|---|---|
| Dwelling - Special Form Incl. | $ 353,000 | $ 756.59 |
| Contents | $ 50,000 | $ 134.03 |
| Separate Structures | $ 55,300 | $ 47.40 |
| Rental Value | $ 55,300 | $ 82.00 |
| Additional Living Expense | $ 89,700 | Included |
| Personal Liability | $ 100,000 | $ 42.00 |
| Building Ordinance Or Law | | $ 151.32 |
| Other (See Policy) | | $ 5.00 |
| Earthquake - - - - Not Covered | Not Covered | Not Covered |
| | Renewal premium | $ 1,218.34 |

Agent: MORRIS DAVIS JR INS SV INC                   Phone: (323) 753-1161
Agent's e-mail: mdavis@farmersfact.com

25-0952  3-07  Printed on: 04-27-09    Retain for your records - Offer of Renewal continues on reverse side.    A0952901

Morris Davis/g Jr Ins Sv Inc
2439 W Manchester Blvd
Inglewood CA 90305-2517

*Invoice*

Please write your policy number on your check and return this invoice with payment. Your canceled check is your receipt. Thank You!

TO PAY WITH YOUR CREDIT /DEBIT CARD, PLEASE CONTACT YOUR AGENT.

VISA

Make check payable to: NEIGHBORHOOD SPIRIT PROPERTY & CASUALTY COMPANY

| Policy number: 91708-10-71 | Please pay by: 06-18-09 | Total due: $1,417.77 | Optional payment: $ 713.88 |
|---|---|---|---|

You can now pay your bill and view your policy online, see details at www.farmers.com

Agent Number: 02-01-302

0413025170810711417770713883

JAMES CLARK
625 LACONIA BLVD
LOS ANGELES CA 90044-3839

FARMERS INS GRP OF COS
PO BOX 894729
LOS ANGELES CA 90189-4729





Your premium based on the following:

Policy type:
SPECIAL DWELLING POLICY

Deductible:
$500 DEDUCTIBLE

Discounts/Surcharges:

Construction type and year built:
FRAME CONST - YEAR CONSTRUCTION 33

Other rating factors:
PROTECTION CLASS 02 - PREMIUM GROUP 85

Other important information:
THE LIMIT OF LIABILITY FOR THIS STRUCTURE (COVERAGE A) IS BASED ON AN ESTIMATE OF THE COST TO
REBUILD YOUR HOME, INCLUDING AN APPROXIMATE COST FOR LABOR AND MATERIALS IN YOUR AREA, AND SPECIFIC
INFORMATION YOU HAVE PROVIDED ABOUT YOUR HOME.
THIS POLICY INCLUDES BUILDING ORDINANCE COVERAGE
EARTHQUAKE COVERAGE IS NOT PROVIDED UNDER THIS POLICY

This policy provides for only those coverages described in the policy. Coverages pertain to property
and liability if shown. There is no coverage for the payoff of the mortgage in the event of death of the
insured or spouse. If you do not have this valuable coverage, your Agent can help you in obtaining it.

For more information regarding your policy or bill, please contact your Farmers agent or visit
our web site at www.farmers.com. If you have a claim, call 1-800 HelpPoint® (435-7764).

**Important Notice** - You should consider the coverage limits we offer with this renewal and decide if you wish to make any
adjustments. We have calculated a reconstruction cost estimate for your home based on the information we have. The actual
cost to reconstruct your home (the Dwelling amount of insurance) may be different from the estimate. We recommend that
you contact your agent to discuss your reconstruction estimate and make sure your home's special features and any
improvements you have made are taken into account. Although we have already calculated the estimate, your agent can
fully explain all the options and give you an opportunity to provide new information that may affect the estimate.

25-0952 3-07                                                                                                          A0J57592




REGARDING YOUR POLICY NUMBER: 91708-10-71
NOT AN ADVERTISEMENT – PLEASE READ CAREFULLY

Additional Building Features:

| | | | | | |
|---|---|---|---|---|---|
| Additional Furnace | | Evaporative Coolers | | Porch (screened) | |
| Air Conditioning Unit | | Exterior Shutters | | Picture Window | |
| Atrium Window | | Fireplaces | 1 | Skylights | |
| Attached Carport | | French Doors | | Sliding Glass Doors | |
| Bay Windows | | Greenhouse | | Solar Panels | |
| Breezeway (closed) | | Hot Tub (built-in) | | Solar Room | |
| Breezeway (open) | | Intercom System | | Spiral Staircase (metal) | |
| Central Stereo System | | Jacuzzi | | Spiral Staircase (wood) | |
| Central Vacuum | | Patio Cover | | Stained Glass Windows | |
| Deck – wood or composite | | Porch (open) | | Wet Bar | |

### Definition of Terms and Additional Options

| Term | Definition and Additional Options |
|---|---|
| Coverage A Limit: | The stated limit on your policy for the dwelling. |
| Reconstruction Cost Estimate: | The estimated cost to rebuild your home. This may be higher or lower than its market value. |
| Ratio of Coverage A Limit / Reconstruction Cost Estimate: | If you select a Coverage A limit higher or lower than the reconstruction cost estimate (the option to select a lower limit may not be available in your state), this ratio is established by comparing the two figures, with a ratio of 1.00 meaning the Coverage A amount equals the reconstruction cost estimate. We will maintain this ratio going forward, unless you notify us in writing if you wish to change the Coverage A limit. |
| Year Built: | The year the home was originally constructed. |
| Square Footage: | The total square footage figure includes all floors of a multi-story dwelling and the square footage of a built-in garage. We say a garage is "built in" when it is part of the building structure of the dwelling and any space above the garage is used 50% or more as living area. IMPORTANT: The total square footage does NOT include any of the following: attached garage without at least 50% living space above it, attached carport, basement (even if fully finished), attached greenhouse or solar room, porch or breezeway, decks, or detached structures. |
| Style or Number of Stories: | e.g. Bi-Level, Ranch, Split-Level, Tri-Level, Victorian, or 1, 1.5 , 2, 2.5 or 3 Story Home. |
| Foundation Type: | e.g. Slab, Basement, Pier and Beam. |
| Foundation Shape: | e.g. Square, Rectangular, Irregular (7-11 corners), Very Irregular (more than 11 corners). |
| Basement % of Ground Floor: | The percent of the ground floor that has a basement beneath it. |
| % of Basement that is Finished: | The percent of the basement that is finished. |
| Walkout Basement: | Basements that allow doors to open into the yard because the basement is at ground level. |
| Roof Material: | e.g. Asphalt Shingle, Clay Tile, Cement Tile, Copper, Slate, Synthetic, Wood Shingle/Shake, Rock/Tar, Rubber, Metal, Victorian Scalloped Shake. |
| Elaborate Roof Construction: | Combination of different roof styles that create peaks and valleys or a large number of dormers built into a standard roof. |

REGARDING YOUR POLICY NUMBER: 91708-10-71
NOT AN ADVERTISEMENT - PLEASE READ CAREFULLY

#### Definition of terms and Additional Options (continued)

| | |
|---|---|
| Exterior Balcony: | Wooden platform, with railing, that projects from home's exterior wall. No exterior steps/stairway. |
| % Cathedral Ceilings: | Ceiling that angles upward from walls to peak, following roof's pitch. |
| Garage Type: | 1-3 car Built-in (living area covers at least 50% of the ceiling) and 1-4 car Attached |
| Interior Wall Material: | Drywall or Plaster. |
| Number of Units: | e.g. 2 units in a duplex or 4 units in a four-plex. |
| Modern or Vintage Construction: | Vintage construction applies to homes built to standards and materials typical pre-1940, such as elaborate finish, woodwork, plaster walls, 2 x 6 framing and higher ceilings. |
| Alarm System Type: | Local Fire / Smoke Alarm, Local Electronic Burglar Alarm, or Central Station Burglar/Fire Alarm. |
| Sprinkler System Type: | Full or Partial Sprinkler System. |
| Wall Height: | % of walls that are 8, 9 and 10 foot high. |
| Wall Framing: | % of Wall Framing that is Wood, Steel or Other material. |
| Kitchen Quality Grade: | Basic (Economy): Lowest cost materials and fixtures. Builders Grade (Standard): Common to new tract construction. Upgraded (Custom): Remodeled or upgraded from typical tract construction. Luxury (High-End): Highest quality materials and fixtures. Common in "high value" homes. |
| Number of Baths by Quality Grade: | Number of Basic (Economy), Builders Grade (Standard), Upgraded (Custom) or High End (Luxury) baths. |
| Additional Building Features: | Number of: Additional Furnaces, A/C units, Fireplaces, Evaporative Coolers, Solar Panels, Attached Carport, Open or Closed Breezeway, Composite/Redwood/Wood Deck, Open or Screened Porch, Patio Cover Greenhouse, Solar Room, Atrium/Bay/Picture/Stained Glass Windows, Exterior Shutters, Skylights, Built-in Hot Tub, Jacuzzi, French/Sliding Glass Doors, Central Stereo/Vacuum System, Intercom System, Wet Bar and Metal/Wood Spiral Staircase. |

#### Additional coverages may be right for you.

Extended Replacement Cost coverage. Under this coverage and subject to its provisions, we pay to repair or replace a loss covered under Coverage A up to 125% or 150% of the Coverage A limit, depending on the option you select. If your policy does not have this coverage, you may be able to add it for an additional premium.

Building Ordinance or Law coverage. Many policies have limited Building Ordinance or Law coverage to pay for additional costs that result from having to rebuild in compliance with updated building codes. You may be able to increase the amount of this coverage for additional premium. Please contact me to discuss availability.

Page 1 of 4


FARMERS

REGARDING YOUR POLICY NUMBER: 91708-10-71

NOT AN ADVERTISEMENT – PLEASE READ CAREFULLY

> **THE FOLLOWING PAGES CONTAIN INFORMATION FARMERS® HAS ABOUT YOUR HOME. PLEASE REVIEW THIS INFORMATION CAREFULLY.**

**Your policy provides $141 per square foot to rebuild your home. (This figure does not reflect any additional amounts added by extension or endorsement to your policy). You may know details about your home that are not reflected in this estimate. Please take this opportunity to make sure this is adequate coverage to rebuild your home.**

According to a leading provider of building replacement cost estimates, as many as 66% of homes are underinsured. This means these homes will not have enough coverage to rebuild if they were completely destroyed. The amount indicated above may also not provide enough coverage to rebuild your home.

With each renewal offer of your policy, Farmers® uses an estimating program to calculate a reconstruction cost estimate for your home. We encourage you to review this estimate at every renewal, check that the details we have about your home are correct and let us know of anything unique about your home that would affect the reconstruction cost. Please keep in mind that this is only an estimate not a guarantee. Your policy does not provide **Guaranteed Replacement Cost** coverage.

Here are some things to consider when you determine how much coverage you need for your home:

* Is the square footage accurate?
* Have you remodeled or added to your kitchen, bathroom or any other part of your home?
* Have you considered special features like French doors, granite counter tops, crown molding, wood floors or other luxury contents?

Even if you haven't changed anything about your home, you still need to check the information to make sure it is accurate and complete to get the best estimate possible.

You may accept our estimate as it is or change it. The main thing to consider is that reconstruction cost is the amount it would cost to rebuild your home. It is not the same as the market value or what you paid for your home.

While I can provide guidance as to the coverage options available, it is ultimately your responsibility to make sure you have purchased sufficient coverage to rebuild your home and replace your personal property. I cannot choose your coverage amounts for you.

As your Farmers Agent, I am committed to servicing your insurance needs. Please contact my office to set up a free Farmers Friendly Review of your policies. As always, I am available to answer any questions you may have regarding your policy.

Please give me a call at (323) 753-1161 to review your policy.

Sincerely,

MORRIS DAVIS JR INS SV INC




REGARDING YOUR POLICY NUMBER: 91708-10-71
NOT AN ADVERTISEMENT - PLEASE READ CAREFULLY

### Information We Used to Estimate the Reconstruction Cost for your Home.

| | |
|---|---|
| Coverage A Limit: | $    353,000 |
| Reconstruction Cost Estimate: | $    353,000 |
| Ratio of Coverage A Limit to Reconstruction Cost Estimate: | 100 % |
| ZIP Code: | 90044 |
| Year Built: | 1933 |
| Square Footage: | 2,500 |
| Style or Number of Stories: | 2 STORIES |
| Foundation Type: | CEMENT SLAB (INCL. BASEMENTS) |
| Foundation Shape: | RECTANGULAR |
| Basement as a % of Ground Floor: | 0 % |
| % of Basement that is Finished: | 0 % |
| Walkout Basement: | NO |
| Roof Material: | ASPHALT SHINGLE |
| Elaborate Roof Construction: | NO |
| Exterior Balcony: | NO |
| % Cathedral Ceilings: | 0 % |
| Garage Type: | DETACHED |
| Interior Wall Material: | PLASTER |
| Number of Units: | 1 |
| Modern or Vintage Construction: | MODERN |
| Alarm System Type: | |
| Sprinkler System Type: | |
| Wall Height: | 8 FT. 100% |
| Wall Framing: | WOOD 100% |
| Kitchen Quality Grade: | BASIC (ECONOMY) |
| Number of Basic (Economy) Bath: | 4 |
| Number of Builders Grade (Standard)) Bath: | 0 |
| Number of Upgraded (Custom) Bath: | 0 |
| Number of High End (Luxury) Bath: | 0 |

The next three categories  -exterior walls, interior walls, and floor covering-- all have four spaces with an assigned percentage. For each category, it's possible that the total of the percentages for all four spaces will not be 100%. (That's because only the four predominant materials are listed).

| Exterior Walls | WOOD SIDING | 100% | | |
|---|---|---|---|---|
| Interior Wall Covering | PAINT | 100% | | |
| Floor Covering | CERAMIC TILE | 5% | CARPET | 5% |
| | HARDWOOD | 90% | | |

Policy Number: 91708-10-71

# Farmers® Privacy Notice

*In the course of our business relationship with you, we collect information about you that is necessary to provide you with our products and services. We treat this information as confidential and recognize the importance of protecting it in us. We value your confidence in us.*

You trust us with an important part of your financial life. We are proud of our privacy policies and procedures and encourage you to review them carefully.

This notice from the member companies of the Farmers Insurance Group of Companies    listed on the back of this notice* describes our privacy practices regarding information about our customers and former customers that obtain financial products or services from us for personal, family or household purposes. *When state law is more protective of individuals than federal privacy law, we will protect information in accordance with state law consistent with the requirements of federal preemption.*

## Information we collect

We collect and maintain information about you to provide you with the coverage, product or service you request and to service your account.

We collect certain information ("nonpublic personal information") about you and the members of your household ("you") from the following sources:



- Information we receive from you on applications or other forms, such as your social security number, assets, income and property information;
- Information about your transactions with us, our affiliates or others, such as your policy coverage, premiums and payment history;
- Information we receive from a consumer reporting agency or insurance support organization, such as motor vehicle records, credit report information and claims history; and
- If you obtain a life, long-term care or disability product, information we receive from you, medical professionals who have provided care to you and insurance support organizations regarding your health.

## How we protect your information

At Farmers, our customers are our most valued assets. Protecting your privacy is important to us. We restrict access to personal information about you to those individuals, such as our employees and agents, who provide you with our products and services. We require those individuals to whom we permit access to your customer information to protect it and keep it confidential. We maintain physical, electronic, and procedural safeguards that comply with applicable regulatory standards to guard your nonpublic personal information.

We do not disclose any nonpublic personal information about you, as our customer or former customer, except as described in this notice.

## Information we disclose

We may disclose the nonpublic personal information we collect about you, as described above, to companies that perform marketing services on our behalf or to other financial institutions with which we have joint marketing agreements and to other third parties, all as permitted by law.

Many employers, benefit plans or plan sponsors restrict the information that can be shared about their employees or members by companies that provide them with products or services. If you have a relationship with Farmers or one of its affiliates as a result of products or services provided through an employer, benefit plan or plan sponsor, we will abide by the privacy restrictions imposed by that organization.

We are permitted to disclose personal health information (1) to process your transaction with us, for instance, to determine eligibility for coverage, to process claims or to prevent fraud; (2) with your written authorization, and (3) otherwise as permitted by law.

## Sharing information with affiliates

The Farmers family encompasses various affiliates that offer a variety of financial products and services in addition to insurance. Sharing information enables our affiliates to offer you a more complete range of products and services.

We may disclose nonpublic personal information, as described under Information we collect, to our affiliates, which include:

- Financial service providers such as insurance companies and reciprocals, investment companies, underwriters and brokers/dealers; and





⊠ Non-financial service providers, such as management companies, attorneys-in-fact and billing companies.

We are permitted by law to share with our affiliates our transaction and experience information with you.

In addition, we may share with our affiliates consumer report information, such as information from credit reports and certain application information, that we have received from you and from third parties, such as consumer reporting agencies and insurance support organizations.

## Your choice

If it is your decision not to opt-out and to allow sharing of your information with our affiliates, you do not need to request an Opt-Out Form or respond to us in any way.

If you have previously submitted a request to opt-out on each of your policies, no further action is required.

If you prefer that we not share consumer report information with our affiliates, except as otherwise permitted by law, you may request an Opt-Out Form by calling tollfree, 1-866-813-7551, (please have all of your policy numbers available when requesting Opt-Out Forms). A form will be mailed to your attention. Please verify that all of your Farmers policy numbers are listed. If not, please add the policy numbers on the form and mail to the return address printed on the form. We will implement your request within a reasonable time after we receive the form.

## Modifications to our privacy policy

We reserve the right to change our privacy practices in the future, which may include sharing nonpublic personal information about you with nonaffiliated third parties. Before we do that, we will provide you with a revised privacy notice and give you the opportunity to opt-out of that type of information sharing.

## Website

Our website privacy notices, such as the one located at farmers.com, contain additional information particular to website use. Please pay careful attention to those notices if you transmit personal information to Farmers over the Internet.

## Recipients of this notice

We are providing this notice to the named policyholder residing at the mailing address to which we send your policy information. If there is more than one policyholder on a policy, only the named policyholder on that policy will receive this notice, though any policyholder may request a copy of this notice. You may receive more than one copy of this notice if you have more than one policy with Farmers. You also may receive notices from affiliates, other than those listed below. Please read those notices carefully to determine your rights with respect to those affiliates' privacy practices.

## More information about the federal laws

This notice is required by federal law. If you would like additional information about these federal laws, please visit our website at farmers.com.

## Signed:

Farmers Insurance Exchange, Fire Insurance Exchange, Truck Insurance Exchange, Mid-Century Insurance Company, Farmers Insurance Company, Inc. (A Kansas Corp); Farmers Insurance Company of Arizona, Farmers Insurance Company of Idaho, Farmers Insurance Company of Oregon, Farmers Insurance Company of Washington, Farmers Insurance of Columbus, Inc.; Farmers New Century Insurance Company, Farmers Group, Inc.; Farmers Insurance Agency, Farmers Services Insurance Agency, Farmers Services Corporation, Farmers Texas County Mutual Insurance Company, Farmers Underwriters Association, Farmers Value Added, Inc.; Farmers Financial Solutions, LLC; FFS Holding, LLC; Farmers Services, LLC; ZFUS Services, LLC; Leschi Life Assurance Company, FIG Holding Company, FIG Leasing Co., Inc.; Fire Underwriters Association, Illinois Farmers Insurance Company, Mid-Century Insurance Company of Texas, Prematic Service Corporation (California), Prematic Service Corporation (Nevada), Texas Farmers Insurance Company, Farmers New World Life Insurance Company, Truck Underwriters Association, Civic Property and Casualty Company, Exact Property and Casualty Company and Neighborhood Spirit Property and Casualty Company.

*The above is a list of the affiliates on whose behalf this privacy notice is being provided. It is not a comprehensive list of all affiliates of the Farmers Insurance Group of Companies.




There are some types of information for which these rights do not apply:

* Information we collect to process an actual or anticipated claim
* Information we collect for an actual or anticipated civil or criminal proceeding
* Specific items of privileged information when an applicant or policyholder is suspected of fraud, material misrepresentation, or material nondisclosure

## We'll keep you informed.

As required by law, we will keep you up to date on our information practices. We reserve the right to modify our practices at any time, when permitted by law.

The Fair Credit Reporting Act requires us to let you know we may make an investigation about any of these that apply: character, general reputation, personal characteristics, and mode of living. You can, within a reasonable time after you receive this notice, write to us for more information about such an investigation. We'll send it to you.

If you have questions about this notice, please call your Farmers® agent.

This notice is sent on behalf of the Farmers Insurance Group of Companies, whose members include, but are not limited to:

Farmers Insurance Exchange, Fire Insurance Exchange, Truck Insurance Exchange, Mid-Century Insurance Company, Farmers New Century Insurance Company, Farmers Insurance Company, Inc. (A Kansas Corp.), Farmers Insurance Company of Arizona, Farmers Insurance Company of Idaho, Farmers Insurance Company of Oregon, Farmers Insurance Company of Washington, Farmers Insurance of Columbus, Inc., Farmers Texas County Mutual Insurance Company, Illinois Farmers Insurance Company, Mid-Century Insurance Company of Texas, Texas Farmers Insurance Company, Civic Property and Casualty Company, Exact Property and Casualty Company, and Neighborhood Spirit Property and Casualty Company.

THIS PAGE LEFT
INTENTIONALLY BLANK.




## NOTICE OF INFORMATION PRACTICES
### CALIFORNIA

### Why did we send you this notice?

The State of California requires all insurance companies to tell customers about their information practices. Information practices include things companies do to gather and share information about customers. Insurance companies need information to make decisions. They make all sorts of day-to-day decisions: who to insure, how much to charge, how to handle claims, and others.

### What are your rights?

Our information practices extend to applicants and policyholders (past and present). State and federal laws give you certain rights when you take part in transactions having to do with insurance for yourself, your family, or your household.

We send our customers a notice called the "Farmers Privacy Notice." The Farmers Privacy Notice does not limit any rights you may have -- as a consumer, claimant, or beneficiary. Your state gives you additional protections. They are explained in this notice.

### How do we collect the information?

You give us most of the information we need when you apply for insurance. Much of it is made up of common, practical facts: your employment information, your driving record, your age, where you live, and other things like that. Many times, we need more information. Or we may need to verify information you've given us. When that happens, we normally ask for a report from an outside source. That source can be a consumer reporting agency or an insurance support organization. Both provide information in the form of consumer reports. Most insurance companies use these; it's a common industry practice.

Sometimes one of these outside sources needs to gather information before they can prepare an investigative consumer report. This could be done as part of a fraud investigation, for example. They might then contact you, another adult member of your household, or a neighbor by phone or in person. If this happens, you can, as the Named Insured, ask us to interview you or your spouse as well. We will make every effort to honor your request.

### What types of information do we collect?

**Auto -** While taking your application for insurance and to service policies covering your personal vehicles, we may obtain information about

* How you use your vehicle(s), including annual mileage
* Age, personal habits, and characteristics of drivers
* Credit information
* History of accidents, driving violations, arrests or convictions, and claims
* Previous insurance experience

**Property -** While taking your application for insurance and to service policies covering your real and personal property, we may obtain information about

* Type of construction and square footage of dwelling
* Heating system and other physical characteristics of the property
* Care and maintenance of the property
* Credit information
* Claims history
* Previous insurance experience
* Personal habits and characteristics of the property's occupants



## What do we do with the information?

We use the information we collect about you to perform insurance functions. This includes

* Underwriting and servicing your policy
* Processing claims (we may obtain information relating to health and employment)
* Investigating potential fraud
* Other activities permitted by state and federal law

Here's an example: If you ask us to set up a payment by electronic funds transfer, we may obtain financial information for a particular bank account.

We may also disclose information to other parties. The law permits us to do this without your prior authorization when the information goes, for example, to these parties:

1. Your Farmers® agent - to service your policy.
2. Persons who need this information to perform normal business functions for us.
3. Persons conducting actuarial or research studies on our behalf.
4. Another insurance company or an insurance support organization - to perform an insurance transaction, or to detect or prevent criminal activity or fraud in connection with an insurance transaction.
5. A medical professional or medical care institution - to verify insurance coverage or benefits or to inform an individual of a medical problem the individual may not know about.
6. An insurance regulatory authority.
7. Law enforcement or other governmental authority.
8. A group policyholder - to report claims experience or conduct an audit of our operations, but only as needed to conduct the review or audit.
9. Affiliates, as permitted by law. The law allows us to share your financial information with our affiliates to market products or services to you, and does not allow customers to restrict that disclosure.
10. Persons that perform marketing services on our behalf, as permitted by law.
11. Other non-affiliated third parties, as permitted by law.
12. A party to a proposed or consummated sale, transfer, merger, or consolidation of all or part of the company underwriting your policy.

An insurance support organization that prepares a report may keep information it gathers and disclose that information to other persons, but only to the extent permitted by federal and state law.

## How can you see or make corrections to your personal information?

You have these rights:

* To know what personal information about you we have in our records. That includes reports from outside sources.
* To get a copy of your personal information.
* To request that we correct, change, or remove any information you feel is incorrect.

To use these rights, you must send us a written request. Your Farmers® agent can give you the appropriate service center address.

If you request that we correct, change, or remove incorrect information, we'll check our records and make the changes if we can. We'll let you know in writing what we decide.

If we cannot make a change you asked for, you can file a statement. Write down the reasons you disagree with our decision. We'll include the statement in our records. That way, anyone who looks at the disputed personal information will also see your statement. From then on, if we disclose your information to another party, we'll include your statement. We will also send a copy to anyone who has gotten your personal information from us in the past two years. Just tell us who you would like us to send it to.

| | Renewal premium: | Balance or credit from prior invoice: | Total due: | Please pay by due date: |
|---|---|---|---|---|
| | $ 1,307.73 | $ 14.17 | $1,321.90 | 06-18-10 |

*Offer of Renewal*
(This is the only notice prior to due date.)

*Thank you for your business!*

Optional payment
(*See below)

$ 665.95

The Company will renew your policy for the term of 06-18-10 to 06-18-11, if payment of the premium is made on or before the due date. If payment is not received by the due date, your policy will not renew.

*To renew your policy, you may pay the premium or the optional payment amount above which includes a $5.00 service charge. The remaining balance is due 120 days from the due date above.

### Policy Information

Insurance provided by: NEIGHBORHOOD SPIRIT PROPERTY & CASUALTY COMPANY

Named insured:  JAMES CLARK

Policy number:  91708-10-71

Property location: 625 LACONIA BLVD
LOS ANGELES CA 90044-3839

Loan number:
502197213

| Description of coverages (See reverse for deductible) | Amount of insurance | Premium |
|---|---|---|
| Dwelling - Special Form Incl. | $ 364,000 | Included |
| Contents | $ 50,000 | Included |
| Separate Structures | $ 56,400 | $ 48.00 |
| Rental Value | $ 56,400 | $ 82.00 |
| Additional Living Expense | $ 90,800 | Included |
| Personal Liability | $ 100,000 | $ 43.00 |
| Building Ordinance Or Law | | $ 164.80 |
| Other-(See Policy) | | $ 5.00 |

| Earthquake - - - - Not Covered | Not Covered | Not Covered |
|---|---|---|
| | Renewal premium | $ 1,307.73 |

Agent: MORRIS DAVIS JR INS SV INC

Phone: (323) 753-1161

Agent's e-mail:  mdavis@farmersfact.com

25-0952  4-09  Printed on: 04-27-10     Retain for your records - Offer of Renewal continues on reverse side.

A895891

Please write your policy number on your check and return this invoice with payment. Your canceled check is your receipt. Thank You.

TO PAY WITH YOUR CREDIT /DEBIT CARD, PLEASE CONTACT YOUR AGENT.

VISA  MasterCard

2439 W Manchester Blvd
Inglewood CA 90305-2517

*Invoice*

Make check payable to: NEIGHBORHOOD SPIRIT PROPERTY & CASUALTY COMPANY

| Policy number: 91708-10-71 | Please pay by: 06-18-10 | Total due: $1,321.90 | Optional payment: $ 665.95 |
|---|---|---|---|

You can now pay your bill and view your policy online, see details at www.farmers.com

Agent number: 02-01-302

048302917081071132190066 5952

JAMES CLARK
625 LACONIA BLVD
LOS ANGELES CA  90044-3839

FARMERS INS GRP OF COS
PO BOX 894729
LOS ANGELES CA  90189-4729




Your premium is based on the following:

Policy type:
FARMERS SELECT HOMEOWNERS POLICY

Deductible:
$500 DEDUCTIBLE

Discounts/Surcharges:

Construction type and year built:
FRAME CONST - YEAR CONSTRUCTION 33

Other rating factors:
PROTECTION CLASS 02 - PREMIUM GROUP 85

Other important information:
THE LIMIT OF LIABILITY FOR THIS STRUCTURE (COVERAGE A) IS BASED ON AN ESTIMATE OF THE COST TO
REBUILD YOUR HOME, INCLUDING AN APPROXIMATE COST FOR LABOR AND MATERIALS IN YOUR AREA, AND SPECIFIC
INFORMATION YOU HAVE PROVIDED ABOUT YOUR HOME.
THIS POLICY INCLUDES BUILDING ORDINANCE COVERAGE
EARTHQUAKE COVERAGE IS NOT PROVIDED UNDER THIS POLICY

This policy provides for only those coverages described in the policy. Coverages pertain to property
and liability if shown. There is no coverage for the payoff of the mortgage in the event of death of the
insured or spouse. If you do not have this valuable coverage, your Agent can help you in obtaining it.

For more information regarding your policy or bill, please contact your Farmers agent or visit
our web site at www.farmers.com. If you have a claim, call 1-800 HelpPoint® (435-7764).

Important Notice - You should consider the coverage limits we offer with this renewal and decide if you wish to make any
adjustments. We have calculated a reconstruction cost estimate for your home based on the information we have. The actual
cost to reconstruct your home (the Dwelling amount of insurance) may be different from the estimate. We recommend that
you contact your agent to discuss your reconstruction estimate and make sure your home's special features and any
improvements you have made are taken into account. Although we have already calculated the estimate, your agent can
fully explain all the options and give you an opportunity to provide new information that may affect the estimate.

25-0952  4-02                                                                                    A09526402




## CALIFORNIA RESIDENTIAL PROPERTY INSURANCE DISCLOSURE

Policy Number: 91708-10-71
Date of Mailing: 04-27-2010
Agent Number: 02-01-302

JAMES CLARK
625 LACONIA BLVD
LOS ANGELES CA 90044-3839

This disclosure is required by California Law (Section 10102 of the Insurance Code). It describes the principal forms of insurance coverage in California for residential dwellings. It also identifies the form of dwelling coverage you have purchased or selected.

This disclosure form contains only a general description of coverages and is not part of your residential property insurance policy. Only the specific provisions of your policy will determine whether a particular loss is covered and, if so, the amount payable. Regardless of which type of coverage you purchase, your policy may exclude or limit certain risks.

READ YOUR POLICY CAREFULLY. If you do not understand any part of it or have questions about what it covers, contact your insurance agent or company. You may also call the California Department of Insurance consumer information line at (1-800-927-HELP or 1-800-927-4357).

The cost to rebuild your home may be very different from the market value of your home since reconstruction is based primarily on the cost of labor and materials. Many factors can affect the cost to rebuild your home, including the size of your home, the type of construction, and any unique features. Please review the following coverages carefully. If you have questions regarding the level of coverage in your policy, please contact your insurance agent or company. Additional coverage may be available for an additional premium.

### FORMS OF COVERAGE FOR DWELLINGS
(Dwelling Coverage selected or purchased)

☐ **GUARANTEED REPLACEMENT COST COVERAGE WITH FULL BUILDING CODE UPGRADE** PAYS REPLACEMENT COSTS WITHOUT REGARD TO POLICY LIMITS, AND INCLUDES COSTS RESULTING FROM CODE CHANGES.

In the event of any covered loss to your home, the insurance company will pay the full amount needed to repair or replace the damaged or destroyed dwelling with like or equivalent construction regardless of policy limits. Your policy will specify whether you must actually repair or replace the damaged or destroyed dwelling in order to recover guaranteed replacement cost. The amount of recovery will be reduced by any deductible you have agreed to pay.

This coverage includes all additional costs of repairing or replacing your damaged or destroyed dwelling to comply with any new building standards (such as building codes or zoning laws) required by government agencies and in effect at the time of rebuilding.

To be eligible to recover full guaranteed replacement costs with building code upgrade, you must insure the dwelling to its full replacement cost at the time the policy is issued, with possible periodic increases in the amount of coverage to adjust for inflation and increases in building costs; you must permit inspections of the dwelling by the insurance company; and you must notify the insurance company about any alterations that increase the value of the insured dwelling by a certain amount (see your policy for that amount)

☐ **GUARANTEED REPLACEMENT COST COVERAGE WITH LIMITED OR NO BUILDING CODE UPGRADE** PAYS REPLACEMENT COSTS WITHOUT REGARD TO POLICY LIMITS BUT LIMITS OR EXCLUDES COSTS RESULTING FROM CODE CHANGES.

In the event of any covered loss to your home, the insurance company will pay the full amount needed to repair or replace the damaged or destroyed dwelling with like or equivalent construction regardless of policy limits. Your policy will specify whether you must actually repair or replace the damaged or destroyed dwelling in order to recover guaranteed replacement cost. The amount of recovery will be reduced by any deductible you have agreed to pay.

This coverage does not include all additional costs of repairing or replacing your damaged or destroyed dwelling to comply with any new building standards (such as building codes or zoning laws) required by government agencies and in effect at the time of rebuilding. Consult your policy for the applicable exclusions or limits with respect to these costs.

To be eligible to recover full guaranteed replacement cost with limited or no building code upgrade, you must insure the dwelling to its full replacement cost at the time the policy is issued, with possible periodic increases in the amount of coverage to adjust for inflation and increases in building costs; you must permit an inspection of the dwelling by the insurance company; and you must notify the insurance company about any alterations that increase the value of the insured dwelling by a certain amount (see your policy for that amount).

95.9520 10.04    (Continued on the reverse side)    A7S0281